UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| VALLEY FORGE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Cause No. 1:14-CV-6-RLM-SLC |
| HARTFORD IRON & METAL, INC. AND ALAN B. GOLDBERG (DBA HARTFORD METAL & IRON), | ) ) ) ) ) | |
| Defendants. | ) | |

OPINION and ORDER

Plaintiff Valley Forge Insurance Company moved to seal certain documents that defendants Hartford Iron & Metal, Inc. and Alan Goldberg attached as exhibits to their response to Valley Forge's motion for preliminary injunction as well as portions of Hartford Iron's response brief and amended response brief. In its reply, Valley Forge also asks the court to seal the transcript of the preliminary injunction motion hearing and the exhibits from that hearing. Hartford Iron opposes the motion and points out that Valley Forge filed two sealed exhibits, related to its preliminary injunction motion reply, without the court's permission. Valley Forge replied; the motion to seal is ripe for review.[1]

---

[1] Valley Forge claims the court wasn't prepared to hear argument on the motion to seal at the preliminary injunction motion hearing. The court declined to hear argument at that time because the motion wasn't yet ripe.

Under the 2012 Settlement Agreement between the parties, Valley Forge agreed to defend and indemnify Hartford Iron against claims brought by the Indiana Department of Environmental Management and the United States Environmental Protection Agency. In Part II, Section A, this agreement appointed an attorney, "defense counsel," whose anticipated tasks include "legal work to defend Hartford Iron against the EPA and IDEM claims, to handle negotiations with the agencies, to supervise the environmental consultant, and to represent Valley Forge's recognized interests in controlling costs and obtaining agency approval of the most cost effective remediation alternative that protects Hartford Iron's interests at the site." Valley Forge argues that Hartford Iron disclosed to defense counsel privileged attorney-client communications that shouldn't have been disclosed without Valley Forge's consent.[2] Most of the communications at issue discuss the remediation of the site and are between current defense counsel Jamie Dameron and employees of Valley Forge or employees of August Mack Environmental, Inc., Valley Forge's environmental contractor performing the remediation.

This dispute causes two well established principles to collide – open court records and attorney-client confidences. The court has jurisdiction over this suit based on diversity jurisdiction, so the court applies state law to

---

[2] Valley Forge says Hartford Iron filed the same documents in a parallel state court action, and, upon motion by Valley Forge, the state court sealed the documents. As a result, Valley Forge says Hartford Iron is aware that it doesn't consent to the public disclosure of the documents.

substantive issues and federal law to procedural issues. Stutzman v. CRST, Inc., 997 F.2d 291, 294 (7th Cir. 1993). Under Federal Rule of Evidence 501, in a diversity case in which state law supplies the rule of decision, the state's substantive law of privilege governs as well. Armour Int'l Co. v. Worldwide Cosmetics, Inc., 689 F.2d 134, 135 (7th Cir. 1982); Netherlands Ins. Co. v. Nat'l Cas., 283 F.R.D. 412, 416 (C.D. Ill. 2012); Lauth Grp., Inc. v. Grasso, No. 1:07-CV-0972-SEB-TAB, 2008 WL 926631, at *2 (S.D. Ind. Apr. 4, 2008). Accordingly, federal law controls the request to seal, and Indiana law determines the attorney-client privilege.

In general, court records, and especially the documents that influence a judicial decision, are open to the public. Baxter Int'l, Inc. v. Abbott Labs., 297 F.3d 544, 545 (7th Cir. 2002). A court won't seal a document unless it contains information that "legitimately may be kept from public inspection." Id. at 546; *see* Hicklin Eng'g, L.C. v. Bartell, 439 F.3d 346, 348 (7th Cir. 2006) ("The political branches of government claim legitimacy by election, judges by reason. Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat and requires rigorous justification."). Conversely, the attorney-client privilege promotes secrecy. An attorney must maintain the confidences related to the representation of a client unless the client gives informed consent of the disclosure. IND. PROF'L COND. R. 1.6. The attorney-client privilege encourages clients to "communicate fully and frankly with the lawyer even as to embarrassing or legally damaging subject

