UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| VALLEY FORGE INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>vs.<br><br>HARTFORD IRON & METAL, INC. AND ALAN B. GOLDBERG (DBA HARTFORD METAL & IRON),<br><br>    Defendants. | Cause No. 1:14-cv-006-RLM-SLC |

OPINION and ORDER

Plaintiff and counterclaim defendant Valley Forge Insurance Company sued Hartford Iron & Metal, Inc. and Alan B. Goldberg, seeking damages for breach of contract and declaratory judgment regarding the parties' rights and obligations under a series of insurance policies and settlement agreements. This matter is before the court on Valley Forge's motion for partial summary judgment. (Doc. No. 93). The motion concerns only the claims for declaratory relief: Valley Forge seeks a declaration that it has the right to control both the defense and the remediation of the Hartford Iron site free from interference by Hartford Iron.[1] Also before the court are Valley Forge's motion for clarification of the court's ruling denying a preliminary injunction (Doc. No. 95), Hartford Iron's motion for leave to file supplemental exhibits to its summary judgment response

---

[1] The court refers to both Hartford Iron & Metal, Inc. and Alan B. Goldberg as "Hartford Iron" for purposes of this order.

(Doc. No. 274), and Hartford Iron's motion to seal one of its proposed supplemental exhibits (Doc. No. 276).

For the reasons that follow, Valley Forge is not entitled to summary judgment on its declaratory relief claims.

## I. BACKGROUND

Because Valley Forge's motion seeks only partial summary judgment, it isn't necessary to recite in detail the evidence regarding storm water discharges at the Hartford Iron site and the remediation efforts thus far.

This litigation arises from environmental contamination at a Hartford City, Indiana metal scrap yard. Hartford Iron operates the scrap yard, and Valley Forge provided several general liability insurance policies covering it. These insurance policies[2] provide that Valley Forge has the right and duty to

---

[2] Valley Forge offered one written policy as evidence, and provided the court with an affidavit from a Valley Forge attorney stating that this policy's terms are representative of all policies issued to Hartford Iron. (Doc. No. 94-1, Thompson Affidavit, ¶ 3). Hartford Iron disputes Valley Forge's allegation that all the other policies contain the same or functionally equivalent terms, but doesn't cite to any record evidence of conflicting terms in other policies or provide a sworn affidavit challenging the assertions made by Valley Forge's affiant. Instead, Hartford Iron simply states that it "has not yet undertaken a comparison of each year's policy terms" and so the court can't assume the truth of Valley Forge's claim that the policies are all comparable. (Doc. No. 173-1, Response Appx at p.29). At the summary judgment stage, Hartford Iron can't simply say it disagrees with evidence offered by Valley Forge – it must point to specific evidence in the record contrary to Valley Forge's factual allegations. Since Hartford Iron hasn't done so, Valley Forge's sworn statement that all the policies bear functionally equivalent terms is deemed admitted. Hartford Iron also insists that Valley Forge's "Exhibit 2" cited in the affidavit isn't an insurance policy but "an unrelated drainage study map." This is incorrect. Exhibit 2 to the affidavit attached to Valley Forge's motion for summary judgment is a document entitled "Commercial General Liability Coverage Form," which appears to be the insurance policy in question.

investigate, defend, and settle covered liability claims against Hartford Iron, and that:

> (c) [Hartford Iron] and any other involved insured must:
> …
> (3) Cooperate with [Valley Forge] in the investigation, settlement or defense of the claim or "suit"; and
> …
> (d) No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without [Valley Forge's] consent.

(Doc. No. 94-3, Section IV(2)).

In August 2006, the Indiana Department of Environmental Management ("IDEM") found that the scrap yard wasn't in compliance with environmental regulations and issued a Notice of Violation to Hartford Iron. Valley Forge initially agreed to defend Hartford Iron, but disputes soon arose between the parties. In 2009, IDEM and Hartford Iron entered into an Agreed Order concerning investigation and remediation at the site, and Valley Forge and Hartford Iron entered into their first settlement agreement allocating responsibility for complying with the IDEM order.

Within two years the parties were again at odds about how to remediate the scrap yard, and Hartford Iron filed suit in state court against Valley Forge and the attorney Valley Forge had hired as Hartford Iron's defense counsel in the IDEM action. Environmental violations at the site continued, and the EPA issued Hartford Iron a Notice of Intent to File Civil Administrative Complaint. IDEM also issued a Remediation Request in April 2012 requiring Hartford Iron to submit a

plan to reduce the discharge of PCBs from the site. Hartford Iron submitted a plan in July 2012.

