UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| VALLEY FORGE INSURANCE COMPANY, </br></br> Plaintiff, </br></br> vs. </br></br> HARTFORD IRON & METAL, INC., et al., </br></br> Defendants. </br>_____ </br> HARTFORD IRON & METAL, INC., et al., </br></br> Third-Party Plaintiffs, </br></br> vs. </br></br> CONTINENTAL INSURANCE CO., et. al, </br> Third-Party Defendants | Cause No. 1:14-CV-6-RLM-SLC |

OPINION and ORDER

Third-party defendants August Mack Environmental, Inc., Environmental Field Services, and James A. Berndt[1] have moved to dismiss third-party plaintiff Hartford Iron's claims against them or, in the alternative, to compel arbitration of the claims.

---

[1] EFS is an affiliate of August Mack, and Mr. Berndt is an August Mack employee. For convenience, the court refers to all three moving third-party defendants as "August Mack."

The factual background of this dispute is complex and known to the parties, so only the bare essentials are included here. Hartford Iron runs a scrapyard that developed a series of environmental problems, most notably rain water picking up chemicals from the scrap yard soil and flowing off the property as contaminated stormwater. IDEM brought enforcement actions to make Hartford Iron remediate the site, particularly the stormwater discharge problem. Hartford Iron sought coverage from its liability insurer Valley Forge, and the two eventually entered into two settlements obligating Valley Forge to pay for the remediation and the defense of the regulatory actions; only the Second Settlement Agreement is relevant here. Valley Forge hired August Mack as an environmental contractor to do the actual remediation work. Remediation work hasn't gone smoothly, and Valley Forge eventually sued Hartford Iron on breach of contract and various declaratory judgment claims. Hartford Iron filed 21 third-party claims against August Mack, blaming August Mack for shoddy work and various other sorts of malfeasance in connection with the remediation of the scrapyard.

Now before the court are August Mack's motions to dismiss and to compel arbitration. The motions argue generally that the third-party claims against August Mack must be dismissed: (1) for improper venue, because the contract applicable to the remediation work has a forum-selection clause; (2) because the contract also has a mandatory arbitration clause, and Hartford Iron hasn't sought arbitration before filing suit; and (3) for failure to state a claim. The court

addresses the improper venue argument first, because if the forum selection clause applies, it would be inappropriate for this court to resolve the other two questions; disputes about the enforceability of the arbitration clause and about the legal sufficiency of the third-party claims should be resolved by one of the two courts specified by the contract.

Federal Rule of Civil Procedure 12(b)(3) permits motions to dismiss based on improper venue. "A lack of venue challenge, based upon a forum-selection clause, is appropriately brought as a Rule 12(b)(3) motion to dismiss." Continental Ins. Co. v. M/V Orsula, 354 F.3d 603, 606–607 (7th Cir. 2003) (citations omitted). In resolving issues related to improper venue, the court isn't limited to the four corners of the complaint and can consider other evidence submitted by the parties. *See* Buffet Crampon S.A.S. v. Schreiber & Keilwerth, Musikinstrumente Gmbh, No. 3:09-CV-347RM, 2009 WL 3675807, at *4 (N.D. Ind. Nov. 2, 2009). The court must take all allegations in the complaint as true to the extent they aren't contradicted by other evidence, and must resolve all factual conflicts, and draw all reasonable inferences, in the non-movant's favor. *See* Turnock v. Cope, 816 F.2d 332, 333 (7th Cir. 1987) (superseded by statute on other grounds). Ultimately, "[w]hen a defendant moves to dismiss for improper venue pursuant to Rule 12(b)(3), the plaintiff bears the burden of proving that venue is proper." Carr v. ABC Fin., No. 1:08–CV–0318, 2009 WL 1615396, at *1 (S.D. Ind. June 9, 2009) (citations omitted). As the third-party plaintiff, Hartford Iron bears the burden of showing that venue is proper in this district.

