UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| VALLEY FORGE INSURANCE COMPANY, )<br>)<br>PLAINTIFF, )<br>)<br>vs. )<br>)<br>HARTFORD IRON & METAL, INC., )<br>ET AL., )<br>)<br>DEFENDANTS. )<br>_____ )<br>HARTFORD IRON & METAL, INC., )<br>ET AL., )<br>)<br>THIRD-PARTY PLAINTIFFS, )<br>)<br>vs. )<br>)<br>CONTINENTAL INSURANCE CO., )<br>ET. AL, )<br>THIRD-PARTY DEFENDANTS )  | CAUSE NO. 1:14-CV-6-RLM-SLC |

OPINION and ORDER

Third-party defendant Resolute Management Inc. moves to dismiss third-party plaintiff Hartford Iron's claims against it. Because Hartford Iron's third-party complaint doesn't adequately state any claim against Resolute that is plausible on its face, the court grants Resolute's motion and dismisses all Hartford Iron's claims against Resolute with prejudice.

I. BACKGROUND

The factual background of this dispute is complicated and known to the parties, so the court reviews the facts only briefly. Hartford Iron runs a scrapyard that developed a series of environmental problems, most notably rain water picking up chemicals from the scrap yard soil and flowing off the property as contaminated stormwater. The Indiana Department of Environmental Management and the EPA brought enforcement actions to make Hartford Iron remediate the site, and in particular to fix the stormwater discharge problem. Hartford Iron sought coverage from its liability insurer, Valley Forge, and the two eventually entered into two settlement agreements obligating Valley Forge to pay for the remediation of the site and the defense of the regulatory actions.

Valley Forge hired Resolute to act as a third-party claims administrator, and Resolute became heavily involved in managing the remediation of the site. Environmental contractor August Mack was retained at Valley Forge's expense, and work began on various projects to try and remedy the environmental problems. Remediation work hasn't gone smoothly; stormwater discharges continue to occur, and insured and insurer quickly blamed each other for the ongoing noncompliance.

Valley Forge eventually sued Hartford Iron on breach of contract and various declaratory judgment claims. Hartford Iron filed counterclaims against Valley Forge and third-party claims against Resolute and several other parties. As relevant here, Hartford Iron alleges that Resolute and Valley Forge mismanaged the remediation and provided Hartford Iron with a defense to the

environmental enforcement actions that was tainted by conflict of interest. Hartford Iron also alleges that Resolute took on a role beyond usual claims management duties, including paying for 21.43% of the cost of the remediation and defense.

All of the counterclaim defendants and third-party defendants moved to dismiss Hartford Iron's claims. Before the court ruled on the motions to dismiss, Hartford Iron made the motions moot by amending its third-party complaint and counterclaims. Hartford Iron's amended complaint consolidates all of Hartford Iron's counterclaims and third-party claims into a single 170-page, 25-count pleading against various combinations of third-party defendants.

This matter is before the court on Resolute's renewed motion to dismiss, which argues that Hartford Iron's amended third-party complaint doesn't allege a plausible claim for relief and that there is no basis to hold Resolute – rather than Valley Forge or the environmental contractors – liable for the remediation problems.

## II. STANDARD OF REVIEW

Resolute moves to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). To state a claim, a complaint need only contain a short and plain statement showing that the plaintiff is entitled to relief. *See* EEOC v. Concentra Health Servs., Inc., 496 F.3d 773, 776 (7th Cir. 2007). When ruling on a Rule 12(b)(6) motion, the court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in favor

of the non-moving party. *See* Hecker v. Deere & Co., 556 F.3d 575, 580 (7th Cir. 2009). However, facts included in documents that are attached to the complaint or incorporated to it by reference may defeat contrary allegations in the complaint. *See* Wright v. Assoc. Ins. Cos., Inc., 29 F.3d 1244, 1248 (7th Cir. 1994).

A complaint may survive a motion to dismiss under Rule 12(b)(6) if it contains sufficient factual allegations to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Adams v. City of Indianapolis, 742 F.3d 720, 728 (7th Cir. 2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the…claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (ellipsis in original). Nonetheless, "bare legal conclusions" need not be accepted as true even if alleged as facts, and a "formulaic recitation of a cause of action's elements will not do." Twombly, 550 U.S. at 547.


III. Discussion

Resolute offers arguments specific to different counts of Hartford Iron's third-party complaint, but as an initial matter also asks the court to dismiss the entire complaint because it is long, convoluted, and generally impossible to decipher. Hartford Iron brings claims against sixteen entities, and rather than

making factual allegations about individual third-party defendants, the complaint often lumps them together in large groups and makes allegations using the group label. Hartford Iron includes Resolute in two groups: "CNA," which includes Valley Forge and several other companies affiliated with Valley Forge, and "Primary Insurers," which includes all the parties in "CNA" plus other insurance companies not affiliated with Valley Forge. Having established these definitions, the complaint then attributes conduct, communications, and liability to "CNA" or "Primary Insurers" as a group – eliding the fact that these groups contain many distinct entities who often can't *all* be responsible for the particular act or statement alleged.

