UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| VALLEY FORGE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| HARTFORD IRON & METAL, INC., et al., | ) ) ) | |
| Defendants. | ) ) | Cause No. 1:14-CV-6-RLM-SLC |
| HARTFORD IRON & METAL, INC., et al., | ) ) ) | |
| Third-Party Plaintiffs, | ) ) | |
| vs. | ) ) | |
| CONTINENTAL INSURANCE CO., et. al, | ) ) ) | |
| Third-Party Defendants | ) | |

OPINION and ORDER

Counterclaim defendant Valley Forge Insurance Company and several third-party defendants all move to dismiss Hartford Iron's claims against them. Because Hartford Iron's third-party complaint doesn't adequately put the opposing parties on notice of Hartford Iron's claims and their factual basis, the court grants the motions and dismisses Hartford Iron's amended counterclaims and third party complaint.

I. Background

The factual background of this dispute is very complicated and known to the parties, and no detailed factual summary is necessary for purposes of the motions to dismiss. Hartford Iron's scrapyard developed a series of environmental problems, including rain water picking up chemicals from the scrap yard soil and flowing off the property as contaminated stormwater. The Indiana Department of Environmental Management and the EPA brought enforcement actions to make Hartford Iron pay penalties and remediate the site, and Hartford Iron sought coverage from its liability insurer, Valley Forge. Disputes arose between insurer and insured, but eventually Hartford Iron and Valley Forge entered into a settlement agreement obligating Valley Forge to pay for the remediation of the site and to defend Hartford Iron in the agency enforcement actions.

Valley Forge hired Resolute to act as a third-party administrator to manage the insurance claims and August Mack, Environmental Field Services, and James A. Berndt as environmental contractors to remediate the site. The remediation has been fraught with problems and has spawned a variety of conflicts; the environmental regulators continue to impose fines and penalties for ongoing noncompliance, and Hartford Iron and Valley Forge blame each other for the continued problems. In general, Valley Forge believes that Hartford Iron's refusal to cooperate with the environmental contractors has prevented effective remediation; Hartford Iron believes the remediation plan thus far has been inept,

and accuses Valley Forge of trying to pin the blame for the runaway costs solely on Hartford Iron.

Valley Forge sued Hartford Iron for breach of contract and sought declaratory judgment about its obligations under the settlement agreement. Hartford Iron filed counterclaims against Valley Forge and third-party claims against Resolute, the environmental contractors, and several other insurance companies with no direct role in the remediation dispute. All of the counterclaim defendants and third-party defendants moved to dismiss Hartford Iron's claims. Before the court ruled on the motions to dismiss, Hartford Iron amended its third-party complaint and counterclaims, rendering the motions moot.

Hartford Iron's amended complaint[1] brings counterclaims against Valley Forge and third party claims against 15 other entities. The third party defendants fall into five major categories: other insurance companies affiliated with Valley Forge through its parent, insurance and financial conglomerate CNA ("the CNA parties"); non-CNA insurance companies that have issued primary insurance policies to Hartford Iron ("primary insurers"); non-CNA insurance companies that issued excess insurance policies to Hartford Iron ("excess insurers"); the environmental contractors responsible for the remediation efforts so far; and

---

[1] Technically, the pleading at issue is Hartford Iron's First Amended Counterclaims and Third-Party Complaint. Because referring to it by this title would be unduly cumbersome and because Valley Forge's original complaint isn't at issue, the court refers to Hartford Iron's pleading simply as "the complaint" for convenience.

Resolute, the claims administration company working with Valley Forge to manage the claims process.

The complaint sparked a total of eight motions to dismiss filed by various combinations of counterclaim defendants and third party defendants. The court granted the two motions by the environmental contractors and Resolute, so only the CNA parties, primary insurers, and excess insurers remain as third party defendants.

