UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

VALLEY FORGE INSURANCE COMPANY, )
)
      Plaintiff, )
)
v. ) Cause No. 1:14-cv-6 RLM-SLC
)
HARTFORD IRON & METAL, INC., *et al.*, )
)
      Defendants. )

## OPINION AND ORDER

Plaintiff Valley Forge moved that the court appoint a special master to oversee remediation of the Hartford Iron site. The court denies the motion for these purposes, but will consider appointing a master at the parties' expense to address discovery matters if they proceed in excess.

No detailed factual summary is needed. In the order of December 2015 [Doc. No. 298], the court held that Valley Forge's control of the defense and remediation under the Second Settlement Agreement created a conflict of interests while Valley Forge was suing Hartford Iron for allegedly breaching that agreement. In its April 2016 order [Doc. No. 439], the court clarified that this conflict didn't grant Hartford Iron complete control over the defense and remediation. The parties could just as well comply with the order by arranging for a truly independent third party to manage defense and remediation at Valley Forge's expense.

This motion is in response to Valley Forge's fruitless efforts to reach out to Hartford Iron to arrange for an independent third party to manage the defense

and remediation. Valley Forge retained Drewery Simmons Vornehm, LLP to advise on and to coordinate the remediation, and presents communications between Erik Mroz, an attorney with this firm, and Hartford Iron.

Mr. Mroz emailed Hartford Iron seeking its cooperation in appointing an independent third party to manage the remediation and defense, in which he identified two judges as potential appointees. Hartford Iron's counsel, Jamie Dameron, responded wondering "why you are writing to me at all." After asking questions about what Mr. Mroz envisions through the appointment, she explained that it's "unclear at this point whether there is good reason for us to be in contact" and that "the vagueness of your introductory letter precludes a more substantive response." Mr. Mroz responded that "the [appointed] judge will be responsible for directing the response action." The judge wouldn't replace a claims administrator nor would it replace Ms. Dameron as defense counsel. Each party would have the right to communicate with the judge. Mr. Mroz goes on to explain how Valley Forge "would like to get this site on track for cleanup as soon as possible" and asks how best to proceed with the Remediation Work Plan.

About a month later, in June 2016, Ms. Dameron forwarded a letter she prepared for Valerie Rodriguez, Valley Forge's litigation counsel, to Mr. Mroz. This letter explains that Hartford Iron authorized Ms. Dameron to grant site access to Valley Forge through October 31, 2016 for construction of the Keramida system. In the letter she explains that "[a]ll work subject to this access, including waste disposal and documentation, must be carried out under the

2

management of a truly independent third party," who may contact her with reasonable requests related to this authorization.

Mr. Mroz responded with a letter to Ms. Dameron, dated just under two weeks later, that Valley Forge never received a response from her or Hartford Iron counsel Mark Shere regarding selection of the independent third party, which "[o]bviously . . . cannot be done unilaterally by VFIC." The letter explained that Valley Forge would seek appointment of an independent third party through court order if Hartford Iron doesn't assist in moving forward. After receiving no response from Ms. Dameron for over three weeks, Mr. Mroz wrote to Ms. Dameron and Mr. Shere again, saying that he is "hopeful that an independent third-party can be mutually agreed to by the parties to manage the response action and finally move the Site towards closure."

Mr. Shere responded this time. He said the letter from Ms. Dameron authorizing site access was the end of the matter because Hartford Iron's grant of site access was "effective immediately" and "not intended to open negotiations with CNA's lawyers regarding additional terms or conditions." He reiterated that the previous letter granted CNA immediate access to the site to build the new stormwater system. He then explained that the insurance claims manager or administrator must be ethically walled off from the litigators and from the litigation record. Mr. Mroz, because of his connection to the litigators and familiarity with the litigation record, can't do the job.

During the period of this correspondence, rather than cooperate to decide on an independent third party, Mr. Shere moved for partial summary judgment

3

seeking a declaratory judgment that "CNA may attempt to cure the conflict of interest by 'arranging for a truly independent third party to manage the defense and remediation at Valley Forge's expense.'" In its pending motion for partial summary judgment [Doc. No. 514], Mr. Shere argues the same.

Valley Forge moves that the court, pursuant to Rule 53, appoint a special master to manage the remediation of the site.

