UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

VALLEY FORGE INSURANCE COMPANY,   )
  )
      Plaintiff,  )
  )
v.  )     Cause No. 1:14-cv-6 RLM-SLC
  )
HARTFORD IRON & METAL, INC., *et al.*,  )
  )
      Defendants.  )

OPINION AND ORDER

Hartford Iron doesn't like the way Valley Forge has performed on its contract. After three motions to dismiss, numerous excess parties and numerous excess claims, what remains of Hartford Iron's counterclaim is an alleged breach of contract with a bad faith component. Everything else has been dismissed.

## I. BACKGROUND

No detailed factual summary is needed. In June 2016 [Doc. No. 469], the court dismissed Hartford Iron's third-party claims against Resolute Management Inc., which Valley Forge hired to act as a third-party claims administrator. In August 2016 [Doc. No. 504], the court dismissed Hartford Iron's third party claims against fifteen other entities as well as its counterclaims against Valley Forge. The court didn't grant leave to amend as against the third parties. Hartford Iron came back with a second amended counterclaim against Valley Forge, which Valley Forge now moves to dismiss.

In its second amended counterclaim, Hartford Iron alleges that the Indiana Department of Environmental Management requires costly excavation and off-site disposal to remediate the contaminated soil, and that this process has barely begun and will take years to complete. Through the settlement agreements, Valley Forge agreed that it's responsible for the costs of enabling Hartford Iron to operate its business during the remediation. In the Second Settlement Agreement, Valley Forge agreed, "effective immediately," to take responsibility for "prevention of illegal stormwater discharges" in the future. Hartford Iron alleges that Valley Forge violated this duty, and that instead of fixing the problem, it sued and blamed Hartford Iron.

Hartford Iron alleges that Valley Forge continues to operate with a conflict of interest despite the court's December 2015 order [Doc. No. 298] requiring policies that disable the conflict. Valley Forge allegedly insists on managing and controlling the response by using the same lawyers and managers who are involved in the litigation against Hartford Iron.

Hartford Iron's first claim against Valley Forge is for breach of contract, which it alleges has been ongoing since December 2012. The relevant contracts include the settlement agreements, the insurance policies, and the Master Services Agreement between Valley Forge and August Mack, environmental consultant, to which Hartford Iron alleges it's an intended third party beneficiary.

In support of the breach of contract claim, Hartford Iron alleges that Valley Forge violated its duty under the Second Settlement Agreement to

"defend Hartford Iron against the EPA and IDEM claims" without conflict of interest. Valley Forge allegedly violated this duty by sharing information amongst defense, claims management, and litigation personnel; withholding information from Hartford Iron related to the defense; refusing to pay Hartford Iron's chosen counsel since December 31, 2013; insisting on appointment of Jamie Dameron as defense counsel and obstructing her when her recommendations conflicted with those of Valley Forge; submitting regulatory filings and negotiating with IDEM in ways that contradicted defense counsel; and using litigation-tainted attorneys and staff to control the work of August Mack.

In addition, Hartford Iron alleges that Valley Forge:

- violated its duty "to supervise the environmental consultant;"

- violated its duty "to handle negotiations with the agencies;"

- violated its duty to seek agency approval of remediation steps;

- violated its duty to "defend and indemnify Hartford Iron without reservation of rights;"

- violated a duty of good faith;

- violated a duty to seek approval of the most cost-effective remediation plan that minimizes business disruption, and a duty to cooperate with Hartford Iron to minimize business disruption;

- made false and misleading representations, and deceived Hartford Iron;

- violated a duty to carry out the Remediation Work Plan approved by IDEM and the EPA;

- violated a duty to prevent discharges by disposing of PCB-contaminated waste in unauthorized landfills under Hartford Iron's name, using Mack to create an illegal and unauthorized storage area for waste drums on the Hartford Iron site, and altering drum labels without authorization;

- violated a duty to provide advance notice to Hartford Iron regarding work to be conducted by Mack;

- violated a duty to be responsible for investigation of past contamination and remediation;

- through Mack, collected "biased samples" of contaminated stormwater;

- through Mack, operated a management system that had to be reconfigured at least a dozen times, violated the IDEM permit, and spilled diesel fuel;

- obstructed construction of the Keramida system since June 13 even though it knows that remediation requires a retention basin and acquisition of neighboring property to install it; and

- caused millions of dollars of additional costs and liabilities.

