UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| VALLEY FORGE INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. 1:14-cv-6 RLM-SLC |
| | ) |
| HARTFORD IRON & METAL, INC., *et al.*, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Hartford Iron moved that the court reconsider the portion of its January 4, 2017 order [Doc. No. 609] dismissing certain counterclaims against Valley Forge insofar as they related to Valley Forge's alleged ongoing conflict of interest. A fuller description of the case's background can be found in the January 4 order [Doc. No. 609] and the court's earlier orders [Doc. Nos. 298, 415, 439, 469, 504, 564, 581]. The court declines to revise its January 4 order.

Hartford Iron bases its motion for reconsideration on Federal Rules of Civil Procedure 54(b) and 59(e). Rule 59(e) allows a party to move "to alter or amend a judgment" within 28 days of the entry of judgment. Fed. R. Civ. P. 59(e). The rule "enables a district court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." Russell v. Delco Remy Div. of Gen. Motors Corp., 51 F.3d 746, 749 (7th Cir. 1995). But this rule applies only when the court has entered a judgment. *See* Galvan v. Norberg, 678 F.3d 581, 587 n.3 (7th Cir. 2012); 11 Charles Alan Wright et al., Federal Practice and Procedure § 2810.1 (3d ed. 2017) ("[T]he only real limitation

on the type of the motion permitted [under Rule 59(e)] is that it must request a substantive alteration of the judgment . . . ."). The court's January 2017 order granted in part and denied in part Valley Forge's motion to dismiss Hartford Iron's counterclaim, without a judgment for either party. Without a judgment, Rule 59(e) can't support Hartford Iron's motion.

Under Rule 54(b), the court may, at its discretion, "revise[ ] [non-final orders] at any time before the entry of a judgment adjudicating all the claims and the parties' rights and liabilities." Fed. R. Civ. P. 54(b); Galvan v. Norberg, 678 F.3d at 587. This is a proper avenue for Hartford Iron to seek revision.

Hartford Iron objects to the court's dismissal of Count 1 of its second amended counterclaim, breach of contract, so far as that count was based on claims of an "ongoing conflict of interest." [Doc. No. 609, at 20]. This is because each of Hartford Iron's arguments that Valley Forge is now acting with a conflict of interest has already been litigated, can be remedied through another part of the counterclaim that survived the motion to dismiss, or can be remedied through enforcement of the court's already-existing orders.

Hartford Iron's allegations about the alleged conflict of interest concerned issues that had been litigated time and again. In three previous orders [Doc. Nos. 298, 439, 581], the court explained the conflict of interests that Valley Forge creates if it holds the reins on defense and remediation while also suing Hartford Iron for breach of contract. Hartford Iron continues to ask for relief that's either contrary to, or already decided in, these prior court orders.

2

In its motion for reconsideration, Hartford Iron says the court mistakenly believed "that . . . Valley Forge . . . is now 'paying for independent counsel' to defend Hartford Iron pursuant to the Court's 'mandate.'" [Doc. No. 632, at 1]. The court harbored no such illusion and said no such thing.

In permitting Hartford Iron's bad faith claim, the court explicitly said that "Hartford Iron . . . alleges that Valley Forge refused to pay policy proceeds [and] caused undue delay in making payment." [Doc. No. 609, at 11]. The bad faith claim survived on the basis of these allegations because, if true, they might indicate that Valley Forge acted with "furtive design or ill will." *Id.* (quoting Mitchell v. Mitchell, 695 N.E.2d 920, 925 (Ind. 1998)). "The obligation of good faith and fair dealing . . . includes the obligation to refrain from (1) making an unfounded refusal to pay policy proceeds; [and] (2) causing an unfounded delay in making payment." *Id.* at 7 (quoting Erie Ins. Co. v. Hickman, 622 N.E.2d 515, 519 (Ind. 1993)). The bad faith and breach of contract claims are appropriate avenues for Hartford Iron to argue that Valley Forge is holding up payments, and the court has allowed Hartford Iron to make those arguments.