matter." Canfield v. Sandock, 563 N.E.2d 526, 528-529 (Ind. 1990) (*quoting* IND. PROF'L. COND. R. 1.6 cmt. 2). "To invoke attorney-client privilege, the invoking party must 'establish by a preponderance of the evidence (i) the existence of an attorney-client relationship and (ii) that a confidential communication was involved.'" TP Orthodontics, Inc. v. Kesling, 15 N.E.3d 985, 995 (Ind. 2014) (*quoting* Mayberry v. State, 670 N.E.2d 1262, 1266 (Ind. 1996)). More precisely, the attorney-client privilege only protects communications between an attorney and a client "in the course of an effort to obtain legal advice or aid, on the subject of the client's rights or liabilities, from a professional legal advisor acting in his or her capacity as such." Id. at 995-996. The scope of the privilege is narrow because it "may prevent the disclosure of relevant information," and the party "asserting the privilege has the burden of establishing its applicability." Lauth Grp., Inc. v. Grasso, No. 1:07-CV-0972-SEB-TAB, 2008 WL 926631, at *2 (S.D. Ind. Apr. 4, 2008) (*quoting* Howard v. Dravet, 813 N.E.2d 1217, 1222 (Ind. Ct. App. 2004)). The court may seal documents or portions of the record that fall within "categories of bona fide long-term confidentiality," Baxter Int'l, Inc. v. Abbott Labs., 297 F.3d 544, 545 (7th Cir. 2002), and the attorney-client privilege is one such category. Drics v. Duffy, No. 1:14-CV-01192-SEB-MJD, 2014 WL 5324285, at *1 (S.D. Ind. Oct. 16, 2014). "The claim of privilege cannot be a blanket claim; it 'must be made and sustained on a question-by-question or document-by-document basis.'"

United States v. White, 950 F.2d 426, 430 (7th Cir. 1991); TP Orthodontics, Inc. v. Kesling, 15 N.E.3d 985, 994 (Ind. 2014).

I. Attorney-Client Relationship

To begin with, the parties disagree about whether the attorney-client privilege applies to the relationship between Valley Forge and defense counsel. Both parties point to the language of the 2012 Settlement Agreement to support their view of the relationship. Valley Forge claims defense counsel jointly represents Valley Forge and Hartford Iron because the agreement identifies defense counsel's duties to include defending Hartford Iron and representing the interests of Valley Forge and delegates the control of the defense to Valley Forge. Hartford Iron claims defense counsel hasn't ever represented Valley Forge, and defense counsel Jamie Dameron informed Valley Forge that she hadn't been hired to represent Valley Forge or "on the basis of a joint representation." The contract's language doesn't explicitly address the issue.

Valley Forge cites Cincinnati Insurance Co. v. Wills, 717 N.E.2d 151 (Ind. 1999), and argues that under Indiana law, when an insurance company employs and pays for its insured's defense counsel, such counsel has an attorney-client relationship with both the insured and the insurance company. The court agrees, although the Cincinnati Insurance Co. v. Wills holding isn't

that simple.³ In the typical case in which an insurance company employs and pays for its insured's defense counsel, be it an insurance company employee or an outside attorney, the Cincinnati Insurance Co. v. Wills court found "it unrealistic to ignore the client relationship with both" the insured and the insurer, and held that nothing prevents the joint representation as long as the clients' interests align. Id. at 161. Valley Forge and Hartford Iron disagree about whether their interests align. Valley Forge says they share the common interest of minimizing Hartford Iron's liability; Hartford Iron says their interests don't align. At the preliminary injunction hearing, the court expressed skepticism, in light of this case, that the parties' interests are aligned. So, ethically, joint representation by defense counsel at this time isn't a good idea, but that doesn't answer several related questions, such as whether defense counsel original represented both parties and their interests diverged at some point (and if so, the remedy) or if defense counsel at no point represented both parties. As the Cincinnati Insurance Co. v. Wills court observed, "If a conflict arises, it will have to be handled, and there are a variety of means to do that." Id. If a conflict has arisen or always existed, the parties should address it in an appropriate motion that proposes the means by which they would like to address the issue. The court needn't decide whether an attorney-client

---

³ The Cincinnati Insurance Company v. Wills holding authorized attorneys employed by insurance companies to defend insureds against liability as long as the representation didn't compromise the attorney's ethical obligations and the relationship was disclosed. 717 N.E.2d 151, 153 (Ind. 1999). The court also found a law-firm-like name used to describe the insurance company employed attorneys misleadingly suggested they were outside counsel and therefore was prohibited by Indiana Professional Conduct Rule 7.2. Id.

relationship existed to determine whether the privilege applied to the communications at issue because Valley Forge didn't establish that the communications were confidential.[4]