The parties reached a second settlement agreement in December 2012. Both sides agreed to release all coverage, malpractice, and bad faith claims they might have had against each other to that point, and Valley Forge agreed to make an immediate payment to resolve all past damages and defense costs. As relevant to the summary judgment motion, the 2012 agreement establishes that: (1) Valley Forge may immediately appoint new defense counsel subject to Hartford Iron's approval, which can't be unreasonably withheld. The new defense counsel will defend against the EPA and IDEM claims, supervise the environmental consultant, and represent Valley Forge's interests in prompt and cost effective remediation; (2) Valley Forge may immediately replace the former environmental consultant with August Mack. August Mack will immediately begin work to control storm water discharges, and will implement (at Valley Forge's expense) any future remediation plans ultimately required and approved by IDEM or the EPA; (3) Valley Forge must defend and indemnify Hartford Iron as to the EPA penalty already imposed; (4) Valley Forge must defend and indemnify Hartford Iron with respect to the EPA and IDEM claims, and will "control the defense of these matters"; (5) Hartford Iron must "cooperate with Valley Forge, defense counsel, and August Mack" in implementing the remediation plan; and (6) August Mack and defense counsel must copy Hartford Iron on all correspondence relating to work at the site.

Since the 2012 settlement, both the storm water discharge violations and the parties' disputes over control of the defense have continued, and each side blames the other for the failure to achieve adequate remediation at the site. Hartford Iron takes the position that August Mack's remediation efforts have been insufficient, and actually increased rather than abated the discharge of harmful chemicals into the groundwater. Valley Forge argues that August Mack's remediation plans could have worked well, but were frustrated by Hartford Iron's failure to cooperate in denying August Mack employees unfettered access to the scrap yard.

Valley Forge filed this suit against Hartford Iron in January of 2014, seeking damages for breach of the 2012 agreement as well as a declaratory relief regarding Hartford Iron's obligations under the agreement. The breach of contract claim alleges that Hartford Iron has failed to cooperate with Valley Forge and August Mack as required by the 2012 agreement, and that this failure to cooperate caused the ongoing storm water discharges and increased the costs of remediating the site. Valley Forge also sought a preliminary injunction that would prevent Hartford Iron from withholding its consent to the appointment of new defense counsel at Valley Forge's expense. The court denied the preliminary injunction motion on March 9, 2015. (Doc. No. 58).

## II. Legal Standard

A district court must grant summary judgment if "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also* <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986). In deciding whether a genuine dispute exists as to any material fact, a court must view all the evidence and draw all reasonable inferences in favor of the non-moving party. *See* <u>Weber v. Univ. Research Assoc., Inc.</u>, 621 F.3d 589, 592 (7th Cir. 2010). The existence of an alleged factual dispute, by itself, won't defeat a summary judgment motion; "instead, the nonmovant must present definite, competent evidence in rebuttal," <u>Parent v. Home Depot U.S.A., Inc.</u>, 694 F.3d 919, 922 (7th Cir. 2012), and "must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." <u>Hemsworth v. Quotesmith.com, Inc.</u>, 476 F.3d 487, 490 (7th Cir. 2007). It isn't appropriate for the court to judge the credibility of the witnesses or evaluate the weight of the evidence; the only question on summary judgment is "whether there is a genuine issue of fact." <u>Gonzalez v. City of Elgin</u>, 578 F.3d 526, 529 (7th Cir. 2009). Summary judgment is "not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." <u>Hammel v. Eau Galle Cheese Factory</u>, 407 F.3d 852, 859 (7th Cir. 2005) (internal citations omitted).

III. Discussion

There are unquestionably disputes of material fact regarding the remediation efforts so far, the storm water discharges from the scrapyard, and who is responsible for the site's ongoing noncompliance with environmental regulations. None of these disputes is material to the declaratory relief claims. Actual overruns of storm water don't affect the legal issue presented in the summary judgment motion: whether, as a matter of law, Valley Forge retains the right to control the defense of the IDEM proceeding under the insurance policies and settlement agreements after filing this complaint.