Hartford Iron's claims are based on a written agreement through which Valley Forge hired August Mack to remediate the scarp yard at Valley Forge's expense, but ultimately for Hartford Iron's benefit. Hartford Iron wasn't a party to this agreement, but correctly identifies itself as a third-party beneficiary and seeks to enforce the contract on that basis. As a third-party beneficiary to the contract, Hartford Iron is bound by all the contract's provisions – including any valid and enforceable forum selection clause. *See* Hugel v. Corp. of Lloyd's, 999 F.2d 206, 210 n.7 (7th Cir. 1993) (noting that "third-party beneficiaries of a contract would, by definition, satisfy the 'closely related' and 'foreseeability' requirements" necessary to bind a non-party to a contract's forum selection clause); *see also* Cent. States, Southeast & Southwest Areas Pension Fund v. Gerber Truck Serv., Inc., 870 F.2d 1148, 1151 (7th Cir. 1989) ("Third-party beneficiaries usually take contracts as they find them."); Hughes Masonry Co. v. Greater Clark County School Bldg. Corp., 659 F.2d 836, 839 (7th Cir. 1981) (holding that a party seeking to enforce a contract "cannot rely on the contract when it works to its advantage, and repudiate it when it works to its disadvantage"); TWH, Inc. v. Binford, 898 N.E.2d 451, 454 (Ind. Ct. App. 2008) (holding that non-signatory seeking to enforce a contract was bound by the contract's arbitration provision, because one can't "bring a claim under a contract and disavow a term therein").

Although several of Hartford Iron's 21 claims against August Mack sound in tort rather than contract, that doesn't necessarily permit Hartford Iron to

escape a contractual forum selection clause. When a dispute is fundamentally related to a contractual agreement, the terms of the contract – including a forum selection clause – govern the dispute, even if the plaintiff brings claims sounding in tort rather than contract law. *See* Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd., 364 F.3d 884, 889 (7th Cir. 2004) (holding that common law fraud claims were still subject to forum selection clause because "the existence of multiple remedies for wrongs arising out of a contractual relationship does not obliterate the contractual setting, does not make the dispute any less one arising under or out of or concerning the contract, and does not point to a better forum for adjudicating the parties' dispute than the one they had selected to resolve their contractual disputes."); Hugel v. Corp. of Lloyd's, 999 F.2d 206, 209 (7th Cir. 1993) ("Regardless of the duty sought to be enforced in a particular cause of action, if the duty arises from the contract, the forum selection clause governs the action."). A close examination reveals that all of the third-party claims against August Mack relate solely to August Mack's conduct in remediating the scrapyard site in accordance with its contractual duties.[2]

---

[2] Count 21 of Hartford Iron's third-party complaint, for example, alleges tort claims for misrepresentation and concealment. All of August Mack's alleged misrepresentations and acts of concealment enumerated in the third-party complaint relate to the site remediation process. Count 24 alleges defamation against August Mack employee James Berndt, and Mr. Berndt's allegedly defamatory statements were made to IDEM or other parties involved in this dispute and concerned Hartford Iron's conduct in the remediation project. The other tort counts are all similarly grounded in the remediation of the scrapyard, and therefore arise from and concern August Mack's contract with Valley Forge.

Accordingly, if the contract contains a forum selection clause and the clause is otherwise enforceable, Hartford Iron may only bring suit in the specified forum. August Mack points to a forum selection clause that unambiguously disqualifies this court from hearing the case, but the parties dispute whether that clause actually applies because they disagree about which documents constitute the contract underlying Hartford Iron's claims. Hartford Iron's third-party complaint says that it seeks to enforce the "Master Services Agreement," which is a short letter from Valley Forge's claim consultant to August Mack. The MSA recites that Valley Forge is hiring August Mack to fulfill Valley Forge's obligations under the Settlement Agreement, and expressly incorporates as binding on August Mack the "relevant terms" of the Settlement Agreement. It then sets out the procedure by which August Mack will seek Valley Forge's approval for specific projects, and states that prices will be set according to a separate August Mack fee schedule. Hartford Iron contends that this MSA – plus the undefined "relevant terms" incorporated from the Settlement Agreement – forms the entire contract of which it is a third-party beneficiary, and the letter doesn't include a forum selection clause.