Resolute argues that in light of this pleading strategy, it is essentially impossible for any given third-party defendant to figure out what exactly it stands accused of. Resolute suggests that this "obfuscation" doesn't give Resolute adequate notice of the claims and thereby violates Federal Rule of Civil Procedure 8, which requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." As an additional basis for dismissal, Resolute points to the sheer length and unwieldiness of the complaint and argues that it hardly qualifies as the "short and plain statement" mandated by Rule 8.

It seems quite likely that Hartford Iron's byzantine 170-page amended complaint – which swamps the reader with excruciating detail of dealings said to implicate thirteen separate corporate siblings with varying connections to the

central events, then glides into conclusory claims – runs afoul of Rule 8. But rather than dismiss the amended complaint on these grounds, which would entail telling Hartford Iron to go back to the drawing board from which this amended complaint already was taken, it's preferable to address the merits of Resolute's arguments as to each claim against it. Resolute was able to figure out what it is alleged to have done, and Hartford Iron had ample opportunity to explain its claims in its response to the dismissal motion. The court proceeds – and grants the dismissal motion – on the merits of each claim, rather than the overall presentation.

## A. Breach of Contract Claims

Counts 1-18[1] and Count 20 of Hartford Iron's amended third-party complaint allege that Resolute[2] breached various duties arising under either the insurance policies written by the CNA companies or the settlement agreements between Valley Forge and Hartford Iron. Resolute argues that because it wasn't a party to either the insurance contracts or the settlements, it has no contractual

---

[1] Resolute argues that because of Hartford Iron's confusing grouping practices, it's unclear whether Count 1 is intended to apply to Resolute or not. The court doesn't resolve this dispute because even if the count was meant to apply to Resolute, it fails as a matter of law.

[2] As already noted, the third-party complaint usually allege that "CNA" took these actions but includes Resolute in the definition of CNA. For convenience, this opinion uses "CNA" to refer to the CNA-affiliated defendants other than Resolute.

duties towards Hartford Iron and all the breach of contract counts must be dismissed.

Hartford Iron offers four arguments as to why Resolute should be bound by contracts to which it isn't a named party: that Resolute assumed CNA's duties under the policies as a reinsurer; that the settlements bind Resolute as an "assign" or "representative" of CNA; that Resolute is in privity with CNA; and that regardless of the precise nature of Resolute's relationship with the insurers, it should be barred from arguing that it isn't bound by the insurance contracts because it refuses to disclose the terms of its relationship with CNA. None of Hartford Iron's arguments are persuasive. All of the contract-based claims against Resolute must be dismissed.

*Resolute is not liable as a reinsurer*

First, Hartford Iron suggests that Resolute is directly liable to Hartford Iron under the terms of the original insurance policies as a primary insurer. Resolute is a claims management company – not a company ordinarily in the business of issuing insurance policies – but Hartford Iron suggests that Resolute "stepped into CNA's shoes" and acted as a "sharing carrier" or co-insurer for the policies at issue here. The third-party complaint uses a variety of terms to describe the supposed relationship between Resolute and CNA, but in its opposition to the motion to dismiss Hartford Iron clarifies that the complaint "alleges that Resolute is directly bound to Hartford Iron as a re-insurer." Although the third-party

complaint itself never uses the terms reinsurance or reinsurer, the complaint – construed very liberally – can be read to allege that Resolute acts as a reinsurer for CNA and acquired CNA's rights and responsibilities under the insurance contracts.

Two parts of Hartford Iron's third-party complaint seem to allege reinsurance relationships involving the policies at issue. First, Hartford Iron alleges that Resolute is "part of the Berkshire Hathaway group" and that in 2010, CNA paid Berkshire Hathaway $2 billion to assume a portion of CNA's environmental liabilities. Second, Hartford Iron points to a June 2014 email in which a CNA employee describes how payments to defense counsel and remediation contractors are paid: CNA pays 78.57% of the costs and Resolute pays 21.43%. While the email describes this as an "informal cost sharing" arrangement, the third-party complaint alleges that the cost-sharing must have been formalized in one or more written agreements. Jamie Dameron – the attorney Valley Forge hired to act as Hartford Iron's defense counsel in the underlying environmental actions – later discussed Resolute's role in the remediation with Resolute and CNA, and in an email summarizing the call stated that "Resolute has a confidential reinsurance contract with CNA."

Whether a reinsurer is liable to the insured party or only to the original insurer depends on the type of reinsurance contract. The first type is "indemnity reinsurance," in which the reinsurer simply agrees to pay to the original insurer some of the costs attributable to the policy. Under this type of reinsurance

agreement, the "reinsurer assumes no direct liability to the policyholders" and only the original insurer can sue the reinsurer to enforce the contract. Colonial Am. Life Ins. Co. v. Comm'r of Internal Revenue, 491 U.S. 244, 247 (1989). The second type of reinsurance is "assumption reinsurance," in which a reinsurer steps into the shoes of the insurance company that issued the policy and actually assumes its liability to the insured rather than just a portion of the cost arising from that liability. Unlike in the case of indemnity reinsurance, the reinsurer in an assumption reinsurance contract may become directly liable to the policy holder. *See* Hartford Fire Ins. Co. v. California, 509 U.S. 764, 806 (1993); *see also* 44A Am. Jur. 2d Insurance § 1815 (noting that while a reinsurer in an indemnity contract acquires no liability to the insured, "the reinsurer may be directly liable to the original insured if the agreement is to indemnify the insurer against incurring liability rather than incurring a loss.").