## II. STANDARD OF REVIEW

All of the third party defendants move to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). To state a claim, a complaint need only contain a short and plain statement showing that the plaintiff is entitled to relief. *See* EEOC v. Concentra Health Servs., Inc., 496 F.3d 773, 776 (7th Cir. 2007). When ruling on a Rule 12(b)(6) motion, the court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in favor of the non-moving party. *See* Hecker v. Deere & Co., 556 F.3d 575, 580 (7th Cir. 2009). However, facts included in documents that are attached to the complaint or incorporated to it by reference may defeat contrary allegations in the complaint. *See* Wright v. Assoc. Ins. Cos., Inc., 29 F.3d 1244, 1248 (7th Cir. 1994).

A complaint may survive a motion to dismiss under Rule 12(b)(6) if it contains sufficient factual allegations to "state a claim to relief that is plausible

on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Adams v. City of Indianapolis, 742 F.3d 720, 728 (7th Cir. 2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the…claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (ellipsis in original). Nonetheless, "bare legal conclusions" need not be accepted as true even if alleged as facts, and a "formulaic recitation of a cause of action's elements will not do." Twombly, 550 U.S. at 547.

III. Discussion

Several of the third party defendants move to dismiss Hartford Iron's counterclaims for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). They point out that complete diversity was originally lacking, because Hartford Iron is a citizen of Indiana and so are third party defendants August Mack, James Berndt, and Environmental Field Services. The court needn't reach these arguments, because the three nondiverse third party defendants have already been separately dismissed; none of the remaining third party defendants shares Hartford Iron's Indiana citizenship, so the court's diversity jurisdiction is secure.

The six remaining motions are made by: (1) the CNA parties (Valley Forge, Continental Casualty Company, National Fire Insurance Company of Hartford, and Continental Insurance Company); (2) Cincinnati Insurance Company; (3) Western World Insurance Company; (4) National Surety Corporation; (5) Ace Property and Casualty Insurance Company; and (6) Granite State Insurance Company, Illinois National Insurance Company, and New Hampshire Insurance Company.[2] Each motion raises issues relating to Hartford Iron's specific claims, but five of the six motions to dismiss also attack the complaint as a whole. These motions invoke Federal Rules of Civil Procedure 8, arguing that Hartford Iron's complaint is simply too long, too complicated, and too generally inscrutable to adequately put the third party defendants on notice of the claims against them.

The court considered this issue in ruling on the other two motions to dismiss, but declined to decide whether the complaint violated Rule 8 because Hartford Iron's claims against the environmental contractors and Resolute could be dismissed with prejudice for other reasons.[3] At this stage, however, it is no longer possible to evaluate the legal sufficiency of Hartford Iron's claims without

---

[2] One third party defendant, Employers Insurance Company of Wausau, hasn't moved to dismiss.
[3] In ruling on Resolute's motion to dismiss, the court recognized that the length and complexity alone of Hartford Iron's complaint probably warranted dismissal, calling the complaint "byzantine" and noting that it "swamps the reader with excruciating detail of dealings" and then "glides into conclusory claims." The court nonetheless decided that "rather than dismiss the amended complaint on these grounds, which would entail telling Hartford Iron to go back to the drawing board from which this amended complaint already was taken, it's preferable to address the merits of Resolute's arguments as to each claim against it."

deciding whether the complaint is so unreadable that it must be dismissed in its entirety.

The first and most glaring problem with the complaint is its sheer length. Rule 8 mandates "a short and plain statement of the claim showing that the pleader is entitled to relief," and no one could call Hartford Iron's complaint short nor plain. "Prolixity is a bane of the legal profession but a poor ground for rejecting potentially meritorious claims. Fat in a complaint can be ignored, confusion or ambiguity dealt with by means other than dismissal." Bennett v. Schmidt, 153 F.3d 516, 518 (7th Cir. 1998). Excessive length alone "ordinarily does not justify the dismissal of an otherwise valid complaint," Stanard v. Nygren, 658 F.3d 792, 797 (7th Cir. 2011), so a complaint that violates Rule 8 because of its length but nonetheless puts the defendant and the court on notice of the plaintiff's claims shouldn't be dismissed "merely because of the presence of superfluous matter." Davis v. Ruby Foods, Inc., 269 F.3d 818, 820 (7th Cir. 2001).