"Unless a statute provides otherwise, a court may appoint a master only to . . . perform duties consented to by the parties." Fed. R. Civ. P. 53(a)(1). Hartford Iron's opposition to the motion indicates that it hasn't consented to the appointment of a master. That's enough for the motion to be a nonstarter. The court agrees with Valley Forge that Hartford Iron's motions and comments conflict on this point, but Rule 53(a)(1) doesn't give the court authority to foist a special master onto an unwilling party.

Hartford Iron's reasons to oppose the motion, however, are nonsensical. First, Hartford Iron argues that a change of venue to another judge "would merely change the location of the litigation. None of these steps would alter the underlying conflict of interest or the substance of the insurance dispute." This isn't correct. Rule 53 empowers a master to "take all appropriate measures to perform the assigned duties fairly and efficiently." Fed. R. Civ. P. 53(c). Should the parties agree to a master to serve as something of a 'remediation czar,' with explicit direction from the court as to its function, then there would be no conflict of interest.

4

Hartford Iron's reliance on Armstrong Cleaners, Inc. v. Erie Insurance Exchange is misplaced. 364 F. Supp. 2d 797 (S.D. Ind. 2005). Armstrong Cleaners thoroughly analyzes the "eternal triangle" of liability insurance company, insured, and insurance defense attorney, and this court applied Armstrong's reasoning in its two orders addressing the conflict of interests. Hartford Iron contends that "[a]s *Armstrong* makes clear, the legal standard requires separation of both 'front-line adjusters' and 'more senior supervisors' for purposes of personnel." The Armstrong court, however, never mandates an ethical wall between these personnel. Instead, it says that the weak ethical wall in place at the insurance company was insufficient to cure the conflict. The court *did* mandate that the insurer pay for independent counsel. That was what cured the conflict, and it did so better than an ethical wall could have.

Just as Armstrong doesn't mandate an ethical wall, neither did this court ever mandate an ethical wall. Instead, its December 2015 order said that Valley Forge doesn't have the right to control the defense or the remediation. Eliminating Valley Forge's control of these components eliminates the chance that it would steer them in a manner that supported its breach of contract claims against Hartford Iron. By 'outsourcing' these components, either to Hartford Iron or to an independent third party, Valley Forge could avoid a conflict of interests better than with an ethical wall inside the organization.

Second, Hartford Iron's positions are conflicting. On the one hand, it seeks a declaration that "CNA may attempt to cure the conflict of interest by 'arranging

5

for a truly independent third party to manage the defense and remediation at Valley Forge's expense.'" But at the same time, it spurns Valley Forge's attempts to work with Hartford Iron to choose that independent third party. This invites skepticism about whether Hartford Iron would have allowed Valley Forge to unilaterally choose the third party or if it would have just litigated that the third party wasn't properly insulated from the litigation. If Valley Forge is paying for the third party, it's inevitable that the third party interact with, and to some degree rely on Valley Forge personnel who may not be insulated from the litigation.

Third, Hartford Iron is incorrect that the vagueness of the motion fails to meet the standard of Rule 53. Hartford Iron cites the 2003 Advisory Committee Notes for saying that "Federal Rule 53(b)(2) requires precise designation of the master's duties and authority." This is true, but Rule 53(b)(2) only instructs the court about the contents of the order appointing the master. Hartford Iron doesn't cite authority that the parties moving for appointment of a master need to have already laid out the master's precise duties and authority.

Hartford Iron is correct on one point, however. If the court appoints a master in the future to manage remediation, the procedures under Rule 53 must be followed, which might lead to some delay. The parties' agreed appointment of an independent third party to manage the remediation, using procedures agreed to by the parties, could also allow for speed and flexibility.

The court does have the power, however, to impose a master without the parties' consent to "address pretrial and posttrial matters that cannot be

6

effectively and timely addressed by an available . . . magistrate judge . . . ." Rule 53(a)(1)(C). The court won't use this power now, but it's perfectly willing to do so if it perceives ongoing excess in non-dispositive filings.

The court recognizes the obstacles Hartford Iron has presented since the court's April 2016 order clarifying the conflict of interests. But Rule 53 doesn't allow appointment of a master for the purpose suggested unless both parties agree to it.

Valley Forge's motion that the court appoint a special master [Doc. No. 491] is DENIED.

SO ORDERED.

ENTERED: November 22, 2016

/s/ Robert L. Miller, Jr.
Judge
United States District Court