For all these reasons, Hartford Iron believes it's entitled to damages and a declaration of rights in its favor under 28 U.S.C. § 2201.

Hartford Iron's second count is that it has the right to a good faith, contemporaneous accounting identifying categories of costs that Valley Forge has paid. This accounting, Hartford Iron says, should be conducted under supervision of a special master or independent auditors.

Hartford Iron's third count is for tort claims of negligence, nuisance, and trespass. Hartford Iron alleges that Valley Forge wrongfully took control of land through Mack. Valley Forge created and maintained as a nuisance a storage area for waste drums, a tank farm, open trenches that resulted in groundwater contamination, and a gravel pit, and openly dumped wastes, flooding streets and adjacent yards with untreated PCB-contaminated stormwater, and causing ruts and other damage to land from vehicles, and closure of public streets.

Hartford Iron's fourth count is for a declaratory judgment pursuant to 28 U.S.C. § 2201. Hartford Iron asks the court, first, to declare that Valley Forge created a conflict of interest when it sued Hartford Iron. Second, that Hartford Iron has the legal right to control the defense and remediation. And third, that the conflict wasn't remedied when Valley Forge assigned claims director Jerry Alpine to manage projects. This is because Mr. Alpine works with David Paige. David Paige directed Mr. Alpine to review Valley Forge's litigation filings and Mr. Paige is supervised by Valley Forge's litigation counsel, Valerie Rodriguez.


I. STANDARD OF REVIEW

Valley Forge moves to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). A complaint need only contain a short and plain statement showing that the plaintiff is entitled to relief. *See* EEOC v. Concentra Health Servs., Inc., 496 F.3d 773, 776 (7th Cir. 2007). When ruling on a Rule 12(b)(6) motion, the court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in favor

of the non-moving party. *See* <u>Hecker v. Deere & Co.</u>, 556 F.3d 575, 580 (7th Cir. 2009). Facts included in documents that are attached to the complaint or incorporated to it by reference may defeat contrary allegations in the complaint. *See* <u>Wright v. Assoc. Ins. Cos., Inc.</u>, 29 F.3d 1244, 1248 (7th Cir. 1994).

A complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Adams v. City of Indianapolis</u>, 742 F.3d 720, 728 (7th Cir. 2014) (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)). "Specific facts are not necessary; the statement need only give the defendant fair notice of what . . . the claim is and the grounds upon which it rests." <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007). Nonetheless, "bare legal conclusions" need not be accepted as true even if alleged as facts, and a "formulaic recitation of a cause of action's elements will not do." <u>Twombly</u>, 550 U.S. at 547.

## II. DISCUSSION

Hartford Iron states a plausible claim that Valley Forge breached the Second Settlement Agreement, and that it did so in bad faith. No other parts of the second amended counterclaim state a plausible claim. The case is well into

discovery, and Hartford Iron has had ample opportunity to plead, so the court won't grant Hartford Iron leave to amend its counterclaim yet again.

A. Duty of Good Faith and Attorney's Fees

Hartford Iron alleges that Valley Forge violated the duty of good faith inherent in its duty to defend and indemnify Hartford Iron without reservation of rights when Valley Forge "deceiv[ed] Hartford Iron" and "caus[ed] tens of millions of dollars of additional costs and liabilities for investigation, containment and prevention, legal and other defense, eventual remediation, [and] new regulatory labilities."