The opinion never said "that . . . Valley Forge . . . is now 'paying for independent counsel' to defend Hartford Iron pursuant to the Court's 'mandate.'" [Doc. No. 632, at 1]. The November 2016 opinion [Doc. No. 581], from which the sub-quoted language was taken, doesn't say that Valley Forge is complying with its contractual obligations and the court orders. That opinion clarified the court's interpretation of Armstrong Cleaners, Inc. v. Erie Insurance Exchange, 364 F. Supp. 2d 797 (S.D. Ind. 2005), that the court's mandate for independent counsel

3

cures the conflict of interest better than an ethical wall could, and that an ethical wall wasn't required in addition to independent counsel. [Doc. No. 581, at 5].

In its opinions on the subject, "[t]he court recognized the conflict of interest, and required Valley Forge to relinquish control of the defense and remediation." [Doc. No. 609, at 17]. But this isn't enough for Hartford Iron. There are numerous examples in the counterclaim in which Hartford Iron seeks relief already granted or asks the court to act contrary to its orders.

Hartford Iron's second amended counterclaim asked the court for a declaratory judgment "that, due to the conflict of interest, Hartford Iron has the legal right to control the defense and remediation . . . , all at Valley Forge's expense subject to commercial reasonableness of the respective charges." [Doc. No. 508, at ¶ 183]. This is precisely the issue the court answered time and again, holding that Hartford Iron doesn't necessarily have this right, and that an independent third party could provide these services.

Hartford Iron then asked for a declaration that "Hartford Iron had the legal right to seek and obtain IDEM's approval for the Keramida storm water collection and treatment system, and Hartford Iron now has the right to hire contractors and install the Keramida system at Valley Forge's expense, subject to commercial reasonableness." [Doc. No. 508, at ¶ 184]. Again, Hartford Iron does not have this right; the issue has already been litigated.

Hartford Iron then asks for a declaration that the conflict wasn't cured through assignment of claims director Jerry Alpine to manage payments. [Doc.

4

No. 508, at ¶ 185]. The November 2016 opinion rejected this exact position as well, and it merits repeating:

> Armstrong Cleaners[, Inc. v. Erie Insurance Exchange, 364 F. Supp. 2d 797 (S.D. Ind. 2005)] thoroughly analyzes the 'eternal triangle' of liability insurance company, insured, and insurance defense attorney, and this court applied Armstrong's reasoning in its two orders [now four orders] addressing the conflict of interests. Hartford Iron contends that "[a]s *Armstrong* makes clear, the legal standard requires separation of both 'front-line adjusters' and 'more senior supervisors' for purposes of personnel." The Armstrong court, however, never mandates an ethical wall between these personnel. Instead, it says that the weak ethical wall in place at the insurance company was insufficient to cure the conflict. The court *did* mandate that the insurer pay for independent counsel. That was what cured the conflict, and it did so better than an ethical wall could have."
>
> Just as Armstrong doesn't mandate an ethical wall, neither did this court ever mandate an ethical wall. Instead, its December 2015 order said that Valley Forge doesn't have the right to control the defense or the remediation. Eliminating Valley Forge's control of these components eliminates the chance that it would steer them in a manner that supported its breach of contract claims against Hartford Iron. By 'outsourcing' these components, either to Hartford Iron or to an independent third party, Valley Forge could avoid a conflict of interests better than with an ethical wall inside the organization.
>
> . . .
>
> If Valley Forge is paying for the third party, it's inevitable that the third party interact with, and to some degree rely on Valley Forge personnel who may not be insulated from the litigation.

[Doc. No 581, at 5-6]. The court already decided that Jerry Alpine's involvement doesn't perpetuate the conflict of interest. Again, if Valley Forge isn't paying what it owes, it's breaching the contract, and might be doing so in bad faith. Those claims survive, and Hartford Iron is welcome to try to prove them.

Next, Hartford Iron asks for "procedures by which Valley Forge can cure its conflict of interest through claims management that is truly independent from

5

Valley Forge's litigation claims and from Valley Forge attorneys and staff who are familiar with those claims." [Doc. No. 508, at ¶ 186]. This issue, too, is answered in the preceding quotation.