## II. CONFIDENTIAL COMMUNICATIONS

Valley Forge contends that of the fifty-six documents Hartford Iron attached as exhibits to its response brief, twenty-eight contain attorney-client and work-product privileged communications and Hartford Iron's response brief and amended response brief extensively discuss and divulge the contents of confidential and privileged communications. As the party asserting the privilege, Valley Forge bears the burden of establishing that the attorney-client privilege applies to the documents. Lauth Grp., Inc. v. Grasso, No. 1:07-CV-0972-SEB-TAB, 2008 WL 926631, at *2 (S.D. Ind. Apr. 4, 2008). The attorney-client privilege protects confidential communications between an attorney and a client, which are communications made "in the course of an effort to obtain legal advice or aid, on the subject of the client's rights or liabilities, from a professional legal advisor acting in his or her capacity as such." TP

---

[4] Valley Forge asserted two new arguments in its reply brief – the communications would be protected from third party discovery and the communications are protected under the common interest privilege. The court declines to address arguments that were not raised in the motion brief; to do so deprives the other party of the opportunity to be heard. United States v. Alhalabi, 443 F.3d 605, 611 (7th Cir. 2006). Because the court doesn't decide the attorney-client relationship question, the court needn't reach Hartford Iron's argument that Ms. Dameron's disclosure was permissible pursuant to Indiana Professional Conduct Rule 1.6(b)(5), which allows an attorney to reveal confidential client information to respond to allegations concerning the attorney's representation of the client.

Orthodontics, Inc. v. Kesling, 15 N.E.3d 985, 995-996 (Ind. 2014). For each document, Valley Forge identifies the exhibit number, date, author, recipient, and type of communication. Valley Forge refers to the brief and amended brief in general.

The vast majority of the documents are correspondence that involved current defense counsel:

| Exhibits 11-25, 27, 33-37, 40, and 56 | communications to or from defense counsel Jamie Dameron |
|---|---|
| Exhibit 39 | letter from Valley Forge's counsel to an attorney that Valley Forge would like to hire to succeed Ms. Dameron as defense counsel |
| Exhibit 42 | letter from former defense counsel to a representative of Hartford Iron |

The list reveals correspondence that, on its face, involves an attorney and a client, but to be protected by the attorney-client privilege, a communication between an attorney and a client must also involve the provision of legal services. TP Orthodontics, Inc. v. Kesling, 15 N.E.3d 985, 995-996 (Ind. 2014). Valley Forge doesn't specify how the correspondence to and from defense counsel involved his or her role as defense counsel. The document list therefore doesn't establish that a confidential communication was involved in any of the conversations.

Three documents on Valley Forge's list are distinguishable from the defense counsel correspondence:

| Exhibit 41 | Litigation Management Guidelines of CNA (a/k/a Valley Forge) |
| --- | --- |
| Exhibit 50 | emails that began between a representative of Hartford Iron, a representative of August Mack, and Hartford Iron's counsel and morphed into an email chain that included representatives from Valley Forge, August Mack, and Hartford Iron and counsel for Valley Forge and Hartford Iron |
| Exhibit 55 | declaration of defense counsel Ms. Dameron |

Valley Forge didn't specify whether the attorney-client or work-product privilege applies to Exhibit 41 or the reason the privilege applies to the litigation manual. Exhibit 50 began as an internal Hartford Iron discussion, and eventually an attorney for Valley Forge was copied on the correspondence. The attorney didn't participate in the conversation. Valley Forge doesn't explain how simply copying an attorney on an email chain creates a confidential communication. Valley Forge also doesn't explain how Exhibit 55, a declaration of counsel, which isn't a communication with a client, is privileged. Valley Forge didn't establish that these exhibits contain confidential communications.

Finally, Valley Forge claims Hartford Iron's response brief and amended response brief discuss and divulge confidential and privileged communications and the offending portions of the briefs should be sealed. But Valley Forge doesn't identify the lines, paragraphs, or even sections of the brief that contain

this information, let alone the specific reasons the unidentified information is protected. Consequently, Valley Forge didn't show that either brief reveals confidential communications.

In sum, Valley Forge broadly and generally asserts that twenty-eight documents and some unidentified portions of the response briefs are protected by the attorney-client privilege. The party invoking the attorney-client privilege must establish that each document involved a confidential communication (as well as the existence of an attorney-client relationship), TP Orthodontics, Inc. v. Kesling, 15 N.E.3d 985, 995 (Ind. 2014), and Valley Forge hasn't done so.