## A. Hartford Iron's motions to supplement and to seal

Before reaching the merits of Valley Forge's motion for summary judgment, the court must address the pending motions to supplement and to seal. On November 23, 2015, Hartford Iron filed its second motion[3] for leave to file supplemental exhibits regarding summary judgment. (Doc. No. 274). The motion seeks to submit fifteen additional exhibits that didn't exist or hadn't been produced at the time Hartford Iron filed its summary judgment response, including further noncompliance reports from IDEM and communications regarding the remediation plan proposed by Hartford Iron's preferred environmental contractor. Hartford Iron also filed a motion to seal one of the

_____

[3] The court granted Hartford Iron's first motion to supplement its summary judgment response brief on September 8, 2015. (Doc. No. 193).

fifteen supplemental exhibits on the grounds that it might contain Valley Forge's privileged attorney-client communications. (Doc. No. 276).

The court has reviewed the proposed exhibits, and none of them materially affect the court's analysis of the summary judgment issues – they are largely cumulative of other evidence in the record, demonstrating only newly arisen examples of the same underlying disputes. Moreover, Hartford Iron's motion to supplement doesn't identify with particularity how any of these additional exhibits relate to the issues in the motion for partial summary judgment; all the motion says is that the exhibits "concern material facts for purposes of the motion." While the reply to the motion provides more detail about the contents of the exhibits and what Hartford Iron believes them to show, it too doesn't clearly connect them to the legal arguments presented in the summary judgment briefing.[4] It isn't the court's responsibility to sift through the evidence to try and discern possible arguments that Hartford Iron hasn't made. Because Hartford Iron hasn't clearly identified the relevance of the proposed exhibits to the narrow legal issues currently before the court, the motion to supplement is denied and the court declines to consider these documents.

---

[4] With regard to proposed supplemental exhibits 5-8, for example, Hartford Iron's reply only states that the exhibits show IDEM approved the new Keramida system Hartford Iron wants to build to control storm water discharges. (Reply Mot. Supplement, Doc. No. 296 at 2-3). Hartford Iron recites that IDEM's requirements as to the Keramida system "go to the heart of the conflict of interest" but does not elaborate as to *how* these documents show that a conflict exists. Other exhibits are similarly irrelevant to the partial summary judgment motion, as they simply show that the parties continue to send each other communications disputing who is responsible for the remediation failures.

Because one of the proposed supplemental exhibits is an email from Valley Forge's claims managers that might be seeking legal advice from attorneys, the court grants Hartford Iron's motion to seal that document. While the court won't consider the document in ruling on the summary judgment motion, the motion to seal is granted solely to ensure that potentially privileged communications aren't publicly disclosed on the case docket.

*B. Summary Judgment Merits*

Valley Forge argues that it is entitled to summary judgment on its declaratory relief claims for three general reasons: (1) no conflict exists that would prevent Valley Forge from controlling the defense to the environmental claims; (2) even if a conflict exists with regard to the defense, the conflict doesn't undermine Valley Forge's right to control the remediation itself; and (3) the 2012 settlement agreement should be enforced in any case because it is an arms-length contract between counseled parties, and it would be unfair to abrogate Valley Forge's bargained-for rights under that agreement.[5] None of these arguments is persuasive. By filing a breach of contract action against Hartford

---

[5] Hartford Iron raises several other issues in its response, arguing that: (1) Valley Forge can't enforce the settlement agreements at issue because Valley Forge materially breached them first; (2) Valley Forge can't "control" the defense because that would entail overriding the independent judgment of defense counsel, in violation of ethical rules; (3) there is no "control" left to exercise because the current remediation plan has been approved by IDEM and is legally required; and (4) Valley Forge fails to specify what it means by "control." Because a conflict of interest prevents Valley Forge from exercising its contractual rights, summary judgment must be denied on that basis and it isn't necessary to reach these issues.

Iron that seeks recovery of the same remediation costs Hartford Iron says the insurance policies cover, Valley Forge created a conflict of interest that prevents it from controlling the defense and remediation as a matter of Indiana law.