August Mack insists that the MSA letter wasn't the whole agreement; an additional document dated the day after the initial letter also concerns the relationship between Valley Forge and August Mack as it relates to the remediation work. The first part of that document is another letter from Valley Forge's claim consultant to August Mack, and proposes four initial remediation

tasks for August Mack to begin: coordinating with the prior environmental consultant, reviewing documents, performing an introductory visit to the site, and establishing "scope for stormwater management activities." This letter states that all work on these projects will be performed "in accordance with the terms and fees agreed to in the Master Services Agreement executed [the prior day] and the Valley Forge Conditions attached to this proposal." The second part of the document is the referenced Terms and Conditions, which include detailed provisions on the nature of the contract and how it is to be enforced and interpreted.

Two parts of the Terms and Conditions are relevant here. Under the heading "Agreement," the document provides that:

> This agreement is governed by the following terms and conditions in the order of precedence: a) The December 12, 2012 Master Service Agreement (MSA); b) these Terms and Conditions; and c) August Mack's Proposal recently accepted by the Client (the Proposal, the MSA and these Terms and Conditions shall be collectively referred to as the "Agreement"). This Agreement constitutes the entire agreement between the parties and shall supersede all prior oral or written communications.

The other relevant provision is the forum selection clause on which August Mack bases its motion. The clause provides that any litigation brought in connection with the agreement shall be brought in either the district court for the Southern District of Indiana or in the Superior Court of Marion County.

Accordingly, the chief point of contention between Hartford Iron and August Mack is whether the Terms and Conditions are part of the contract on which Hartford Iron is suing, such that the forum selection clause binds Hartford

Iron. Hartford Iron takes the position that the second letter and the Terms and Conditions don't apply, because Hartford Iron's third-party complaint against August Mack referenced and attached only the MSA, not the additional documents executed later. Because the second letter referred only to four initial tasks, Hartford Iron believes the Terms and Conditions only modified the MSA's provision as to those four tasks – and because those tasks aren't the basis for any of Hartford Iron's claims against Valley Forge, the MSA *without* the Terms of Service governs this dispute.

Hartford Iron's interpretation is inconsistent with Indiana contract law and with the plain terms of the documents. "When interpreting a contract, our paramount goal is to ascertain and effectuate the intent of the parties." First Nat. Bank & Trust v. Indpls. Pub. Hous. Agency, 864 N.E.2d 340, 350 (Ind. Ct. App. 2007). Whether multiple executed documents are separate agreements or parts of the same contract turns on whether the parties intended them to be separate agreements or parts of a unitary whole. The most important indicia of the parties' intent on this point is whether the different writings involve different consideration. *See* Heritage Dev. of Ind., Inc. v. Opportunity Options, Inc., 773 N.E.2d 881, 891 (Ind. Ct. App. 2002) ("The usual test of the severability of a contract is the entirety or divisibility of the consideration"). Judged from this perspective, the MSA standing alone can't be a contract unto itself because the consideration exchanged necessarily depends on future agreements; the MSA merely states that Valley Forge will pay August Mack's usual fees (with particular

modifications) for each part of the remediation *if* Valley Forge approves future project proposals. If Valley Forge never approved a proposal, it would never owe August Mack anything. Future agreements (in the form of proposals accepted by Valley Forge) are clearly contemplated and indeed are necessary, because without them Valley Forge has incurred no binding obligation and thus offered no consideration to support the contract. This is powerful evidence that the parties intended the MSA to be simply a framework which, when combined with the details embodied in future proposals, would constitute the full enforceable contract.

In addition to the severability of consideration, "the intention of the parties is to be ascertained from the whole instrument viewed in connection with the conditions when the contract was made." Cricket Ridge, LLC v. Wright, 880 N.E.2d 1271, 1275 (Ind. Ct. App. 2008). Temporal proximity and identity of parties and subject matter are important factors in deciding whether different writings should be construed as a unitary whole. *See* Peoples Bank & Trust Co. v. Price, 714 N.E.2d 712, 717 (Ind. Ct. App. 1999). Although the MSA and the subsequent letter regarding the first few tasks weren't executed on the same day, they were dated only one day apart. And the parties and subject matter of the two writings is identical; both concern Valley Forge hiring August Mack to remediate the Hartford Iron site.