Resolute insists that the 2010 Berkshire Hathaway arrangement was one of indemnification rather than assumption, and points to a prior federal case that examined the same deal and concluded that it didn't make the reinsurer directly liable to insured parties. *See* Canal Inc. Co. v. Montello Inc., 826 F. Supp. 2d 1264, 1270-1271 (N.D. Okl. 2011). While the reasoning of that case is persuasive, it isn't necessary to resolve the parties' dispute as to what type of reinsurance the 2010 contract established. Any argument that the 2010 deal made Resolute directly liable to Hartford Iron fails because the third-party complaint doesn't allege that Resolute was itself a party to that deal. The third-

party complaint alleges that Resolute is its own independent corporation, and so is a legal entity distinct from any parents or affiliated companies. Hartford Iron alleges only that (1) Resolute is affiliated with the Berkshire Hathaway group in some unspecified way, and (2) CNA entered into a reinsurance agreement with Berkshire Hathaway. These allegations might state a plausible claim that Berkshire Hathaway might be liable to Hartford Iron as a reinsurer, but there is no suggestion that Resolute itself is a party to any reinsurance contract related to the 2010 Berkshire Hathaway agreement.

Even if the allegations in Hartford Iron's third-party complaint plausibly suggested that Resolute was itself involved in the 2010 deal, the reinsurance contract itself would refute such allegations; Resolute attaches the document to its reply brief (supported by the declaration of an attorney). At the motion to dismiss stage, a court typically considers only the facts alleged in the complaint or contained in exhibits attached to the complaint. *See* <u>Forrest v. Universal Savings Bank, F.A.</u>, 507 F.3d 540, 542 (7th Cir. 2007). A court ruling on a motion to dismiss may, however, consider documents not part of the complaint "if they are referred to in the plaintiff's complaint and are central to his claim." <u>Wright v. Assoc. Ins. Cos., Inc.</u>, 29 F.3d 1244, 1248 (7th Cir. 1994). Paragraph 106 of Hartford Iron's third-party complaint describes the 2010 Berkshire Hathaway agreement, and the agreement is central to Hartford Iron's argument that Resolute can be held liable as a reinsurer. The 2010 contract clearly states that it is between various CNA companies and National Indemnity (another Berkshire

Hathaway-affiliated company), not Resolute. Accordingly, Hartford Iron's allegations about the Berkshire Hathaway agreement are irrelevant; Resolute wasn't a party to that agreement, and so can't have assumed CNA's liabilities through it.

With regard to Resolute's other "informal" cost-sharing plan with CNA, Hartford Iron's own allegations establish that it was at most an indemnification reinsurance agreement – not an assumption reinsurance one. Insurance agreements are no different than other contracts: for Resolute to step into CNA's shoes and become directly liable to Hartford Iron, Hartford Iron would have needed to consent. *See* 44A Am. Jur. 2d Insurance § 1817 (noting the rule that "an insurance company cannot transfer its liability to another company by reinsurance, and compel the policyholders to accept the new company as the insurer, but the policyholder may elect to accept or reject the new insurer."). Accordingly, if Resolute truly assumed the duties of a primary insurer through an assumption reinsurance agreement, a novation would have had to occur. *See* id. ("The existence of an assumption [reinsurance agreement] depends on proof of the ordinary elements of novation, including the agreement of all parties to the new contract and the extinguishment of the old one."). Hartford Iron's complaint and opposition complain that Resolute hasn't disclosed the "cost-sharing" or reinsurance agreement between Resolute and CNA, and if Hartford Iron hasn't seen the agreement it could hardly have consented to it. Moreover, assumption of an insurance policy occurs when "the reinsurer steps into the

shoes of the ceding company with respect to the reinsured policy, assuming **all** its liabilities…" <u>Colonial Am. Life Ins. Co. v. Comm'r of Internal Revenue</u>, 491 U.S. 244, 247 (1989) (emphasis added). Hartford Iron alleges only that Resolute bore 21.43% of the costs associated with the Hartford Iron policies, leaving CNA bearing the rest. Because Resolute agreed to pay only a portion of the defense and remediation costs, this is by definition a cost-sharing or indemnification agreement, not an assumption. *See* <u>Jurupa Valley Spectrum, LLC v. Nat'l Indem. Co.</u>, 555 F.3d 87, 90 (2d Cir. 2009) (holding that insured could not bring suit against its reinsurer, because the reinsurer had agreed to pay only *part* of the original insurer's liabilities and the agreement was therefore not assumption reinsurance).

Accordingly, Hartford Iron's third-party complaint doesn't plausibly allege any basis for holding Resolute directly liable under the insurance policies as a reinsurer.

*Resolute is not liable as an "assign" or "representative"*

Hartford Iron argues alternatively that even if Resolute doesn't qualify as a primary insurer under the policies, it is bound by the policies as an "assign" or "representative" of CNA. The first settlement agreement defines "Valley Forge Insurance Company," to include Valley Forge and also a long list of related entities, including Valley Forge's "affiliates," "assigns" and "representatives." The second settlement doesn't include this expansive definition, but recites that it is

intended to supplement rather than replace the first settlement and that the first settlement's terms remain in effect. Hartford Iron argues that Resolute's extensive role in the remediation and defense work qualify it as an assign or representative of Valley Forge, so that Resolute is liable to Hartford Iron under the terms of the settlement agreements.