Nonetheless, "[t]o the principle that the mere presence of extraneous matter does not warrant dismissal of a complaint under Rule 8, as to most generalizations about the law, there are exceptions." Davis v. Ruby Foods, Inc., 269 F.3d 818, 821 (7th Cir. 2001). Dismissal is appropriate – and necessary – when a complaint's length is so excessive as to not only inconvenience or annoy, but to impair its intelligibility. Excessive length "may make a complaint unintelligible, by scattering and concealing in a morass of irrelevancies the few

allegations that matter." United States ex rel. Garst v. Lockheed–Martin Corp., 328 F.3d 374, 378 (7th Cir. 2003). Where the amount of extraneous detail swamps the relevant allegations in the complaint, it becomes unduly burdensome for the opposing party and the court to understand the plaintiff's claims. *See* Vicom, Inc. v. Harbridge Merchant Servs., Inc., 20 F.3d 771, 775-776 (7th Cir. 1994) ("A complaint that is prolix and/or confusing makes it difficult for the defendant to file a responsive pleading and makes it difficult for the trial court to conduct orderly litigation."); Jennings v. Emry, 910 F.2d 1434, 1436 (7th Cir. 1990) (noting that a complaint must "be presented with sufficient clarity to avoid requiring a district court or opposing party to forever sift through its pages in search of" the plaintiff's claims). Accordingly, "[w]ordy, redundant, and seemingly interminable complaints violate the letter and the spirit of Rule 8 and may be dismissed with leave to refile." Fender v. Sailors, No. 4:14-CV-024, 2015 WL 1510195, at *2 (N.D. Ind. Mar. 31, 2015).

Hartford Iron's complaint is not merely wordy, it is so verbose as to be unreadable. The complaint spans 170 pages (not including exhibits), brings 25 counts against varying combinations of third party defendants, and includes nearly 891 numbered paragraphs – many of which are comprised of multiple lettered subparagraphs. Courts in both this circuit and others have dismissed similar – and in many cases, much shorter – complaints. *See, e.g.,* U.S. ex rel. Garst v. Lockheed-Martin Corp., 328 F.3d 374, 378–379 (7th Cir. 2003) (affirming dismissal of 155-page, 400-paragraph complaint the court

characterized as "pestilential"); Jennings v. Emry, 910 F.2d 1434, 1441 (7th Cir. 1990) (describing 55-page, 433-paragraph complaint as "the apogee of pleading by obfuscation"); Fender v. Sailors, No. 4:14-CV-024, 2015 WL 1510195, at *1 (N.D. Ind. Mar. 31, 2015) (striking complaint that incorporated by reference "over sixty pages"); In re Westinghouse Securities Litigation, 90 F.3d 696, 702–703 (3d Cir. 1996) (affirming dismissal of 240-page, 600-paragraph complaint as "unnecessarily complicated and verbose"); McHenry v. Renne, 84 F.3d 1172, 1179-1180 (9th Cir. 1996) (affirming district court's dismissal of 53-page, 150-paragraph third amended complaint); Kuehl v. FDIC, 8 F.3d 905, 908–909 (1st Cir. 1993) (affirming dismissal of 43-page, 358-paragraph complaint); Michaelis v. Nebraska State Bar Association, 717 F.2d 437, 439 (8th Cir. 1983) (affirming dismissal of 98-page, 144-paragraph complaint that would have "made an orderly trial impossible").