"Indiana law recognizes an implied duty of good faith in all insurance contracts requiring that an insurer will act in good faith with its insured. This duty results from the unique nature of the insured/insurer relationship, which may be at varying times arm's-length, fiduciary, and/or adversarial." Allen v. Great Am. Reserve Ins. Co., 766 N.E.2d 1157, 1162 (Ind. 2002) (internal quotations omitted). "The obligation of good faith and fair dealing with respect to the discharge of the insurer's contractual obligation includes the obligation to refrain from (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim." Erie Ins. Co. v. Hickman, 622 N.E.2d 515, 519 (Ind. 1993).

Valley Forge argues that it's not subject to the duty of good faith because Hartford Iron is disputing Valley Forge's performance under the Second Settlement Agreement rather than under the original insurance policy. *See* Empire Realty Invs., Inc. v. U.S. Affordable Hous., LLC, No. 1:14-cv-380, 2015 WL 2404375, at *8 (N.D. Ind. May 19, 2015) (a special relationship is needed to assert a bad faith claim based on a breach of contract). Neither party points to law addressing whether an agreement settling an insurance dispute should be treated as an insurance contract that's subject to the duty of good faith.

A duty of good faith requires a "special relationship" beyond mere existence of a contract. Erie Ins. Co. v. Hickman, 622 N.E.2d at 518. The rationale for recognizing a "special relationship" in the insurance policy context applies equally well to recognizing a "special relationship" in a settlement agreement to an insurance dispute. An insurance agreement "is at times a traditional arms-length dealing between two parties, as in the initial purchase of a policy, but is also at times one of a fiduciary nature, and, at other times, an adversarial one, as here in the context of a first-party claim." *Id.* (internal citations omitted). In the same way, the creation of the settlement agreement was at arms length. It's fiduciary in nature because Valley Forge agreed to defend and indemnify Hartford Iron without reservation of rights. Just as with an insurance policy, that relationship can be strained by an insurer who intentionally delays payment. As this litigation has made evident, the relationship here is adversarial. The Second Settlement Agreement thus gives

rise to a potential "cause of action for the tortious breach of an insurer's duty to deal with its insured in good faith." *Id.* at 519.[1]

For purposes of the purported conflict of interest, this court also applied principles of insurance law to the agreement and analyzed the case through the framework of <u>Armstrong Cleaners, Inc. v. Erie Ins. Exchange</u>, 364 F. Supp. 2d 797 (S.D. Ind. 2005). If the Second Settlement Agreement is to be treated as an insurance agreement for purposes of the conflict of interest, there's no reason why it shouldn't be treated identically for purposes of the duty of good faith.

Valley Forge cites <u>Tate v. Orthopaedics-Indianapolis, P.C.</u>, No. 1:12-cv-1188 WTL-DKL, 2014 WL 1091335, at *9-10 (S.D. Ind. Mar. 19, 2014) for the proposition that settlement agreements aren't subject to the duty of good faith. This was correct in <u>Tate</u>, in which an agreement settled a discrimination claim between employee and employer. Even though Indiana law recognizes implied covenants of good faith and fair dealing in employment contracts, that settlement didn't resolve a dispute over the employment contract itself. Here the settlement agreement arises directly out of a dispute over the insurance policy and the agreement doesn't state that it shouldn't be construed as an insurance policy.

The next question is whether Hartford Iron alleged facts that, if true, plausibly violate the duty of good faith. Hartford Iron explains that Valley Forge "fail[ed] to notify Hartford Iron of conflict of interest; fail[ed] to implement an

---

[1] Unlike the First Settlement Agreement, the second doesn't bargain away this obligation. The First Settlement Agreement explains that the agreement "is not intended to nor will it be construed as an insurance policy." The Second Settlement doesn't seem to so limit itself.

ethical screen between the claims/defense and coverage personnel and lawyers; and improperly shar[ed] information between claims/defense and coverage personnel."