In contrast, Hartford Iron also asked for a declaration that certain costs connected to the conflict of interest not be charged against policy limits. The court recognized that "[t]hese are perfectly reasonable claims for an insurance litigation" and allowed them to proceed. [Doc. No. 609, at 17-18]. Determining what expenses are tainted by the alleged breach of contract or conflict and should be set off from the policy limit is different from requesting relief that the court has explicitly granted or rejected.

If Valley Forge is breaching its contract, acting in bad faith, or violating the court's orders, these are problems for which Hartford Iron has a legal remedy. If Hartford Iron wishes to prove its bad faith and breach of contract claims, the appropriate methods to do so are through summary judgment or trial, not through belabored motion practice, re-litigating issues already decided. There's no longer dispute over whether and how Valley Forge can fulfill its obligation to cure the conflict of interest. Hartford Iron insisted on continuing to litigate these issues in its counterclaim, and that's why they were dismissed.

Last, Hartford Iron argues that the court adopted an approach in its opinion that neither party requested. First, in its brief on the motion to dismiss, Valley Forge rejected Hartford Iron's allegations of a conflict-laden defense as conclusory. [Doc. No. 522, at 20]. Hartford Iron regularly says that Valley Forge's actions were "[d]riven by conflict of interest," [Doc. No. 508, at ¶¶ 98, 99, 101,

110, 116, 118, 121, 123], even when the facts connected to them don't relate to a conflict as understood under the law of this case set forth in the previous opinions. For example, Hartford Iron alleges that, "[d]riven by conflict of interest, Valley Forge refused payment for environmental contractor work in July and August 2015 until a year later." [Doc. No. 508, ¶ 101]. This allegation, if true, could constitute a breach of contract or bad faith. But its connection to the "conflict of interest" is weak when the court's prior opinions allow for the conflict to be cured if a third party handles remediation, and especially when Hartford Iron still (incorrectly) claims the right to control the remediation. Hartford Iron's arguments that dealt with an "ongoing" conflict of interest weren't grounded in the law of this case, but in Hartford Iron's repeated assertions about what it would like that law to be.

Second, the court simply dismissed those arguments that have been decided and left the core of Hartford Iron's claims intact – a breach of contract case with a bad faith component. [Doc. No. 609, at 1]. Third, briefing on the motion to dismiss concluded before the court's November 2016 opinion [Doc. No. 581] elaborating on this issue in greater detail. Fourth, as Valley Forge explained, the issue is no longer a live one. *See* Olson v. Brown, 594 F.3d 577, 580 (7th Cir. 2010).

The court's discussion of Section 1927 sanctions from its last opinion merits repeating here:

> Despite the court's continual recognition that Valley Forge needn't cede control of remediation to Hartford Iron if ceded to an independent third party, and that Valley Forge doesn't need an ethical wall if it does so, Hartford Iron continues to litigate this point.

7

> "Once it is obvious that an asserted position has no factual or legal basis, the continued assertion of that position exposes counsel to [28 U.S.C.] § 1927 sanctions." GREGORY P. JOSEPH, SANCTIONS: THE FEDERAL LAW OF LITIGATION ABUSE 447 (5th ed. 2013); *see, e.g.*, Dreiling v. Peugeot Motors of Am., Inc., 768 F.2d 1159, 1166 (10th Cir. 1985). Hartford Iron should keep this in mind. The court aims to *resolve* this dispute, not to litigate the same points *ad infinitum.*

[Doc. No. 609, at 17 n.2]. Because, once again, Hartford Iron asks the court to decide what it's already decided, and forces Valley Forge to reargue the same, the court now requires Hartford Iron to compensate Valley Forge for the cost of litigating this motion. Goodyear Tire & Rubber Co. v. Haeger, 137 S. Ct. 1178 (2017). Again, the court warns that the pending partial summary judgment motion [Doc. No. 514] should be examined with Section 1927 in mind.

Based on the foregoing:

(1) Hartford Iron's motion for reconsideration [Doc. No. 609] is DENIED.

(2) The court DIRECTS Valley Forge to file time-sheets with an accurate calculation of the value of Valley Forge's work and expenses in litigating this motion, and DIRECTS Hartford Iron to compensate Valley Forge accordingly.

SO ORDERED.

ENTERED: April 28, 2017

/s/ Robert L. Miller, Jr.
Judge
United States District Court