### III. PRELIMINARY INJUNCTION MOTION HEARING

At the preliminary injunction motion hearing, Valley Forge offered five exhibits that contained email conversations between defense counsel and a representative of Valley Forge and one exhibit that contained several emails and letters from Valley Forge's counsel to defense counsel. Hartford Iron offered a copy of Valley Forge's Federal Rule of Civil Procedure 26(a) disclosures as its only exhibit. The exhibits were admitted, and a transcript of the hearing was ordered and prepared. In its reply, Valley Forge asks the court to seal the transcript of the preliminary injunction motion hearing and the exhibits admitted into evidence at the hearing.

Valley Forge's belated request sweeps too broadly. To begin with, Valley Forge didn't ask the court to seal the courtroom during the hearing or ask the

court to seal the exhibits at the time they were presented in open court. Further, Valley Forge moved the court to seal the transcript and the exhibits in its reply brief, not its initial motion to seal. *See* <u>United States v. Alhalabi</u>, 443 F.3d 605, 611 (7th Cir. 2006) (argument asserted for the first time in reply brief is waived). Finally, as discussed previously, the attorney-client privilege must be invoked on a document-by-document basis, but Valley Forge doesn't specify why each exhibit from the hearing should be sealed or identify the lines of the transcript and the reason why it believes the lines should be sealed. <u>United States v. White</u>, 950 F.2d 426, 430 (7th Cir. 1991); <u>TP Orthodontics, Inc. v. Kesling</u>, 15 N.E.3d 985, 994 (Ind. 2014).

Hartford Iron argues that the motion to seal is moot because the relevant information in the documents at issue was publicly disclosed, through testimony and as exhibits, during the preliminary injunction motion hearing. This argument, too, sweeps too broadly. Hartford Iron doesn't point to the lines of the hearing transcript that discussed its twenty-eight response brief exhibits, and the court declines to comb the record for similarities. *See* <u>Estate of Moreland v. Dieter</u>, 395 F.3d 747, 759 (7th Cir. 2005) (The court "will not scour a record to locate evidence supporting a party's legal argument."). Likewise, the correspondence in the hearing exhibits isn't the exact same correspondence found in the response brief exhibits. For example, the August 14, 2014 email from Ms. Coyle to Ms. Dameron was an exhibit at the preliminary injunction motion hearing, while the August 14, 2014 letter from Ms. Dameron to Ms.

Coyle was an exhibit to the response brief. Perhaps the same correspondence ended up in the record at the preliminary injunction motion hearing, but the court declines to delve through the record on Hartford Iron's behalf to find out. *See* Fagocki v. Algonquin/Lake-In-The-Hills Fire Prot. Dist., 496 F.3d 623, 629 (7th Cir. 2007) ("It is the parties' duty to package, present, and support their arguments.").

IV. Confidentiality in General

Hartford Iron unhelpfully argues that Valley Forge breached the confidentiality provision of the 2012 Settlement Agreement by publicly disclosing the agreement in the record of this case. Because Valley Forge hasn't tried to seal the agreement, Hartford Iron contends Valley Forge's confidentiality protest is untimely and waived. Valley Forge asserts the 2012 Settlement Agreement allows the agreement to be disclosed in any proceeding in which the agreement's terms are at issue or to enforce the agreement, so it hasn't violated the agreement. The court agrees. Part II, Section M of the Settlement Agreement permitted Valley Forge to disclose the agreement when it filed this suit against Hartford Iron asserting claims of breach of the agreement and seeking declaratory judgment to enforce portions of the agreement. The point is, however, irrelevant; the agreement's confidentiality provision is unrelated to the attorney-client privilege at issue.

## V. DOCUMENTS 56 AND 57

Hartford Iron emphasizes that Valley Forge filed two exhibits under seal without the court's authorization or a supporting motion. Under Local Rule 5-3(a), the clerk "may not maintain a filing under seal unless authorized to do so by statute, court rule, or court order." The two sealed documents are connected to Valley Forge's reply to the preliminary injunction motion. Valley Forge didn't file a motion to seal the documents, didn't offer a reason for the documents being filed under seal in the preliminary injunction reply brief, and doesn't address the issue in its motion to seal reply brief. Without a statute, court rule, or court order to support the sealing of the documents, the filings cannot be maintained under seal.

## VI. CONCLUSION

For the foregoing reasons, the court DENIES plaintiff Valley Forge's Insurance Company's motion to seal certain documents (Doc. No. 52) and ORDERS the clerk to remove the seal from the documents attached to docket numbers 56 and 57.

SO ORDERED.

ENTERED: May 11, 2015

/s/ Robert L. Miller, Jr.
Judge
United States District Court