### 1. Right to Control the Defense

Valley Forge's chief argument is that there is no conflict of interest here that would prevent it from controlling the defense to the underlying IDEM and EPA claims and choosing defense counsel. In Valley Forge's view, there is no reason to preclude it from exercising its contractual rights because it has already agreed to pay the costs of defending against the environmental claims in full. Because there is no dispute as to coverage, there is no conflict; defense counsel chosen by and answering to Valley Forge would have no incentive to defend the environmental claims in any way other than the most meritorious and cost-effective. This position views both the dispute between these parties and the relevant law on conflicts too narrowly. There is sufficient risk of misaligned incentives to prevent an attorney from representing both Hartford Iron's and Valley Forge's interests consistent with his or her ethical obligations.

Indiana's ethical rule on attorney conflicts of interest is embodied in Rule of Profession Conduct 1.7, which provides that a lawyer may not represent a client if the representation involves a "concurrent conflict of interest" and defines a concurrent conflict as existing where:

> (1) the representation of one client will be directly adverse to another client; or

> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

(In. RPC Rule 1.7(a)).

Such a conflict often exists between the respective interests of an insurer and insured when the defense to an underlying lawsuit or enforcement action may influence whether the claims is covered or not covered. In such a situation of misaligned incentive – where the attorney defending the underlying claim might have to select a defense that furthers the financial interest of the insured *or* the insurer, rather than both – the accepted practice has long been for the insurer to pay for independent defense counsel and exercise no control. *See* Snodgrass v. Baize, 405 N.E.2d 48, 51 (Ind. App. 1980) (holding that in such a case the insurer should pay for counsel selected by the insured); All–Star Ins. Corp. v. Steel Bar, Inc., 324 F. Supp. 160, 165 (N.D. Ind. 1971) (noting that in such a situation the insurer "must either provide an independent attorney to represent the insured, or pay for the cost of defense incurred by the insured hiring an attorney of his choice").

As the court noted at the preliminary injunction hearing, Armstrong Cleaners, Inc. v. Erie Ins. Exch., 364 F. Supp. 2d 797 (S.D. Ind. 2005) is highly instructive in determining whether such a conflict exists in the general liability insurance context. In Armstrong Cleaners, IDEM notified the owner of a building that the building violated environmental regulations, and the owner sought contribution from the tenants who were renting the building for a dry cleaning business. When the tenants turned over defense of the lawsuit to their insurer,

the insurer responded with a reservation of rights including an insistence that "pollution" was excepted from the insurance policy. The tenants asked the court to declare that the insurer had to pay the bills of independent defense counsel of the tenants' choosing. The <u>Armstrong Cleaners</u> court noted that "not every reservation of rights poses a conflict for defense counsel" but rejected the insurer's argument that a conflict exists only in particular easily identifiable categories of cases, concluding that the Rule 1.7 standard "cannot be confined to only its easiest and clearest applications" but rather "sweeps more broadly and looks more generally at the risk that an attorney's representation of one client will be impaired by her relationship with another client or another entity paying the bill." <u>Armstrong Cleaners</u>, 364 F. Supp. 2d at 808. The court went on to emphasize that evaluating the risk of conflict requires "close attention to the details of the underlying litigation" rather than any bright-line rule, and concluded that because counsel hired by the insurer would be conducting discovery on issues relevant to the underlying suit that would also be relevant to the coverage dispute (such as the tenants' state of mind and the degree of care they exercised), a significant risk of conflict existed under Rule 1.7.

Valley Forge argues that unlike <u>Armstrong Cleaners</u> – in which the underlying defense was to a lawsuit – this case involves only a notice of violations. IDEM won't make explicit findings based on who was at fault; it will only demand that the problem be fixed and issue fines to Hartford Iron. Yet relative fault for the discharges is the basis for the breach of contract claims in the instant case. According to Valley Forge, no conflict therefore exists because

the defense counsel it appoints for Hartford Iron has no way to manipulate the record in the environmental actions in a way that would support Valley Forge's breach of contract claim before this court. It characterizes the dispute between the parties regarding the defense as a strategic disagreement rather than a serious conflict of interest.[6]

The court sees this situation as closely analogous to the one in <u>Armstrong Cleaners</u>. In the underlying environmental claims, IDEM and the EPA are alleging – and threatening penalties for – further discharge of contaminated storm water that occurred after August Mack began remediation work. Under Indiana law, a defendant in an environmental action "may assert defenses provided by law or equity, including a defense that damages … were caused in whole or in part by a nonparty." Ind. Code § 13-30-9-5. Not only is this a potential defense available to Hartford Iron, there is evidence in the record that it has actually been pursued; Ms. Dameron (Hartford Iron's defense counsel during the initial stages of this case) has sent letters to IDEM encouraging the agency to go after August Mack and Valley Forge for the contamination rather than Hartford Iron, and has testified before this court that the blame-shifting strategy is the