It would make little sense for multiple separate contracts to govern the myriad of individual steps, tasks and projects associated with the remediation,

particularly with regard to procedural matters like forum selection. Under Hartford Iron's interpretation, any claims about the initial site visit or the other preliminary tasks would be subject to the Terms and Conditions – and thus to a forum selection clause and an arbitration clause – while other similar tasks in the remediation process wouldn't. Hartford Iron hasn't articulated any reason that Valley Forge and August Mack would want to risk duplicative proceedings by making some tasks subject to arbitration and a limited forum while other tasks are not so limited.

Finally – and most importantly – the plain language of the Terms and Conditions makes crystal clear that the parties intended the documents to be construed together. The Terms and Conditions define "Agreement" to include the MSA, the proposal, and the Terms themselves, and explicitly that that Agreement "constitutes the entire agreement between the parties and shall supersede all prior oral or written communications." So even if the MSA constituted a contract unto itself, it existed for less than a day before it was superseded by a new contract comprising all the documents together. Because all of the conduct that forms the basis of Hartford Iron's claims took place after the date of the second letter, the contract Hartford Iron seeks to enforce must be the later version constituting the MSA, the proposal letter, and the Terms and Conditions. Accordingly, Hartford Iron is bound by the Terms and Conditions in addition to the MSA.

Hartford Iron also argues that even if the rest of the Terms and Conditions apply to its claims against August Mack, the forum selection clause doesn't. As already noted, the MSA incorporates by reference the "relevant terms" of the Settlement Agreement between Hartford Iron and Valley Forge, and the Terms and Conditions state that the MSA takes precedence over the Terms themselves. Accordingly, Hartford Iron argues, the "relevant" provisions of the Settlement Agreement trump any conflicting provisions in the Terms and Conditions – and the Settlement Agreement includes a *different* forum selection clause, which says that disputes over the agreement shall be brought in an "Indiana court of competent jurisdiction." Because this court sits in Indiana and unquestionably has jurisdiction over these claims, Hartford Iron believes this is the proper venue for its claims.

For Hartford Iron's argument to succeed, the forum selection clause of the Settlement Agreement must be among the undefined "relevant terms" incorporated into the MSA. Neither Hartford Iron nor August Mack suggest a workable way for the court to determine which terms of the Settlement Agreement the parties to the contract thought were "relevant" at the time the MSA was executed. In any case, that thorny issue needn't be resolved because even if the forum selection clause of the Settlement Agreement is among the terms incorporated into the MSA, it isn't actually inconsistent with the forum selection clause in the Terms and Conditions. Courts will favor a reading of a contract that "harmonizes its provisions as opposed to one which causes the

provisions to be conflicting." Peoples Bank & Trust Co. v. Price, 714 N.E.2d 712, 717 (Ind. Ct. App. 1999); *see also* Bicknell Minerals, Inc. v. Tilly, 570 N.E.2d 1307, 1316 (Ind. Ct. App. 1991). The forum selection clause in the Settlement Agreement limits actions only to courts that are in Indiana and of competent jurisdiction. The later forum selection clause in the Terms and Conditions merely narrows that set of options to two specific courts (the Southern District of Indiana and the Superior Court of Marion County). Both of the specific courts permitted by the forum selection clause in the Terms and Conditions also satisfy the forum selection clause in the Settlement Agreement, so the two provisions can be read in harmony and both given effect by requiring that disputes implicating the MSA be heard in one of the two specific courts named. In other words, Hartford Iron and Valley Forge are free to bring suit against each other in any Indiana court in accordance with their Settlement Agreement, but cases involving August Mack's more limited role in the whole controversy must be heard in either the Southern District or Marion County.