"Generally, contract claims in Indiana may be brought only against a party to the contract or those in privity with a party." Winkler v. V.G. Reed & Sons, Inc., 619 N.E.2d 597, 599 (Ind. Ct. App. 1993), aff'd, 638 N.E.2d 1228 (Ind. 1994). The parties to a contract can typically be identified as a matter of law from the terms of the contract itself. *See* Sunman–Dearborn Cmty Sch. Corp. v. Kral–Zepf–Freitag & Assocs., 338 N.E.2d 707, 709 (Ind. Ct. App. 1975). Both settlements were signed by Valley Forge and Hartford Iron; Resolute isn't mentioned anywhere in the contracts and wasn't a signatory. Simply alleging that a non-signatory has a close relationship to the dispute or to one of the parties isn't enough to create contract liability. *See* JMB Mfg., Inc. v. Child Craft, LLC, No. 4:11-CV-0065-TWP-WGH, 2011 WL 4833094, at *3 (S.D. Ind. Oct. 12, 2011) (dismissing contract claims against a non-signatory that the plaintiff alleged was a "subsidiary or associated corporation" of a signatory, because "[r]egardless of the precise nature of their relationship, [the signatory and non-signatory defendants] are unquestionably separate and distinct entities.").

Hartford Iron cites no authority for the proposition that a party signing a contract can agree to bind not only itself but also a large and undefined network

of non-signatories, and that proposition is inconsistent with the basic principle of contract law that only a contract's signatories are liable for breach. As Resolute points out, the definition of "Hartford Iron" under the settlements also includes Hartford Iron's attorneys; if the court were to adopt Hartford Iron's expansive understanding of contract liability, Hartford Iron's counsel could be personally sued for breach as soon as the remediation went awry. There is no basis in the contracts themselves nor in the record to suppose that the parties intended such an anomalous result when they defined Valley Forge to include its assigns and representatives. Instead, the natural reading of the contract is that the limitations and requirements in the contract apply to Valley Forge's assigns and representatives but direct liability doesn't extend to them. In other words, contract provisions such as the one requiring that the parties cooperate in the remediation apply to Valley Forge's agents, but if those agents violate the contract terms Hartford Iron's remedy is to bring suit for breach against Valley Forge rather than against the agents directly. This understanding is consistent with the basic tenet of contract law that contractually duties extend only to the parties voluntarily entering into a contract.

*Resolute is not liable based on privity of contract*

Hartford Iron's next argument is that even if Resolute isn't a primary insurer itself and can't be sued as an "assign" or "representative" of Valley Forge, it can be held liable for breach because it is in privity with a contract signatory

(Valley Forge). Contracts bind not only the parties to them but also those in privity with a party. *See* Isp.com LLC. v. Theising, 805 N.E.2d 767, 774 (Ind. 2004). Privity between a contract party and a non-party exists when the nonparty holds "a mutual or successive relationship with [a party] with regard to property" or "their interests are so identical as to represent the same legal right." Mislenkov v. Accurate Metal Detinning, Inc., 743 N.E.2d 286, 289 (Ind. Ct. App. 2001). Resolute isn't a successor to Valley Forge, so Hartford Iron argues that Resolute's involvement in every stage of this tangled dispute proves that its interests are sufficiently identical to those of Valley Forge to establish privity. Hartford Iron points to several communications, statements, and actions by Resolute that Hartford Iron believes prove Resolute "acted in such concerted manner as to be in privity for purposes of [Valley Forge's] obligations to Hartford Iron."

This argument depends on allegations in the third-party complaint that Resolute was more heavily involved in managing and financing the remediation than a claims administrator would typically be. But actions by an agent of an insurance company on behalf of its principle aren't enough to make the agent directly liable to the same extent as an actual party to the policy contracts. That Resolute acted to further Valley Forge's interests and did whatever Valley Forge asked of it doesn't establish privity, it simply shows that the two had a principal-agent relationship (plus the 21.43% cost-sharing or indemnification relationship already discussed). Any agent hired for a particular purpose served the interests of the principal, but that doesn't establish privity; agents aren't personally liable

for contracts that bind their principals even when the agent is the one who *made* the contract. *See* <u>Kelly v. Levandoski</u>, 825 N.E.2d 850, 858 (Ind. Ct. App. 2005). When a policyholder sues an agent of an insurance company with whom the policyholder wasn't in privity, the claims against the agent can't survive. *See, e.g.*, <u>Schwartz v. State Farm Mut. Auto. Ins. Co</u>., 174 F.3d 875, 879 (7th Cir. 1999) (affirming removal of case to federal court, because the non-diverse agent of the insurance company was "not in privity with the [plaintiffs] based on their insurance" and joinder was therefore fraudulent); <u>Troxell v. American States Ins. Co</u>., 596 N.E.2d 921, 925 n. 1 (Ind. App. 1992) (dismissing claims adjuster from suit against insurer, because as a mere agent of the insurer the claims adjuster wasn't in privity with the insured).