There may well be valid claims buried in Hartford Iron's mountain of allegations, but the sheer length of the complaint makes unearthing them unduly burdensome. Factual allegations aren't segregated by which claim they apply to; each count of the complaint begins by saying that "[e]ach of the paragraphs above and in subsequent counts is incorporated herein." Accordingly, when a defendant (or the court) wants to know what facts underlie a particular legal claim, it must sift through all 891 paragraphs to see if any of them allege facts that could arguably be relevant to that claim. "To form a defense, a defendant must know what he is defending against; that is, he must

know the legal wrongs he is alleged to have committed and the factual allegations that form the core of the claims asserted against him. Deciphering even that much from [Hartford Iron's] amended complaint is next to impossible." Stanard v. Nygren, 658 F.3d 792, 799–800 (7th Cir. 2011).

Count 24,[4] for example, alleges that the CNA parties and August Mack breached a duty of good faith and/or a fiduciary duty to Hartford Iron, but includes only vague, general accusations of what precisely constituted such a breach – leaving it up to the third party defendants and the court to hunt through the entire rest of the complaint to figure out what Hartford Iron means when it says, for example, that CNA breached a duty by trying "to shift blame and regulatory liability onto Hartford Iron." This kitchen sink approach "leads to essentially nothing being alleged" because when any relevant allegations supporting a claim are hidden elsewhere in a mass of factual detail "the needle in the haystack might as well not be there." Old Time Enterprises, Inc. v. Int'l Coffee Corp., 862 F.2d 1213, 1220 (5th Cir. 1989). "Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud." *See* United States ex rel. Garst v. Lockheed–Martin Corp., 328 F.3d 374, 378 (7th Cir. 2003). At 170 pages, Hartford Iron's complaint is less a bucket of mud than a swimming pool of it. Requiring the court and the third party defendants to identify which of the nearly

---

[4] One of the two Count 24s, anyway.

900 paragraphs could support each count imposes far more of a burden than the Federal Rules permit.

Even if the opposing parties and the court were willing to engage in such a maddening scavenger hunt, everyone involved would have to create flowcharts and outlines to be reasonably sure of who is being sued for what, increasing the risk of oversights or misunderstandings that impair the orderly administration of the case up through trial. This isn't merely a hypothetical danger here; the length and complexity of the complaint has already injected unnecessary confusion into the proceedings. The complaint lists two separate and unrelated claims against different groups of parties as "Count 24," suggesting that the pleading is so unwieldy that Hartford Iron *itself* can't keep its claims straight. This created no small amount of confusion when Resolute moved to dismiss "Count 24" apparently without realizing that there were two of them. Similarly, in places a literal reading of Hartford Iron's complaint produces illogical results seemingly because the drafter got confused about to which of the many groups of defendants he assigned various entities. Count 22, for example, accuses Resolute of tortious interference with Hartford Iron's relationship with "CNA" despite an earlier portion of the complaint defining "CNA" to include Resolute. Read literally, Hartford Iron is accusing Resolute of interfering with itself. If Hartford Iron's own attorneys can't keep straight its claims and grouping system, there's little hope for the third-party defendants – and even less for the twelve

unfortunate laymen asked to resolve all these claims if and when this case ever proceeds to a jury trial.

If confusing length were the sole problem with Hartford Iron's complaint, the court would still hesitate to resort to dismissal. Dismissing the entire complaint is a drastic measure, as it will not only further delay the ultimate resolution of this case but will also moot several other pending motions. The court is respectful of the time spent by attorneys on both sides, and doesn't take such a step lightly. But Hartford Iron seriously compounds the complaint's length problem by inadequately distinguishing between the various third party defendants.

The complaint lumps together sets of parties into defined groups of its own making. "CNA" includes Valley Forge, three other insurance companies, and Resolute, while "AIG" includes three different insurance companies. These groups are then further combined into larger groups, notably "Primary Insurers" and "Excess Insurers." Having established these definitions, the complaint then attributes conduct, communications, and liability to, for example, "CNA" or "Primary Insurers" as a group – ignoring the fact that these groups contain many distinct entities who typically can't *all* be responsible for the particular act or statement alleged. This unavoidably leaves each individual third party defendant at a loss to figure out what actual conduct Hartford Iron accuses it of. *See* Specht v. Google, Inc., 660 F. Supp. 2d 858, 865 (N.D. Ill. 2009) (dismissing claims against a group of corporate defendants where the plaintiffs "treat[ed] the

numerous Defendants (other than Google) as a collective whole and [didn't] identify any specific act of infringement by any single Defendant or any service rendered or product provided by any single Defendant.").