These allegations relate to the conflict of interest described in the court's orders of December 2015 [Doc. No. 298], April 2016 [Doc. No. 439], and November 2016 [Doc. No. 581]. The alleged failure to notify Hartford Iron of the existence of the conflict was a good faith dispute over whether Valley Forge, in carrying out the settlement agreement while litigating against Hartford Iron, could still control the remediation and defense. The other allegations are addressed in greater detail in the November 2016 order, which explained that "the weak ethical wall in place at the insurance company was insufficient to cure the conflict." In response, the court "mandate[d] that the insurer pay for independent counsel. That was what cured the conflict, and it did so better than an ethical wall could have." Because Valley Forge, upon learning of its ethical obligations, attempted to meet them by eliminating its control of the defense and remediation, Hartford Iron's conflict-based allegations don't result in bad faith.

Hartford Iron also alleges that Valley Forge misrepresented:

"concentrations of PCB contamination in subsurface soil in the Phase 1 area; migration of stormwater to the subsurface via the gravel pit; waste disposal documents and supporting materials for those documents,; utility locating; the electrical trenches, communications with defense counsel; concentration of PCBs and other contaminants in stormwater discharging from the Site; a new shipping address created at the Site by August Mack; staffing based on weather reports; a claimed oil spill and resulting waste; a claimed solvent spill in a 'lost' location; an actual spill of diesel oil

by August Mack through its subcontractor; and August Mack's claimed readiness to carry out project work . . . ."

Hartford Iron also alleges that Valley Forge refused to pay policy proceeds, caused undue delay in making payment, and exercised unfair advantage to pressure Hartford Iron into executing a third settlement agreement.

To proceed on the bad faith claim, Hartford Iron must show that Valley Forge acted with "furtive design or ill will." Mitchell v. Mitchell, 695 N.E.2d 920, 925 (Ind. 1998). Hartford Iron alleges enough to suggest that these facts, if true, would make Valley Forge liable for bad faith. Unlike a fraud claim, "bad faith does not need to be pled with particularity." Skinner v. Metro. Life Ins. Co., 829 F. Supp. 2d 669, 678 (N.D. Ind. 2010). Valley Forge is incorrect in conflating bad faith and fraud. It isn't obvious from the pleadings whether the alleged misrepresentations had "furtive design or ill will," but it's plausible and that's enough to survive the motion to dismiss.

The final allegation, that Valley Forge used unfair advantage to pressure Hartford Iron into executing a third settlement agreement, is described with no factual support. Because Hartford Iron doesn't allege facts that indicate this to be plausible, Hartford Iron can't argue it.

If Hartford Iron can prove the surviving bases for a bad faith claim, then it also might be entitled to attorney fees arising from the alleged bad faith. IND. CODE § 34-52-1-1(b)(3); Patel v. United Fire & Cas. Co., 80 F. Supp. 2d 948, 962-963 (N.D. Ind. 2002) ("[T]he conduct that formed the basis for the lawsuit—also met the statutory legal standard for litigating in bad faith under §

34-52-1-1(b)(3) . . . ."). This is an exception to the general rule that "each party is responsible for paying his or her legal expenses" where there's a compensatory damages remedy. <u>SCI Propane, LLC v. Frederick</u>, 39 N.E.2d 675, 681 (Ind. 2015). "[T]he decision of whether to award them, and the amount, lie within the discretion of the trial court, post-trial." <u>Patel</u>, 80 F. Supp. 2d at 963. The pleadings thus stake out the minimal necessary conditions for an attorney fees award, but the court is under no obligation to provide them if Hartford Iron prevails.

Hartford Iron doesn't state a plausible claim for bad faith as to the conflict of interest or unfair advantage, but does so as to any alleged misrepresentations. Only the misrepresentation-based bad faith claim survives and Hartford Iron also states a valid request for attorney fees in connection with it.


B. Independent Accounting

Hartford Iron seeks a "good faith, contemporaneous accounting that will clearly identify the different categories of costs that Valley Forge has paid so far, only some of which may be counted against Hartford Iron's policy limits." Some of these categories include defense costs, costs arising from breach of Valley Forge's obligations, other damage response costs, costs for defective work, costs tainted by the conflict of interest, and costs for work not approved by IDEM. As Hartford Iron sees it, a court-appointed special master or independent auditor should supervise the accounting.