---

[6] The case Valley Forge points to for the premise that strategic or tactical disputes between an insurer and insured don't give rise to a conflict of interest is a Texas state court case, <u>N. Cnty Mut. Ins. Co. v. Davalos,</u> 140 S.W.3d 685 (Tex. 2004). Because the question of whether or not a conflict exists is governed by Indiana's rules of professional conduct, <u>Davalos</u> isn't instructive. It is also easily distinguishable; the insured in that case wanted control of the defense only because he wished to bring suit for his car accident injuries in a different venue than that favored by his insurer, and the court held this tactical squabble insufficient to create a conflict. There is little question here that the parties' disagreements about the defense of the environmental claims extend beyond a single purely tactical issue, as Hartford Iron wants to make use of a defense – blaming August Mack – that is wholly contrary to Valley Forge's interests.

only one she believes she can ethically pursue. (PI hearing transcript, at 137-138). Hartford Iron's defense with regard to at least the most recent storm water discharges is essentially that the fault lies not with it but with August Mack's shoddy remediation work. This is in direct conflict with Valley Forge's breach claim in this suit, which alleges that Hartford Iron's bad faith failure to cooperate with August Mack is the cause of the ongoing storm water discharge problem. While IDEM may not make any written findings as to who is to blame, any defense counsel appointed for Hartford Iron but controlled by Valley Forge will need to decide which of the two masters to serve when gathering evidence and preparing reports about the storm water discharges. This conflict is sufficient to materially limit the attorney's representation of Hartford Iron.

Hartford Iron points to specific facts in the record that aptly demonstrate the conflict. At the preliminary injunction hearing, Ms. Dameron testified to an incident in which IDEM gave Hartford Iron notice that waste hadn't been properly disposed of. She responded by sending a self-disclosure letter to IDEM which blamed the waste violation event on August Mack's conduct. (PI hearing transcript, at 144-145). August Mack and Valley Forge then sent a letter to the agencies contradicting Ms. Dameron's description of the incident. (*Id.* at 147). Ms. Dameron in her independent judgement as Hartford Iron's counsel felt that the best way to avoid formal action on the waste violation was to lay the blame on August Mack, and the representations she made to the regulatory agencies directly contradicted the allegations in Valley Forge's complaint identifying Hartford Iron as responsible for the delay in waste disposal. The conflict is only

compounded by Valley Forge making inconsistent representations to the agencies; by contradicting Ms. Dameron's explanation for the discharges, Valley Forge's letter undermined the only defense to the violations Hartford Iron could offer. A similar incident involved a sworn witness statement prepared for a regulatory report by Scott Goldberg, a Hartford Iron employee, attesting to his personal observation of a storm water discharge event. (Doc. No. 45-8). Valley Forge's attorney responded by insisting that Mr. Goldberg make changes to his statement, in a way that Ms. Dameron believed shifted blame for the discharge from August Mack to Hartford Iron. (PI hearing transcript, at 138-139). These examples illustrate the difficulty any attorney charged with representing both Hartford Iron's and Valley Forge's interests would encounter, and show that it is not only likely but virtually certain that the conflict will materially limit the attorney's representation of Hartford Iron.

Accordingly, the conflict of interest created by Valley Forge's breach of contract claim against Hartford Iron prevents Valley Forge from controlling the defense to the environmental actions as a matter of law.


## 2. Right to Control the Remediation

Valley Forge also argues that even if a conflict exists with regard to the defense of the IDEM and EPA claims, it doesn't impact its absolute right to control the remediation itself. This argument is based on characterizing the costs of the remediation as a "settlement" or "damages" rather than defense costs.