Hartford Iron has two more arrows in its quiver, but both miss the mark. First, it insists that even if the forum selection clause applies to these claims, the court shouldn't enforce the clause because doing so would be inefficient – the claims against Valley Forge and the other insurers would proceed in this forum, while the other claims would be heard in a parallel proceeding in another court (and possibly in arbitration). That may be true, but Hartford Iron cites no legal authority suggesting that a valid forum selection clause is to be ignored

simply because it turns out to be inconvenient to one party. "[F]ederal courts are friendly to the use of forum selection clauses to determine which federal district court shall host a case," and will generally be enforced absent compelling reasons to the contrary. IFC Credit Corp. v. Aliano Bros. Gen. Contractors, 437 F.3d 606, 608 (7th Cir. 2006). Separating out the claims against August Mack likely won't result in complete duplication of efforts in parallel forums, because August Mack is categorically different from the other twelve third-party defendants against whom Hartford Iron brings claims. All the other third-party defendants are insurance companies, and Hartford Iron's claims against them relate to their alleged obligations under insurance contracts. August Mack, on the other hand, is the contractor performing actual remediation work on the ground, so the evidence relevant to Hartford Iron's claims against August Mack is unlikely to be identical to the evidence relevant to the insurance disputes. August Mack agreed to carry out the site remediation on the express understanding that it was subjecting itself to suits over the project only in two particular courts. Though there will certainly be some overlapping evidence and witnesses if the claims against August Mack proceed in another forum, inefficiency alone doesn't justify robbing a party to a contract of its bargained-for rights.

Hartford Iron's waiver argument fares no better. In addition to this case, Hartford Iron sued August Mack in a parallel case in Marion County Superior Court – one of the fora permitted under the clause. In that state court case, Hartford Iron moved to stay the proceedings so that all disputes related to the

remediation could be decided in this court. August Mack joined in a response brief prepared by another defendant, which agreed that a stay was "desirable." Hartford Iron takes the position that agreeing to a stay of the state case amounted to waiver of any arguments based on the forum-selection clause.

To begin with, the argument is wholly undeveloped – it constitutes a single sentence in Hartford Iron's brief, and that sentence simply states without citation to any legal authority that August Mack waived its objections to venue. This deficiency alone justifies rejecting the argument; it isn't the court's role to make Hartford Iron's legal arguments for it. Regardless, an objection to venue is generally waived only by waiting too long to raise the issue. *See* Fed. R. Civ. Pro. 12(h)(1) (providing that an improper venue defense under Rule 12(b)(3) is waived by omitting it from a responsive pleading or motion). The record reflects that August Mack promptly objected to having this case heard in the Northern District of Indiana, moving to dismiss based on the forum selection clause on the day its responsive pleading was due. August Mack clearly made its venue objection within the limitations period listed in Rule 12(h)(1), and Hartford Iron offers no reason to think that August Mack waited an unreasonably long time to raise this issue.

Hartford Iron cites no authority for the proposition that simply agreeing not to contest a motion to stay litigation in another forum waives rights bargained for in a forum selection clause. Regardless, there is no reason to apply the concept of waiver to such a situation. Hartford Iron apparently takes August

Mack's decision not to contest the stay as an implicit agreement that the claims should be heard in this court. But a defendant may agree to stay a parallel case for a multitude of reasons other than conceding that the claims should be heard elsewhere – including simply to delay, in hopes that the matter will settle before the parties have to incur substantial litigation costs. The waiver argument would be much stronger had August Mack joined in a motion to transfer, but agreeing to a stay carries no suggestion that a party intends to relinquish its rights to a particular venue under the terms of a contract. Under these circumstances, August Mack can't be said to have waived any objection based on the forum-selection clause.

Because the forum selection clause in the Terms and Conditions applies and is otherwise enforceable, this isn't the proper venue for Hartford Iron's third-party claims against August Mack and the court doesn't reach August Mack's other arguments for dismissal. The proper court should decide whether arbitration is mandatory, so the court's conclusion that venue is improper renders August Mack's motion to compel arbitration moot.

The court hereby GRANTS August Mack's motion to dismiss based on improper venue (Doc. No. 353) and DENIES AS MOOT August Mack's motion to compel arbitration (Doc. No. 357). Hartford Iron's claims against August Mack, James Berndt, and Environmental Field Services are DISMISSED without prejudice. Hartford Iron must bring these claims, if at all, in the U.S. District

Court for the Southern District of Indiana or the Superior Court of Marion County.

SO ORDERED.

ENTERED: <u>May 12, 2016</u>

<u>        /s/ Robert L. Miller, Jr.        </u>
Judge
United States District Court