The statements and actions that Hartford Iron believes prove Resolute was more than just a claims administrator aren't as significant as Hartford Iron believes. Hartford Iron points to several communications in which Resolute used the pronoun "we," such as "the insured has breached the second of two settlement agreements that **we** had with them." (emphasis added). Hartford Iron construes this as an admission of privity, but the use of "we" by an agent to describe the business of the principal is common in many industries, and conveys no more than that the agent sees himself as representing the principal's interests. The court notes that Hartford Iron's counsel has frequently used "we" and "our" throughout this litigation to refer to Hartford Iron's actions, and surely doesn't expect such a linguistic choice would make him liable on all of Hartford

Iron's business contracts. Hartford Iron also alleges that Resolute employee Melissa King participated in payment decisions, "exercised actual control of those decisions," paid costs directly from Resolute's accounts, and approved the selection of defense counsel. That behavior is perfectly consistent with Resolute's business as a claims management agent for CNA and as a party to a cost-sharing or indemnity reinsurance agreement – it doesn't create privity vis a vis Hartford Iron. Similarly, the extent of Ms. King's communications with CNA and CNA's litigation team isn't evidence that Resolute "stepped into CNA's shoes" such that there was a true identity of interest. In a January 2014 communication, Resolute described the remediation and defense as "a mixed account with CNA where CNA is lead (but we are heavily involved)." Again, this isn't an admission that Resolute assumed the insurance policies; it simply reaffirms that Resolute is paying a portion of CNA's costs associated with the remediation. None of the statements or actions alleged in the third-party complaint provide a basis for holding Resolute directly liable under the insurance policies or the Settlements, because Resolute's role as a claims management agent for Valley Forge doesn't create privity of contract with Hartford Iron.[3]

---

[3] Hartford Iron also points to a piece of correspondence from 2014 in which Resolute wrote to Hartford Iron that "Resolute **is** Valley Forge with respect to these policies." (emphasis in original). This statement appears in the course of a letter explaining Resolute's role in the remediation, and immediately follows a sentence beginning with "Resolute is a claims administrator responsible for handling claims under [the insurance policies at issue]." In context, the statement doesn't mean what Hartford Iron wants it to – it simply means that Resolute is authorized to act on Valley Forge's behalf as an agent and should receive Hartford Iron's full cooperation to the same extent Valley Forge would. More importantly, this statement is mentioned nowhere in Hartford Iron's third-

Accordingly, none of Hartford Iron's proffered reasons for imposing direct contract liability on a non-party to the insurance policies and settlements hold water. Because Resolute wasn't a party to the contracts or in privity with a party, Hartford Iron can't maintain claims against Resolute for breach of contract and Counts 1-18 and 20 must be dismissed as to Resolute.

*Resolute is not barred from arguing for dismissal based on Rule 26*

Hartford Iron also insists in the alternative that regardless of the merits of Resolute's legal arguments already discussed, Resolute should be precluded from making them. Hartford Iron argues that because Resolute has (1) refused to make its initial disclosures under Rule 26(a)(1) and (2) won't let Hartford Iron see its contracts with Valley Forge, it has purposefully concealed the nature of its relationship with the insurers and should be barred from arguing for dismissal on the basis of that relationship. These arguments are frivolous. Resolute is not "in default" of its Rule 26(a)(1) disclosures. Rule 26(a)(1)(C) provides that disclosures are due within 14 days after the initial Rule 26(f) conference "unless a party objects during the conference that initial disclosures are not appropriate in this action and states the objection in the proposed discovery plan." Resolute did exactly that – it noted its objection in the report of

_____

party complaint. Even if the statement were the smoking gun Hartford Iron believes it to be, it is a matter outside the pleadings that the court can't consider on a motion to dismiss.

the planning meeting. The Magistrate Judge never ruled on the objection, presumably because there is no need to resolve the disclosure issue before resolving the many pending motions to dismiss. In any case, Hartford Iron hasn't pointed to any clear prejudice from Resolute's refusal to make its initial disclosures; Resolute eventually gave in and made the disclosures after Hartford Iron threatened to move to compel them. Hartford Iron hasn't suggested any way in which the Rule 26(a)(1) disclosures, if made earlier, would have affected the outcome of this motion to dismiss.

As for the supposedly concealed contracts between Resolute and Valley Forge, a Rule 12(b)(6) motion tests the legal sufficiency of the pleadings themselves; Hartford Iron isn't entitled to discovery before the court resolves a motion to dismiss, at least not without an explanation. Resolute had no legal obligation to turn over documents simply because Hartford Iron requested them, so it wouldn't be appropriate to sanction Resolute for withholding documents at this stage of the proceedings.

## B. Tort Claims

Resolute also moves to dismiss Hartford Iron's three tort claims against it. Hartford Iron doesn't directly address most of Resolute's arguments for dismissal of the tort claims. Instead, it suggests that similar arguments were raised in the motions to dismiss filed by August Mack and CNA, and purports to incorporate by reference its responses to those motions "to reduce redundancy."