Almost every count includes allegations about "CNA," but CNA is no less than five entities. When Hartford Iron says that "Hartford Iron's chosen defense counsel wrote to CNA," for example, it isn't clear which of the five entities Hartford Iron actually communicated with. The five aren't a hive mind; they are (aside from Resolute) insurance companies that share a parent conglomerate but are otherwise distinct entities with their own corporate existence. Breach of a settlement agreement is the heart of Hartford Iron's claims, and that settlement agreement was solely between Hartford Iron and Valley Forge. The fact that Valley Forge's parent corporation own several other insurance companies doesn't make those companies liable for everything Valley Forge says or does. Like the plaintiffs in Specht, Hartford Iron's "conclusory legal claims against unspecified Defendants fall short of the requirement that a complaint cite supporting facts in order to survive a motion to dismiss." Id. at 865.

The complaint is even less clear in its allegations against the primary insurers and excess insurers. The "excess insurers" are defined and introduced as parties, and the "prayer for relief" section of the complaint mentions that Hartford Iron wants these insurers to pay into an escrow fund and wants declaratory relief related to the alleged excess insurance policies. But nowhere else in the complaint's 170 pages are any of the excess insurers mentioned at

all, either individually or as a group. None of the 25 counts even purports to apply to them, as every substantive claim opens with a statement that it is brought solely against some combination of CNA, the environmental contractors, Resolute, and the primary insurers. Because Hartford Iron's complaint makes *no* factual allegations against the excess insurers whatsoever, it can't adequately put them on notice of the basis of Hartford Iron's claims against them.

The primary insurers are at least named in some counts, but the complaint's factual allegations about them are similarly absent. The complaint introduces the primary insurers and states a date each one allegedly "received notice of claim." But the primary insurers are never mentioned again, aside from conclusory legal boilerplate. Each count of the complaint follows a similar pattern: Hartford Iron makes voluminous, detailed factual allegations about things that "CNA" did, said, or failed to do, then concludes with a bare recitation that the other primary insurers "contributed to the breaches in this Count by failing to provide any defense, assistance, or cooperation." Like the excess insurers, the primary insurers are left understandably mystified as to why they are being dragged into Hartford Iron's dispute with Valley Forge at all.

Accordingly, Hartford Iron's complaint must be dismissed in its entirety because it doesn't give any of the third party defendants adequate notice of Hartford Iron's claims and their factual basis. Typically, dismissal of a complaint under Rule 8 is with leave to amend; because such a dismissal identifies a deficiency in the form of the pleading rather than a legal defect in the claims, a

party can often cure the problem by filing a shorter and plainer amended complaint.

This is in some ways a special case, however. Hartford Iron's original third party complaint was already a titanic 134 pages, and the flurry of motions to dismiss it provoked all complained that Hartford Iron's pleading was "prolix," "unclear" and "confusing." Rather than amend the complaint to cure the obvious problems the third party defendants pointed out, Hartford Iron chose to double down by filing an amended complaint that was even longer and more inscrutable. Hartford Iron had two chances to state its claims clearly, and – even after the third party defendants went to the time and trouble of pointing out the deficiencies – didn't do so. In light of the considerable trouble and expense Hartford Iron has already imposed on the third party defendants by forcing them to sift through two 130+ page complaints and move to dismiss twice, this is a situation in which leave to amend isn't necessarily appropriate. Nonetheless, because Hartford Iron does allege concrete facts regarding Valley Forge, the court grants Hartford Iron leave to file an amended countercomplaint that includes a *short* and *plain* statement of its claims against Valley Forge only.