"The necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies, is . . . the absence of an adequate remedy at law. Consequently, in order to maintain such a suit on a cause of action cognizable at law, as this one is, the plaintiff must be able to show that the accounts between the parties are of such a complicated nature that only a court of equity can satisfactorily unravel them." <u>Dairy Queen, Inc. v. Wood</u>, 369 U.S. 469, 478 (1962). Hartford Iron hasn't alleged facts suggesting that the accounts "are of such a complicated nature that only a court of equity can satisfactorily unravel them," and so the court dismisses this claim. *Id.*

Even if Hartford Iron alleged that Valley Forge believed it reached its policy limits and dispute remained over whether certain funds should be classified against those policy limits, it still hasn't alleged facts to support an independent accounting. The court isn't aware of what particular costs are disputed, or whether certain kinds of costs arguably count against the policy limits. The court doesn't know what the policy limits are, or whether the policy is cost-exclusive. Even if Hartford Iron alleged all of this, it's not clear why there would be no adequate remedy at law. The court dismisses Count 2 without leave to amend.

### C. Tort Claims (Other than Bad Faith)

In addition to the contract claims, Hartford Iron brings tort claims of negligence, nuisance, and trespass. It argues that Valley Forge trespassed on

Hartford Iron's property, and created and maintained a nuisance there when it put into place a storage area for waste drums, a tank farm, open trenches, and a gravel pit, and when Valley Forge openly dumped waste and flooded streets and yards with untreated, PCB-contaminated stormwater. It alleges that Valley Forge "acted negligently with respect to each of these matters."

This claim would duplicate Hartford Iron's action in contract with an action in tort. "[A] party may not restyle a breach-of-contract claim as a tort claim simply to obtain additional damages. Where the source of a party's duty to another arises from a contract, tort law should not interfere." JPMCC 2006-CIBC14 Eads Parkway, LLC v. DBL Axel, LLC, 977 N.E.2d 354, 364 (Ind. Ct. App. 2012) (internal quotations omitted); Greg Allen Constr. Co. v. Estelle, 798 N.E.2d 171, 173 (Ind. 2003) ("Because a tort may produce more generous damages and open the door to the possibility of punitive damages, there is obvious incentive to seek to frame a contract breach as a negligence claim.").

"It is axiomatic that tort obligations arise, not from an agreement between the parties, but by operation of law." JPMCC 2006-CIBC14 Eads Parkway, LLC, 977 N.E.2d at 365. The "economic loss rule" "preclud[es] tort liability for purely economic loss—that is, pecuniary loss unaccompanied by any property damage or personal injury (other than damage to the product or service itself)." Indianapolis-Marion Cnty. Pub. Library v. Charlier Clark & Linard, P.C., 929 N.E.2d 722, 727 (Ind. 2010). "[D]amage from a defective product or service may be recoverable under a tort theory if the defect causes personal injury or damage to other property, but contract law governs damage

to the product or service itself and purely economic loss arising from the failure of the product or service to perform as expected." *Id.* at 728.

The harms that Hartford Iron alleges are harms to Hartford Iron's property, but they don't extend beyond damage to the "service itself" or reach "other property." The "service" here is the service "purchased by the plaintiff, not the [service] furnished by the defendant." *Id.* at 732. Pursuant to the Second Settlement Agreement, Hartford Iron "purchased" Valley Forge's performance of the remediation and defense. Hartford Iron doesn't allege any negligence that impacted Hartford Iron's property beyond the remediation work. Subpar performance in contracted-for work on one's property doesn't transform that claim into a tort. Hartford Iron alleges harms to other people's properties through pollution and runoff, but none of this impacts Hartford Iron itself, and so Hartford Iron has no tort claim.

A tort action requires "negligence [that] goes beyond failure to perform up to contractual standards, and constitutes a tort even if there was no contractual relationship." <u>Greg Allen Constr. Co.</u>, 798 N.E.2d at 175. The source of Valley Forge's duty to Hartford Iron is solely its contractual agreements, particularly the Second Settlement Agreement. Hartford Iron's allegations about Valley Forge are limited to dissatisfaction with whether Valley Forge performed up to contractual standards.