As an initial matter, Valley Forge provides no authority for the proposition that a conflict that influences the defense to an environmental claim doesn't also infect the remediation costs. Instead, it relies chiefly on two cases from Indiana in which courts upheld the right of insurers to refuse to pay settlements in conflict situations. In <u>Am. Family Mut. Ins. Co. v. C.M.A. Mortg., Inc</u>., 682 F. Supp. 2d 879 (S.D. Ind. 2010), an insurer agreed to fund a mortgage company's defense in a Fair Credit Reporting Act class action suit. Because the insurer decided to contest coverage, it agreed to pay for independent defense counsel and didn't exercise control over the defense. When the independent defense counsel entered into a settlement with the class and demanded that the insurer pay it, the insurer refused, relying on a portion of the insurance contract that prohibited voluntary payments without the insurer's consent. The court held that the insurer was within its rights to refuse to pay the settlement, given the clear language in the policy prohibiting voluntary payments. Similarly, in <u>Klepper v. ACE Am. Ins. Co</u>., 999 N.E.2d 86 (Ind. App. 2013), an insurer provided independent counsel for a class action suit but reserved its right to deny coverage, then refused to pay a settlement the insured entered into without its consent. The court held that the insurer didn't breach its policy contract in refusing to pay the settlement, because language in the policy forbade the insured from making voluntary payments without the insurer's consent.

The situations in <u>C.M.A</u>. and <u>Klepper</u> differ from the circumstances here. In both those cases, the insurer was disputing coverage – and both courts highlighted this as an important factor in their holdings. The <u>C.M.A</u>. court

emphasized that the insurer had reserved its rights to pay any part of the claim at all. *See* <u>Am. Family v. C.M.A. Mortg</u>., 682 F. Supp. 2d at 892 (noting that because the insurer reserved its rights "without being bound by any adverse 'determination' resulting from a trial of the class action, then clearly it would also not be bound by any adverse 'determination' resulting from an agreement voluntarily entered into by CMA."). Similarly, the <u>Klepper</u> court explained that what freed the insurer to repudiate the settlement was the dispute over coverage, as "for a settlement agreement to be binding on an insurer, coverage must be shown." <u>Klepper v. ACE</u>, 999 N.E.2d at 95-96.

By contrast, Valley Forge has stated repeatedly that it doesn't dispute coverage and will pay all reasonably necessary remediation costs up to the policy limits. The insurers in <u>C.M.A</u>. and <u>Klepper</u> paid for defense counsel but sought to escape indemnifying the insured on the underlying FCRA claim at all; forcing them to be bound by the settlement before the coverage dispute was resolved would have nullified the right to contest coverage. They prevailed in court based on the insurance policy's prohibition on voluntary payments. While that same provision exists in the policies here, it only prohibits voluntary payments *without Valley Forge's consent*. Valley Forge has, in effect, already consented to the settlement at issue here – the Agreed Order with IDEM – but seeks to exercise control over how precisely the obligations under that settlement are met.

While <u>C.M.A</u>. and <u>Klepper</u> involved settlements to traditional lawsuits, this case involves a defense to environmental regulatory enforcement. As other courts have noted, the distinction between "defense" and "indemnity" costs blur in

environmental actions, in which investigations are open-ended and remediation is intended both to address past violations and to convince regulators not to proceed further against the violator. *See* <u>Gen. Acc. Ins. Co. of Am. v. State, Dep't of Envtl. Prot</u>., 143 N.J. 462, 476, 672 A.2d 1154, 1162 (1996) (counting as both "defense" and "indemnity" the costs of investigative activities that "kills two birds with one stone in the sense of fulfilling a defense obligation while also relieving the policyholder of a potential claim for damages."). Valley Forge's motion doesn't draw a clear distinction between what activities in the ongoing environmental cleanup efforts it considers "remediation" as opposed to "defense," and is silent as to who will make this (most likely hotly contested) determination. That defense and remediation activities are inextricably intertwined is also reflected in the 2012 agreement itself, which specifies that defense counsel's duties include overseeing the environmental contractors doing the remediation work.

Accordingly, many of the same conflicts concerns presented by Valley Forge's control over the defense are also implicated by control of the remediation. Valley Forge's lawsuit attempts to avoid some of the costs of remediation on the grounds that Hartford Iron's actions have prevented August Mack from fixing the problem. Were Valley Forge to exercise control over the remediation despite its lawsuit, it would have an incentive to prioritize fixing things for which it is unquestionably responsible while neglecting necessary work for which it believes Hartford Iron will ultimately foot the bill – even if doing so exposes Hartford Iron to a high risk of future enforcement action. For these reasons, Valley Forge is

not entitled to summary judgment on its claim for declaratory judgment regarding control over the remediation.