This is improper for two reasons. First, the arguments made by CNA and August Mack about the tort claims differ from those made by Resolute, as one would expect given the very different roles the three played in the underlying site remediation dispute. Resolute argues that the third-party complaint doesn't contain sufficient allegations about Resolute to state a plausible claim for relief; whether the complaint stated adequate allegations against completely different parties is beside the point. Responding to an argument by simply directing the court to your prior response to a materially different argument is profoundly unhelpful. More importantly, this pleading strategy violates the court's Local Rules. Local Rule 7.1(e) sets out a 25-page limit for response briefs absent court approval. Hartford Iron's response brief is within that limit at 20 pages, but it purports to incorporate 12 additional pages from other filings. Allowing Hartford Iron to refer to arguments in other pleadings would waste the court's and the parties' time, forcing the court and Resolute to cobble together Hartford Iron's arguments from bits and pieces of three separate documents responding to three separate motions. While the court has read and considered Hartford Iron's incorporated arguments this time, Hartford Iron is warned not to repeat this tactic. Future briefs in excess of the allowed page limits – whether on their face or via incorporation of other briefing – will be stricken unless prior approval has been sought from the court.

In any case, none of Hartford Iron's arguments succeed in staving off dismissal. Count 21 alleges "Negligent Misrepresentation, Bad Faith

Misrepresentation, and Fraudulent Misrepresentation and Concealment." This claim must be dismissed because it alleges only legal conclusions with regard to Resolute. Count 21 alleges thirteen specific acts of misrepresentation or concealment, but all were by August Mack rather than Resolute. Resolute isn't mentioned by name anywhere in the count, and the two paragraphs that refer to "CNA" (which the complaint defines to include Resolute) simply recite the elements of the causes of action alleged. In short, Hartford Iron alleges particular conduct by August Mack and then loops in Resolute without any elaboration as to why Resolute should be held accountable for August Mack's alleged misrepresentations and concealments. This falls well short of stating a plausible claim to relief, because even taking Hartford Iron's allegations as true there is no basis on which to hold this defendant liable for the wrongful acts alleged. *See* Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Hartford Iron's response to CNA's motion to dismiss makes arguments as to why CNA should be held accountable for August Mack's conduct, and by incorporating these arguments by reference Hartford Iron is presumably suggesting that they apply equally to Resolute. But the court has already considered and rejected Hartford Iron's argument that Resolute fully stepped into CNA's shoes vis a vis the dispute with Hartford Iron, so even if CNA could be liable for August Mack's

actions that doesn't mean Resolute can. Accordingly, the court dismisses Count 21 as to Resolute.

Count 22 purports to allege "Tortious Interference with Contract and with Business Relationship." Hartford Iron alleges that it had several contracts or business relationships, and that some combination of defendants interfered with each relationship: Resolute and August Mack interfered with Hartford Iron's insurance policy contracts and settlement agreements with CNA,[4] CNA (including Resolute) and August Mack interfered with the Hartford Iron's business relationship with IDEM, and CNA and August Mack interfered with Hartford Iron's relationships with its defense counsel firm and environmental contractors. As with Count 21, this count doesn't allege any specific actions or omissions by Resolute, or even by the other defendants; it simply lists purported contractual or business relationships and alleges in conclusory fashion that the defendants interfered with them. Such paucity of detail mandates dismissal of this count, because Hartford Iron doesn't meet its minimal obligations to plead non-conclusory facts in support of a plausible claim to relief. The third-party complaint doesn't identify which actions or omissions by Resolute interfered with the relationships in question, nor does it suggest how those actions or omissions

---

[4] As Resolute points out, Hartford Iron defined "CNA" as including Resolute – yet in this count, it accuses Resolute of interfering with Hartford Iron's contracts with CNA. Resolute argues that since it clearly can't interfere with itself, it is impossible to tell what Hartford Iron meant and the whole count must be dismissed as hopelessly confusing. While the labelling is imprecise, it is clear in context that Hartford Iron accuses Resolute of interfering in its insurance policies and settlement agreements with the CNA defendants *other than* Resolute.

interfered with the relationships. In its briefing Hartford Iron mentions specific allegations elsewhere in the third-party complaint and states that they form the factual basis for this count. But the complaint is 170 pages long and consists almost entirely of a painstaking recitation of every action, email, and phone call throughout the remediation process. Neither the court nor the defendants can be expected to sift through such voluminous allegations to identify which of the complaint's hundreds of facts Hartford Iron *might* have had in mind when it alleged interference with a business relationship. Rule 8 requires a short and plain statement sufficient to put the defendants on notice of the basis for the claims against them, and Count 22 fails that test.

Even if this count adequately satisfied Hartford Iron's pleading obligations, it would fail as a matter of law. With regard to the accusation that Resolute interfered with Hartford Iron's contracts with CNA, such a claim fails because Resolute is the claims administrator and acts as CNA's agent with regard to these policies. Under Indiana law, an agent can't be held liable for interfering in its principal's contracts where it acted within the scope of its agency duties. *See* Kiyose v. Trustees of Indiana Univ., 333 N.E.2d 886, 891 (1975) (holding that liability for tortious interference "does not accrue for the performance of acts lying within the scope of the agent's duties."). Like the plaintiff in Kiyose, Hartford Iron alleged "only the commission of acts lying within the scope of defendants' duties" and therefore "failed to allege tortious conduct." Id.