Leave to amend is not appropriate as to any of the third party defendants. All the remaining third party defendants are insurance companies, and Hartford Iron essentially seeks a judicial ruling that those companies – not Hartford Iron – will have to bear any eventual costs not covered by Valley Forge. But as already noted, the complaint includes no non-conclusory factual allegations as to any of

the primary or excess insurers. To plead a claim under an insurance contract, a party must identify the terms of the policy that was allegedly breached. *See* Palda v. General Dynamics Corp., 47 F.3d 872, 874-875 (7th Cir. 1995). Hartford Iron's complaint itself doesn't give *any* details about the alleged primary or excess insurance policies on which it bases its claims against the non-CNA parties. Instead, Hartford Iron attaches as exhibits to its complaint a policy it claims to include "representative" policy terms and tables listing policy dates and numbers of one policy from each of the insurers. But the end dates of all the insurance policies listed on the table are between 1987 and 2007 – while all the allegations in the complaint concern events between 2010 and 2014. Far from supporting Hartford Iron's claims against the insurance companies, the exhibits attached to the complaint appear to doom them; Hartford Iron has only pled that it once had insurance policies with the companies at issue, but the policies expired long before the events at issue here. Moreover, the complaint states that the non-CNA insurance companies received notice of claim between March 2012 and November 2015 – in other words, *after* Valley Forge had entered into a settlement agreement obligating it to pay in full for the entire remediation and defense. It isn't clear what Hartford Iron believes the other insurance companies should have done, as the costs underlying Hartford Iron's policy claims were already being fully borne by Valley Forge.

At heart, this is a dispute between Valley Forge and Hartford Iron regarding who is at fault for the sorry state of remediation efforts at Hartford

Iron's scrapyard. Valley Forge settled an earlier legal dispute with Hartford Iron by agreeing to fully fund the remediation and defense as to the original environmental contamination, and has for years been attempting to do so. Hartford Iron simply hasn't provided any reason to drag unrelated insurance companies into the dispute while Valley Forge is *still* paying for the necessary remediation and there is no indication that it will imminently stop doing so. Hartford Iron appears to feel that because the other insurance companies didn't step in and do something Valley Forge had already agreed to do, they are a cause in fact of all the problems and delays that arise out of Valley Forge's efforts. Yet despite having two opportunities to state a claim against these other insurance companies, Hartford Iron hasn't even adequately alleged the existence of an insurance relationship between itself and any of those companies – and it can muster only vague, conclusory accusations about breaches of unspecified duties of good faith in support of its theory that the other insurers should pay. While Hartford Iron could conceivably have valid claims against these companies if and when Valley Forge reaches its policy limits and ceases funding the remediation and defense, Hartford Iron admits that this hasn't happened yet. Accordingly, Hartford Iron's claims against the other insurance companies aren't ripe, and granting leave to amend such claims would be futile.

IV. CONCLUSION

For the foregoing reasons, the court GRANTS Cincinnati's motion to dismiss (Doc. No. 336), Western World's motion to dismiss (Doc. No. 338), National Surety's motion to dismiss (Doc. No. 340), Ace Property's motion to dismiss (Doc. No. 352), the AIG parties' motion to dismiss (Doc. No. 356), and the CNA parties' motion to dismiss (Doc. No. 360). Hartford Iron's amended counterclaims and third party claims (Doc. No. 264) are DISMISSED with leave to amend as to the counterclaims against Valley Forge but without leave to amend as to all other third party defendants.

The following motions are MOOTED by the dismissal of Hartford Iron's complaint: the CNA parties' motion to sever (Doc No. 273); Hartford Iron's motion for partial summary judgment (Doc. No. 454); the CNA parties' motion to strike Hartford Iron's brief in support of summary judgment (Doc. No. 474); Hartford Iron's motion to strike the CNA parties' response to the summary judgment motion (Doc. No. 486); and the AIG parties' motion to compel Rule 26 initial disclosures (Doc. No. 488).

SO ORDERED.

ENTERED: <u>August 19, 2016</u>

<u>  /s/ Robert L. Miller, Jr.  </u>
Judge
United States District Court