Hartford Iron argues that an insured "may have available two distinct legal theories, one in contract and one in tort, each with separate, although often overlapping, elements, defenses, and recoveries." <u>McGrath v. Everest Nat'l</u>

Ins. Co., 668 F. Supp. 2d 1085, 1108 (N.D. Ind. 2009) (quoting Erie, 622 N.E.2d at 520). In McGrath, the insurer's negligent failure to defend the insured resulted in a judgment against the insured in excess of the policy limits, which the court held that the insurer could be obliged to pay. Dispute over whether Valley Forge's alleged mishandling of the remediation, and additional costs about how to repair it would only impact whether certain costs fall within the policy limits. There's no risk of saddling Hartford Iron with a burden above and beyond what it contracted for, as would have happened in McGrath if the insured had to pay the brunt of a judgment even though the insurer was negligent in its defense.

"[T]ort law is a superfluous and inapt tool for resolving purely commercial disputes. We have a body of law designed for such disputes. It is called contract law." Indianapolis-Marion Cnty. Pub. Library, 929 N.E.2d at 729 (quoting Miller v. U.S. Steel Corp., 902 F.2d 573, 574 (7th Cir. 1990)). It's inappropriate for the tort claims to be raised here, and so Count 3 is dismissed.

## D. Declaratory Judgment

Hartford Iron seeks a declaration of rights pursuant to 28 U.S.C. § 2201. First, it asks the court to declare that Valley Forge created a conflict of interest when it sued Hartford Iron, that the conflict gives Hartford Iron the legal right to control the defense and remediation, that Hartford Iron had the right to seek IDEM approval for the Keramida treatment system and that Hartford Iron has the right to install it, and that Valley Forge's actions didn't cure the conflict.

The court has already resolved these issues related to the conflict of interest in its orders of December 2015 [Doc. No. 298], April 2016 [Doc. No. 439], and November 2016 [Doc. No. 581].

The court recognized the conflict of interest, and required Valley Forge to relinquish control of the defense and remediation. But it already held in April 2016 that "it doesn't necessarily follow that Hartford Iron inherits that control . . . ; Valley Forge could comply with the court's ruling, for example, by arranging for a truly independent third party to manage the defense and remediation." Thus, there's no reason Hartford Iron should still be claiming that it has the legal right to control the defense and remediation, or that it has the right to unilaterally install the treatment system. Further, in November 2016 the court explained that Valley Forge wasn't obligated to implement an "ethical wall," so long as it gave control of defense and remediation *either* to Harford Iron or to an independent third party. The court won't readdress issues it's already decided.[2]

Second, Hartford Iron requests a declaration that Valley Forge's costs of stormwater collection and treatment, and that costs to preserve the status quo without site cleanup, not be charged against policy limits. These are perfectly

---

[2] The court also recognized in its November 2016 order that "rather than cooperate to decide on an independent third party, Mr. Shere[, Hartford Iron's counsel,] moved for partial summary judgment seeking a declaratory judgment" of its right to an independent third party. Despite the court's continual recognition that Valley Forge needn't cede control of remediation to Hartford Iron if ceded to an independent third party, and that Valley Forge doesn't need an ethical wall if it does so, Hartford Iron continues to litigate this point. "Once it is obvious that an asserted position has no factual or legal basis, the continued assertion of that position exposes counsel to [28 U.S.C.] § 1927 sanctions." GREGORY P. JOSEPH, SANCTIONS: THE FEDERAL LAW OF LITIGATION ABUSE 447 (5th ed. 2013); *see, e.g.*, <u>Dreiling v. Peugeot Motors of Am., Inc.</u>, 768 F.2d 1159, 1166 (10th Cir. 1985). Hartford Iron should keep this in mind. The court aims to *resolve* this dispute, not to litigate the same points *ad infinitum.*

reasonable claims for an insurance litigation and Valley Forge doesn't seem to dispute their plausibility or basis in law at this stage.