### 3. Enforcement of the Settlement Agreements

Valley Forge's third argument is that the 2012 settlement agreement should be enforced as written, because it was an arms-length contract negotiated between counseled parties and so not subject to the same presumptions against the insurer that govern insurance policies under Indiana law. It would be unfair, Valley Forge argues, to strip it of its rights to control the defense and remediation, because those rights were the only thing it got out of the settlement agreement in the first place.

In light of the finding that a conflict of interest exists as a matter of law, this argument doesn't require extended discussion. Even an otherwise valid, arms-length contract can't require (or even permit) Hartford Iron's appointed defense attorney to violate state ethical rules by providing a conflicted defense. While Valley Forge argues that this renders its rights to control the defense under the settlement agreement illusory, this is a conflict of Valley Forge's own making. Had Valley Forge filed suit only for declaratory relief to clarify the parties' obligations, no conflict would exist and Valley Forge would be free to enjoy its bargained-for right to control the underlying defense to the environmental actions. By seeking a damage remedy for breach of contract, however, Valley Forge effectively forfeited its control rights. Valley Forge's claim for breach of contract seeks damages from Hartford Iron for the same incurred costs that

Hartford Iron contends are covered under the insurance policies; by filing its complaint, Valley Forge in effect disputed its duty to pay for costs associated with the remediation of the Hartford Iron site. This created a conflict of interest for defense counsel hired by Valley Forge to represent Hartford Iron's interests in the context of the IDEM and EPA enforcement actions, and as a matter of Indiana law, such a conflict of interest prevents Valley Forge from exercising its contractual rights to control no matter what the contract says.

### C. Valley Forge's motion for clarification of the preliminary injunction ruling

At the same time Valley Forge filed its motion for partial summary judgment, it also filed a motion asking for clarification of the implications of the court's ruling denying the motion for a preliminary injunction. Valley Forge argues that clarification is necessary because Hartford Iron stopped cooperating with Valley Forge entirely and conducted the defense on its own after the preliminary injunction hearing, having seemingly interpreted the denial of the preliminary injunction to mean that it had the right to control the defense unilaterally from then on. Valley Forge's motion asks the court to answer four questions about what the preliminary injunction ruling does or doesn't entitle the parties to do going forward.

No clarification of the preliminary injunction order is appropriate. The court denied Valley Forge's request for a preliminary injunction because Valley Forge hadn't shown likelihood of success on the merits of its declaratory

judgment counts, and so wasn't entitled to appoint new defense counsel for Hartford Iron without Hartford Iron's consent *at that time*. After denying the motion, the court stated:

> I recognize that Hartford Iron might be back with a request for its own counsel, not subject to Valley Forge's control, but funded by Valley Forge. And in light of today's finding that a conflict exists for an attorney attempting to represent Hartford Iron while Valley Forge maintains control over the litigation, I don't anticipate need for additional evidence, though I think it remains to determine what remedy or relief would be appropriate...

(Doc. No. 60, p. 243).

When the court said it didn't think additional evidence would be needed, the statement was in the context of a potential competing motion for a preliminary injunction concerning Hartford Iron's right of refusal on the selection of counsel. The court made no findings that control, or even influence, the rest of the litigation. Any such findings would have been inappropriate at that stage, because the only question before the court was whether Valley Forge had met the stringent standards for a preliminary injunction – standards that differ greatly from those that apply in other stages of this litigation. The court tried to make that point clear at the hearing:

> I have before me only one properly presented claim for preliminary injunction relief and that single claim is for the appointment of Mr. Hatchett as an additional attorney under the 2012 settlement agreement, and I can only rule on that claim, and I do so by denying Valley Forge's motion for a preliminary injunction.

(Id.)

In any case, Valley Forge's motion for clarification is now moot. While the court didn't make a finding at the preliminary injunction hearing that a conflict

of interest exists and prevents Valley Forge from controlling the defense as a matter of law, it makes such a finding in this order.

## IV. Conclusion

For these reasons, the court DENIES Valley Forge's motion for partial summary judgment (Doc. No. 93), DENIES AS MOOT Valley Forge's motion for clarification (Doc. No. 95), DENIES Hartford Iron's motion for leave to file supplemental exhibits (Doc. No. 274), and GRANTS Hartford Iron's motion to seal (Doc. No. 276).

SO ORDERED.

ENTERED: December 7, 2015


_____/s/ Robert L. Miller, Jr._____
Judge
United States District Court