With regard to the claim of interference regarding IDEM, Hartford Iron cites no authority that would permit the tort of interference with a business relationship to extend to non-commercial interactions with state agencies. The Agreed Order between IDEM and Hartford Iron is an agreement in which Hartford Iron promises to make certain remediation efforts and pay certain penalties to stave off further punishments by the state environmental enforcement agency. Under Hartford Iron's broad understanding of this tort, a criminal defendant who entered into a plea agreement could sue someone for interfering in his "business relationship" with the prosecutor, or a defendant with a consent judgment could sue someone for interfering in his "business relationship" with the court. The third-party complaint states that Hartford Iron has a "business relationship" with IDEM, but that line of reasoning strains the law of torts to the breaking point.

Hartford Iron's claims regarding interference with its defense counsel and environmental contractors fail because nowhere in the third-party complaint does Hartford Iron allege illegal action by Resolute. In Indiana, a claim for tortious interference requires that a defendant's conduct be not only unfair but actually illegal. *See* Levee v. Beeching, 729 N.E.2d 215, 222 (Ind. Ct. App. 2000) (holding that "illegal conduct is an essential element of tortious interference with a business relationship."). Hartford Iron's third-party complaint alleges only that CNA and Resolute didn't timely pay, didn't fully cooperate with, and otherwise disregarded their "duties of respect" to defense counsel, and that CNA and

Resolute refused to approve or pay for the work of Hartford Iron's preferred environmental contractors. None of the allegations about defense counsel or the environmental contractors allege illegal conduct by Resolute.

Finally, Count 24[5] alleges "Breach of Duty of Good Faith and Fiduciary Duty." Hartford Iron alleges that CNA breached its fiduciary duties by managing Hartford Iron's claims and pursuing the remediation in bad faith and creating a conflict of interest. Resolute moves to dismiss this count for two reasons: it doesn't distinguish between actions attributable to Resolute and actions attributable to other defendants, and Indiana law doesn't impose liability for bad faith against third-party claims administrators in these circumstances.

Contrary to Resolute's assertions, Count 24 accuses Resolute itself of specific acts. Hartford Iron alleges that Resolute tried to fire or maneuver around the defense attorney chosen to represent Hartford Iron in the underlying environmental enforcement actions, and withheld concerns about the quality of

---

[5] Both parties refer to "Count 24" as the count alleging breach of the duty of good faith and fiduciary duty. But the third-party complaint actually contains two counts titled "Count 24," in an apparent typographical error. Both Count 24s purport to apply to CNA – which includes Resolute – but neither side's briefing mentions the first of the Count 24s, which alleges defective project management and defamation by August Mack and its employee James Berndt. Accordingly, even if the court granted Resolute's motion in full, one of Hartford Iron's counts against it would technically remain. Because the duplicative labeling was Hartford Iron's mistake and it would needlessly duplicate the proceedings to force Resolute to bring another motion to dismiss, the court reads Resolute's motion as seeking dismissal of both Count 24s. The first Count 24 (which the parties don't address) is easily dismissed for reasons similar to those already discussed: it alleges no conduct whatsoever by Resolute, and the court has already considered and rejected Hartford Iron's arguments as to why it should be able to hold Resolute responsible for the actions of other defendants.

August Mack's work from Hartford Iron and its defense counsel. The third-party complaint quotes specific emails from or to Resolute employees in support of these allegations. Accordingly, Count 24 – unlike the other counts already discussed – adequately puts Resolute on notice of the specific conduct of which it stands accused.

Nonetheless, Count 24 fails as a matter of law because that specific conduct doesn't give rise to a claim for bad faith. Indiana permits tort claims for bad faith denial of insurance benefits, because an insurer acquires a special duty to the insured where they are "in privity of contract" because of the "unique character of the insurance contract." Erie Ins. v. Hickman, 622 N.E.2d 515, 518 (Ind. 1993). For reasons already discussed, Resolute isn't in privity with Hartford Iron. It is a third-party claims administrator acting as an agent of Hartford Iron's insurer, and a mere agent of an insurer isn't automatically liable for claims of bad faith. *See* Schwartz v. State Farm Mut. Auto. Ins. Co., 174 F.3d 875, 879 (7th Cir. 1999) (holding that under Indiana law, a plaintiff couldn't maintain a bad faith claim against an agent of the defendant insurance company because the agent was "not in privity with the [plaintiffs] based on their insurance policy" and therefore "did not owe a special duty to the plaintiffs on which the bad faith tort could be based.").

Hartford Iron insists that Indiana permits bad faith tort claims against third-party insurance administrators, and cites four cases in support. But "[w]ith regard to third-party administrators of insurance, a non-contractual fiduciary

duty has been found to arise in the limited context of a third-party administrator who actually made the decisions to deny a claim." McClain v. Madison Nat'l Life Ins. Co., No. 3:11-cv-377, 2014 U.S. Dist. LEXIS 122935, at *24 (N.D. Ind. Sept. 4, 2014) (internal quotation marks omitted). All four of the cases Hartford Iron cites involved an insurance claim that was *denied* by the administrator, and all four courts emphasized that denial was a critical element of the claim. *See* id. at *24 (holding that administrators who rejected insured's claim in internal appeals process "still denied [the plaintiff's] claim" and therefore had "not convinced this Court that they are free of fiduciary obligations to [the plaintiff]"); Heim v. Madison Nat. Life Ins. Co., No. 1:13-CV-00130-SEB, 2013 WL 5274275, at *2 (S.D. Ind. Sept. 18, 2013) (holding that a third-party administrator owed the plaintiff a fiduciary duty because "the Amended Complaint does allege that [defendant] acted as the third party administrator to the disability insurance policy at issue and that [defendant] was involved in the decision to deny [plaintiff's] claim"); Heavilin v. Madison Nat. Life Ins. Co., No. 2:10-CV-505-JVB, 2012 WL 6507680, at *1 (N.D. Ind. Dec. 12, 2012) (finding fiduciary duty where the insurance company denied the claim initially and the third-party administrator denied it on internal appeal); Sieveking v. Reliastar Life Ins. Co., No. 4:08-CV-0045-DFH-WGH, 2009 WL 1795090, at *2 (S.D. Ind. June 23, 2009) ("As the administrator of [plaintiff's] claim and the employer of those persons who *actually made the decisions to deny her claim*, [the administrator] owed [the