Third, Hartford Iron requests a declaration that Valley Forge materially breached its obligation to complete remediation to the satisfaction of regulatory authorities regardless of whether the expense is above policy limits, and that Valley Forge is obligated to excavate in a manner that minimizes business disruption. These also seem to be good faith questions of interpretation of the Second Settlement Agreement. Count 4 is thus dismissed as to the conflict of interest-based requests only.

## E. Breach of Contract Claims

After having eliminated the tort claim, equitable accounting claim, part of the bad faith claim, and part of the request for declaratory relief, a more straightforward breach of contract claim remains.

Valley Forge makes two attacks on the basic breach of contract claim. First, it argues that Hartford Iron insufficiently demonstrated that various entities acted as Hartford Iron's agents. Second, it argues that Mr. Goldberg shouldn't be a party to the litigation at all.

Hartford Iron alleges that Valley Forge conducts its business through consultants and subcontractors, including Continental Casualty Company, Resolute Management, Inc., and August Mack Environmental, Inc., and that all

of these act as Valley Forge's agents. Hartford Iron alleges that Valley Forge didn't breach the Second Settlement Agreement directly, but did so through these agents and their employees.

"The test for agency is 'whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal.'" Whitley v. Taylor Bean & Whitacker Mtg. Co., 607 F. Supp. 2d 885, 895 (N.D. Ill. 2009) (quoting Chemtool, Inc. v. Lubrication Techs., 148 F.3d 742, 745 (7th Cir. 1998)). "To plead the existence of an agency relationship, a plaintiff must allege a factual predicate to create the inference of agency." *Id.*; *see also* Owens v. Republic of Sudan, 412 F. Supp. 2d 99, 109 (D.D.C. 2006) (holding that Rule 8 doesn't require "precise factual detail" when pleading agency relationship).

Hartford Iron alleges actions taken by Continental Casualty's employees, including changing the classification of past Valley Forge payments from 'defense' to 'indemnity.' The alleged ability of Continental employees to use Valley Forge's cost-classification system creates an inference that Continental worked on Valley Forge's behalf.

Regarding Resolute, attorney Melissa King's alleged receipt of many emails from Valley Forge litigators about Hartford Iron's defense and claims management also allows an inference that Resolute worked on Valley Forge's behalf.

Regarding Mack, Hartford Iron's allegation that the Services Agreement explicitly establishes Mack as Valley Forge's agent under the Second Settlement Agreement is sufficient to show a plausible agency relationship.

Hartford Iron points to numerous contractual provisions allegedly breached by Valley Forge or its agents. Hartford Iron also points out how it was damaged by these breaches. Thus, there's a plausible breach of contract claim.

Hartford Iron alleges that it's the successor to the unincorporated business, "Hartford Iron & Metal," operated by Alan Goldberg until 2005. This is the only fact alleged regarding Mr. Goldberg in the latest counterclaim. All parties recognize, however, the Mr. Goldberg is party to the Second Settlement Agreement, just as Hartford Iron is. The alleged breaches of the Second Settlement Agreement thus impact him as well as Hartford Iron.

## III. CONCLUSION

Based on the foregoing, the court DENIES IN PART and GRANTS IN PART Valley Forge's motion to dismiss [Doc. No. 521]. Count 1 of Hartford Iron's counterclaim is DISMISSED only as to claims that Valley Forge presents an ongoing conflict of interest, Count 2 is DISMISSED in its entirety, Count 3 is DISMISSED in its entirety, and Count 4 is DISMISSED only as to claims regarding the conflict of interest. The court doesn't grant Hartford Iron leave to amend its counterclaims any further.

The court recognizes that Hartford Iron has a pending motion for partial summary judgment [Doc. No. 514]. The court grants Hartford Iron until January 17, 2017 to modify or withdraw that motion in light of this order and the court's November 2016 order [Doc. No. 581].

SO ORDERED.

ENTERED:  January 4, 2017

 /s/ Robert L. Miller, Jr.
Judge
United States District Court