plaintiff] a fiduciary duty to administer her claim in good faith.") (emphasis added).

The third-party complaint doesn't allege that Resolute was involved in the bad faith denial of Hartford Iron's insurance claims; CNA agreed to honor its obligations to insure Hartford Iron against the costs of the environmental enforcement actions, and Resolute managed the way in which those claims were actually paid. As already noted, Hartford Iron alleges only that Resolute tolerated substandard work by an environmental contractor and didn't work well with Hartford Iron's defense counsel. Resolute might have had a duty not to deny Hartford Iron's claims in bad faith, but Hartford Iron offers no authority for the proposition that it also acquired a duty to fully cooperate with defense counsel and closely monitor the quality of the environmental contractor's work. There are no allegations that Resolute denied or delayed payment of any insurance claim, and so couldn't have violated any limited fiduciary duty it owed to Hartford Iron.

## C. Hartford Iron's Request for Leave to Amend

For these reasons, all of Hartford Iron's claims against Resolute must be dismissed. Hartford Iron asks for the court's leave to amend its claims to cure any "technical defects," while Resolute asks that all the claims be dismissed with prejudice. Under Federal Rule of Civil Procedure 15(a)(2), courts should "freely grant leave [to amend] when justice so requires." Nonetheless, "district courts

have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." Arreola v. Godinez, 546 F.3d 788, 796 (7th Cir. 2008). Two of those factors are present in this case: Hartford Iron has tried and failed to cure these deficiencies before, and amendment of most claims would be futile.

After Hartford Iron filed its original third-party complaint, Resolute (and several other third-party defendants) moved to dismiss. The chief arguments Resolute made in its original motion to dismiss were the same ones on which it prevails here. Resolute argued that (1) Hartford Iron's contract claims must be dismissed because Resolute isn't a party to the contracts at issue or otherwise liable under the contracts, (2) Hartford Iron's complaint doesn't satisfy the federal pleading standards because it doesn't make clear why it blames Resolute for other parties' actions and makes only conclusory allegations about Resolute, and (3) Indiana law provides no basis for a bad-faith claim against Resolute. Before the court decided Resolute's motion to dismiss, Hartford Iron amended its claims. Because Hartford Iron was on notice of the deficiencies Resolute identified in its third-party complaint and those deficiencies remained after it amended the complaint, it had a chance to cure the deficiencies and so isn't entitled to further chances at amendment. This litigation has dragged on acrimoniously for more than two years; Hartford Iron has had ample opportunity

to craft claims that state a viable theory of liability as to Resolute, and hasn't been able to do so. No further bites at the apple are appropriate.

Even if this were Hartford Iron's first chance to cure the defects in its third-party complaint, amendment of these claims would be futile. As already discussed, Hartford Iron has never had a contractual relationship with Resolute or any sort of privity, nor has a formal assumption or novation substituted Resolute for Hartford Iron's actual insurers. Resolute simply isn't liable for breaching a contract it doesn't have with Hartford Iron no matter how Hartford Iron labels its role. There is no legal basis for holding Resolute responsible for misrepresentations or concealments by the environmental contractors actually doing the remediation work. Neither is there any colorable claim for tortious interference, because Resolute can't interfere in most of the relationships Hartford Iron identifies as a matter of law. Finally, Resolute's role in this dispute – that of a third-party claims administrator managing the payment of approved claims – can't support a tort action for bad faith or breach of fiduciary duty.

Because Hartford Iron has already had a chance to cure the deficiencies and didn't do so and because amendment would be futile, all of Hartford Iron's claims against Resolute are dismissed with prejudice and the court denies Hartford Iron's request for leave to amend.

## D. Requests for Attorney's Fees

Resolute asks the court to award it attorney's fees under Indiana Code § 34-52-1-1(b), which provides that a court may award attorney's fees to a prevailing party if it finds that a litigant "brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless." Hartford Iron responds that "requests for sanctions can themselves be sanctionable" and asks for "such further remedies as the Court may deem just for Resolute's tactics of intimidation." Both requests are perfunctory and are tacked onto the end of lengthy briefs, and consequently neither offers the court a sufficient basis for making the required finding of frivolousness or bad faith. Any party seeking fees or sanctions must bring such a request by separate motion.

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS Resolute's motion to dismiss (Doc. No. 334). All of Hartford Iron's claims against Resolute are DISMISSED with prejudice and without leave to amend.

SO ORDERED.

ENTERED: June 15, 2016

_____/s/ Robert L. Miller, Jr._____
Judge
United States District Court