# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

VALLEY FORGE INSURANCE COMPANY,   )
                                        )
        Plaintiff,                 )
                                        )
v.                                      )     Case No. 1:14-CV-6
                                        )
HARTFORD IRON & METAL, INC., and    )
ALAN B. GOLDBERG, d/b/a Hartford Iron &  )
Metal,                               )
                                        )
        Defendants.              )

## OPINION AND ORDER

This matter is before the Court for ruling on three pending motions. Plaintiff Valley Forge filed a Motion to Exclude Certain Testimony of Paul F. Amoruso (ECF 778), to which Defendants Hartford Iron and Alan B. Goldberg filed a brief in opposition (ECF 783) and Valley Forge filed a reply (ECF 786). Hartford Iron and Goldberg each filed a Motion to Exclude Experts under *Daubert* (ECF 780 and 781, respectively), to which Valley Forge filed briefs in opposition (ECF 784 and 785) and Hartford Iron filed a reply (ECF 787). For the reasons explained below, Valley Forge's motion (ECF 778) is **GRANTED in part and DENIED in part**; Hartford Iron's motion (ECF 780) is **GRANTED in part and DENIED in part**; and Goldberg's motion (ECF 781) is **DENIED**. Specific testimony and opinions by Paul Amoruso and Bernd Heinze are precluded as set forth below. The motions are in all other respects denied.

## STANDARD OF REVIEW

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the Supreme Court's opinion in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *See Lees v. Carthage*, 714 F.3d 516, 521 (7th Cir. 2013) (explaining that Rule 702 has

superseded *Daubert*, but that its standard of review is still applicable). In analyzing the reliability of proposed expert testimony, the role of the court is to determine whether the expert is qualified in the relevant field and to examine the methodology the expert has used in reaching his conclusions. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 153 (1999). An expert may be qualified by "knowledge, skill, experience, training, or education." Fed.R.Evid. 702. "The purpose of [the *Daubert*] inquiry is to vet the proposed testimony under Rule 702's requirements that it be 'based on sufficient facts or data,' use 'reliable principles and methods,' and 'reliably appl[y] the principles and methods to the facts of the case.'" *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 804 (7th Cir. 2012) (quoting Fed.R.Evid. 702). Whether to admit expert testimony rests within the discretion of the district court. *See Gen. Elec. v. Joiner*, 522 U.S. 136, 142 (1997); *Lapsley*, 689 F.3d at 810 ("[W]e 'give the district court wide latitude in performing its gate-keeping function and determining both how to measure the reliability of expert testimony and whether the testimony itself is reliable.'") (quoting *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 894 (7th Cir. 2011)). "The proponent of the expert bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard" by a preponderance of the evidence. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

When the judge is the trier of fact "the usual concerns of [Rule 702]–keeping unreliable expert testimony from the jury–are not present.'" *Equal Employment Opportunity Comm'n v. Amsted Rail Co.*, 2018 WL 587345, at *3 (S.D. Ill. Jan. 29, 2018) (quoting *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 760 (7th Cir. 2010)). "[W]here the factfinder and the gatekeeper are the same, the court does not err in admitting the evidence subject to the ability later to exclude it or disregard it if it turns out not to meet the standard of reliability established

by Rule 702." *Id.* (quoting *In re Salem*, 465 F.3d 767, 777 (7th Cir. 2006)). As this Court

explained in *BASF Corp. v. Aristo, Inc.*:

> It is for the [trier of fact] to decide the correctness of the facts that underlie each of
> these experts' opinions. *i4i Ltd. Partnership v. Microsoft Corp.*, 598 F.3d 831,
> 856 (Fed.Cir. 2010). These experts are ready to be examined and cross-examined
> in [court], which will determine who provides the more credible way of
> accounting for damages in this case. The law of both the Seventh Circuit and the
> Federal Circuit supports this conclusion. As the Seventh Circuit has stated: "The
> question of whether the expert is credible or whether his or her theories are correct
> given the circumstances of a particular case is a factual one that is left for the
> [trier of fact] to determine after opposing counsel has been provided the
> opportunity to cross-examine the expert regarding his conclusions and the facts on
> which they are based." *Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir.
> 2000).

*BASF Corp. v. Aristo, Inc.*, 2012 WL 2529213, at *4-5 (N.D. Ind. June 29, 2012). Another

district court explained this flexible standard as follows:

> [T]o the extent that *Daubert* issues relate to matters that will be tried to the Court,
> rather than a jury, the Court possesses greater latitude in exercising its
> gatekeeping function. *See Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748,
> 760 (7th Cir. 2010); *In re Salem*, 465 F.3d 767, 777 (7th Cir. 2006) ("Where the
> gatekeeper and the factfinder are one and the same–that is, the judge–the need to
> make such decisions prior to hearing the testimony is lessened. That is not to say
> that the scientific reliability requirement is lessened in such situations; the point is
> only that the court can hear the evidence and make its reliability determination
> during, rather than in advance of, trial. Thus, where the factfinder and the
> gatekeeper are the same, the court does not err in admitting the evidence subject to
> the ability later to exclude it or disregard it if it turns out not to meet the standard
> of reliability established by Rule 702.").

*Client Funding Solutions Corp. v. Crim*, 943 F.Supp.2d 849, 860-61 (N.D. Ill. 2013).

Finally, and perhaps most importantly in this case, when a party's challenges to proposed

expert testimony "do not go to admissibility but to the appropriate weight that should be

accorded to the evidence[,] '[d]etermination on admissibility should not supplant the adversarial

process; shaky expert testimony may be admissible, assailable by its opponents through

cross-examination.'" *Metavante*, 619 F.3d at 760 (quoting *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir.2010)).

## DISCUSSION

The Court, having reviewed the parties' briefs and exhibits and considered the arguments presented, concludes that the parties' motions to exclude expert testimony will be denied, with the exception of specific opinions or testimony from Hartford Iron expert Paul Amoruso and Valley Forge expert Bernd Heinze as set forth below. In overwhelming part, the parties' arguments are actually criticisms that go to weight (and even credibility, in some instances) rather than admissibility. This is especially true given that this case is scheduled for a bench trial, which affords the Court much more flexibility regarding the admission of expert testimony (all testimony, for that matter). The Court's rulings are intended to ensure that both sides have a fair opportunity to present their expert evidence and challenge opposing experts through cross-examination and contrary evidence. The parties really pick apart the opposing side's experts, and both have some legitimate complaints about certain statements, references, conclusions or opinions included in the expert reports. At the same time, the Court's review of those reports reveals that all of them contain relevant information that would assist the Court in understanding and ruling on the substantive issues to be tried.

The present motions are easily resolved without the need for the Court to parse through each of the expert reports in an effort to sanitize them of their many alleged defects. Valley Forge and Hartford Iron want the Court to throw the baby out with the bath water. Amoruso's opinions about environmental matters are on their face outside his area of expertise and much of Heinze's proposed testimony is inadmissible for other reasons. All of the parties' other challenges and

4

objections to proposed expert evidence boil down to this: the other side's experts' opinions on almost every issue are inadmissible because they are wrong. The parties go to great lengths to explain why the conclusions and opinions of a particular expert are so bogus that the Court should not waste time considering them. The parties' challenges don't warrant excluding expert evidence; rather, they reveal the need to subject all of the experts to cross-examination at trial.

### I. Valley Forge's motion to exclude certain testimony of Paul F. Amoruso.

Valley Forge "moves to exclude the testimony of former insurance claims handler Paul F. Amoruso regarding certain opinions disclosed in his written reports dated October 2, 2017 and November 6, 2017, respectively, that concern topics well beyond his knowledge, skill, experience, training, and education." Motion to Exclude Testimony of Amoruso (ECF 778), p. 1. More specifically, Valley Forge argues as follows:

> The motion is brought on the basis that certain of Amoruso's opinions fail to meet the Rule 702 standard for admissibility of expert testimony because: (1) Amoruso, a former claims handler, is not qualified to opine on matters such as environmental engineering, contract interpretation, and underwriting practices; (2) Amoruso used unreliable methodologies in reaching his conclusions, such as relying on conjecture and baseless supposition concerning a third-party's mindset; and (3) Amoruso's opinions do nothing to assist the trier of fact to understand the evidence or to determine a fact in issue.

*Id*. Valley Forge takes no issue with Amoruso's proposed testimony "related to claims practices and procedures in this case[,]" and concedes that "[i]f that were the extent of Amoruso's opinions, then Valley Forge would not question his qualifications under Rule 702[.]" Brief in Support of Motion to Exclude (ECF 779), p. 1. The portions of Amoruso's proposed testimony that Valley Forge challenges involve what it designates as his "environmental opinions" and "contract-interpretation opinions," which Valley Forge insists "stray far beyond his area of

experience and knowledge[.]" *Id*., p. 2.

## A. Environmental opinions.

In his reports, Amoruso includes several statements that Valley Forge contends involve environmental or engineering matters outside his field of expertise. There are nine such statements or opinions, according to Valley Forge, that Amoruso is unqualified to make, which are:

• On February 26, 2014, IDEM changed its April 17, 2012 instruction that remediation of PCBs should be carried out to the agency's industrial screening level of 7.4 ppm. Instead, the agency set a cleanup level of 1 ppm PCBs 'due to the recent PCB impacted storm water events.'

• [Valley Forge hydrogeology expert Robert] Karls makes a single argument about delay of effective stormwater work. The argument provides no valid basis to attribute this delay to Hartford Iron. This issue illustrates broader failures of methodology in the Karls and [Bernd] Heinze reports.

   o Karls says nothing about the supposed fault of Hartford Iron regarding this task, including the failure of Insurer's coverage counsel to negotiate terms with Keramida in 2015.

   o Effectively and completely capturing stormwater migrating from the Hartford Iron site is fairly easy and simple.

   o Claims director J. Alpine ended Insurer's freeze on most contractor payments on or about August 1, 2016, allowing TEI's construction of the effective stormwater controls as well as other work required by IDEM.

   o Even after J. Alpine ended the payment freeze to contractors, Insurer failed to provide Hartford Iron the required legal defense to implement the work.

   o Karls does not recognize that Keramida substantially revised its technical specifications as of December 7, 2015 to meet IDEM requirements. His lack of knowledge about the facts illustrates the broader failure in his report and the Heinze report to use reliable references and valid methodology to express opinions about claims management.

o Insurer's proposal for a special master was not needed to build effective stormwater controls and would have caused further delay.

o Under Insurer's insurance policies and the arguments of coverage counsel, Hartford Iron could not reasonably advance substantial funds for effective contractor work in response to Insurer's failure to meet its obligations.

*Id*., pp. 4-5 (bullet points and paragraph format in original) (internal citations to Amoruso reports omitted). Valley Forge argues that "Amoruso has no educational or work background in hydrogeology or any other environmental science[]" and therefore "is not qualified to opine on environmental matters," and so all of these environmental opinions should be inadmissible. *Id*., p. 5.

Hartford Iron devotes most of its response brief to arguing about one of the substantive issues in the case–the matter of the applicable policy limits–and argues that Amoruso is qualified to testify as an expert on that issue. Response in Opposition (ECF 783), generally. Hartford Iron's brief reads more like a summary judgment brief than a *Daubert* brief (the same applies to Valley Forge's briefs, as discussed below) in that it includes lengthy argument on the policy limits issue and then, with much less effort or conviction, contends that Amoruso's statements and opinions are relevant to that issue and therefore admissible. Hartford Iron states that "[t]he Court's decision on the expert issues concerning this policy limits [issue] may for practical purposes end most of this case." *Id*., p. 19. The issue is significant, to be sure, but Hartford Iron's arguments go far beyond the Court's narrow inquiry today, which is simply whether Amoruso is qualified to make the specific assertions and offer the specific opinions that Valley Forge challenges. After Hartford Iron has its say on the issue of policy limits, it finally turns to Amoruso's challenged testimony. As to the challenged statements and opinions regarding

"environmental matters," which Hartford Iron doesn't get around to addressing until page 19 of its brief, the company argues that "Mr. Amoruso's opinions about actual 'environmental matters' are limited, and he relies on properly cited references." *Id*., p. 19.

Hartford Iron's argument in support of the admissibility of these statements is that "Amoruso does not claim in his reports that these [statements] are the result of his personal environmental experience. Rather, he relies for these points on clear and reliable sources." *Id*. Hartford Iron claims that the challenged statements "come[] straight from the sworn affidavit testimony of Kristen Belcredi, who is Senior Vice President of Engineering Services for Keramida, Inc. Her Affidavits are previously of record in this case[.] . . . Mr. Amoruso's original report clearly identifies these affidavits at the very start of his reference sources for his [report]." *Id*. Hartford Iron's argument appears to be that since Amoruso was merely referencing, quoting or summarizing from the affidavit of another expert witness, his statements should be admitted. Hartford Iron then spends time praising Ms. Belcredi's "impeccable qualifications as a professional engineer with 25 years experience" and notes that Valley Forge "does not object to any of her opinions . . . [n]or is there any reasonable objection to Mr. Amoruso relying on a qualified environmental consultant to form opinions about management of an environmental claim." *Id*., p. 21. So, because the "environmental opinions" Amoruso includes in his reports are based on the unchallenged opinions of another expert, and because he cited Ms. Belcredi's affidavit, they are admissible. And they are relevant, Hartford Iron insists, because they explain or elucidate Amoruso's opinions about the insurance claims procedures in this case (which even Valley Forge acknowledges are within his area of expertise).

To summarize, Hartford Iron argues that the challenged "environmental opinions"

included in Amoruso's reports were based on statements or opinions of Ms. Belcredi and are included in his report for the purpose of assisting the Court in understanding Amoruso's conclusions and opinions as to the *claims procedures* in this case. The Court agrees with Valley Forge that the challenged statements or opinions in Amoruso's reports are beyond his field of expertise and beyond the scope of his proposed expert testimony (insurance claims procedures), and that Hartford Iron's attempt to link those "environmental opinions" to Amoruso's conclusions as to claims procedures is too flimsy.

The challenged "environmental opinions" are just that–assertions about what was done or not done regarding the remediation process that is at the heart of this case. Such matters are outside of Amoruso's purported area of expertise and beyond the scope of his designation as an expert in insurance claims matters. It should be left to the engineering experts to opine about matters related to the remediation process; there is no reason to let them in through the back door by including them in Amoruso's reports or testimony. Accordingly, Valley Forge's motion to exclude this testimony is granted. Amoruso will be precluded from testifying to the challenged "environmental opinions" enumerated by Valley Forge in its brief and quoted above (*infra*, pp. 6-7).

### B. Contract-interpretation opinions.

Valley Forge argues that Amoruso should be precluded from testifying or opining as to matters involving contract interpretation. Brief in Support of Motion to Exclude (ECF 779), pp. 14-25. The "contract-interpretation opinions" Valley Forge refers to all relate to the hotly debated policy limits issue referred to above (the aggregate versus non-aggregate issue). Valley Forge argues that Amoruso is unqualified to testify on that issue because it involves matters of

insurance underwriting as opposed to insurance claims procedures and Amoruso "has zero underwriting experience and training" and is therefore unqualified to render an opinion concerning underwriting (as opposed to claims procedures). Valley Forge takes the opportunity to present its own argument on this issue, just as Hartford Iron did in its briefs. Before even addressing Amoruso's testimony, Valley Forge first argues that "Hartford Iron . . . has concocted a new issue in the case, that despite the parties' agreement that Valley Forge's entire indemnity obligation would be capped based on a reference to 'the total of the aggregate liability limits of the Policies,' which amounts to approximately $15,300,000, the Court should effectively rewrite the Settlement Agreements and artificially expand the limit twentyfold to almost $300,000,000." *Id*., pp. 7-8. Valley Forge contends that because Amoruso is an expert in claims procedures, rather than underwriting, he is unqualified to testify to this issue. And even if he is, Valley Forge argues that "[t]he methodology Amoruso employed to reach the opinion exemplifies that of a person who first settles on (or is provided with) a predetermined conclusion and then, after-the-fact, searches desperately for facts and data to prop up that conclusion." *Id*., p. 19.

Valley Forge does not provide a laundry list of conclusions or opinions it is challenging like it did with the "environmental opinions." Instead, Valley Forge seeks to preclude Amoruso from testifying on the policy limits issue at all. Valley Forge refers to the issue as "Defendants' concocted $300 million argument" and Amoruso's opinion about it as a "preposterous $300 million opinion." Reply in Support, p. 15. Valley Forge even titled a section of its response brief "**DEFENDANTS' PREPOSTEROUS $300 MILLION ARGUMENT**[.]" (*see* Response in Opposition to Hartford Iron's Motion to Exclude (ECF 784), p. 20 (boldface and capitalization in original)), so its position on this issue is not opaque. This issue–preposterous or not–can only be

resolved on summary judgment or trial. Again, the focus now is not on the parties substantive arguments concerning policy limits, but whether Amoruso should be permitted to offer his opinions on the subject. Valley Forge argues that he is unqualified to do so because the issue of policy limits is a matter of insurance underwriting and "Amoruso is not an underwriter and has never performed the functions of rating a risk or determining the bases for calculating a premium. . . . Recognizing this fact, Defendants instead argue that Amoruso's proximity to those who actually were underwriters, along with his generalized course work in insurance, has provided him with a rudimentary knowledge of the general topic of underwriting, and that is not enough to qualify him as an expert." *Id.*, pp. 6-7. Valley Forge contends that "[t]he entirety of Defendants' preposterous $300 million limits argument is premised on Amoruso's purported analysis of underwriting matters, specifically how the risk was rated for the 1975-1978 policy and the calculation of the policy premium associated with that risk. . . . Whether the Court entertains Defendants' argument, Amoruso's lack of underwriting experience generally, and specifically his lack of risk rating and premium evaluation knowledge and experience, renders his proffered opinions on those topics . . . inadmissible under Rule 702/*Daubert*." *Id.*, p. 7.

Hartford Iron responds by arguing that Valley Forge "misrepresents to the Court that Mr. Amoruso has 'no underwriting experience or training,' . . . 'zero underwriting experience and training,' . . . and 'is not otherwise a student of underwriting[.]" Response in Opposition, p. 13 (internal cites to Amoruso deposition omitted). Hartford Iron insists that "Mr. Amoruso <u>taught</u> the CPCU class on 'Underwriting an Insurance Policy,' as well as several other classes 'just for underwriters.' . . . In his professional employment, he 'wrote underwriting processes and procedure manuals' and 'was responsible for underwriting operations.'" *Id.* (underlining in

original). Hartford Iron also claims that Amoruso "'set up and administered underwriting operations[,]' . . . has frequently rendered expert opinions on underwriting, . . . [and] has years of experience personally handling and supervising thousands of environmental pollutant claims[.]" *Id*. The argument over Amoruso's professional qualifications then devolves further when Valley Forge contends that even though Amoruso holds a designation as a CPCU, it doesn't amount to much because Hartford Iron "mischaracterize[s] what, exactly, CPCU course work provides. It does not entail intensive study or analysis of risk rating, premium bases, premium calculations, or other underwriting-focused curricula; rather, it provides 'broad-based knowledge in risk management and insurance,' according to the American Institute for Chartered Property Casualty Underwriters (AICPCU), the professional association for CPCUs. . . . The course work provides a general, foundational understanding of a wide range of insurance-industry issues. Simply having the CPCU designation, which is not a license of any kind, does not in and of itself qualify Amoruso, to render reliable expert opinions on the specific underwriting issues that comprise the $300 million theory concocted by Defendants' counsel." Reply in Support, pp. 8-9. Valley Forge also attacks Amoruso's reports and opinions on the basis that he is simply parroting conclusions and theories created by Hartford Iron's counsel. *Id*., p. 15 (Amoruso is "merely backfilling the analysis that he never performed before he adopted the conclusions of Defendants' counsel and presented them as his own in his initial report. Under Defendants' concocted $300 million argument . . . Amoruso opined first and analyzed second.").[1]

---

[1] Hartford Iron takes offense to Valley Forge's assertion that Amoruso's opinions are merely summations of Hartford Iron's attorneys' theories or legal conclusions, but uses this same "parroting" argument to challenge the opinions of Valley Forge's experts. In its brief in support of its own *Daubert* motion, Hartford Iron argues that Valley Forge's environmental expert, Robert Karls' "opinions suffer from pervasive reliance on facts summarized by litigation

Valley Forge's arguments suffer from the same flaw that Hartford Iron's do (as explained below), which is that they go to the weight to be given to Amoruso's opinions rather than their admissibility. The parties' arguments attacking the other side's experts are full of bluster, especially concerning the fiercely contested issue of policy limits, but in the end they are not persuasive, primarily because, as explained above, the Court is the trier of fact (and credibility) in this case, so "the usual concerns of the [Rule 702]–keeping unreliable expert testimony from the jury–are not present.'" *Equal Employment Opportunity Comm'n v. Amsted Rail Co.*, 2018 WL 587345, at *3 (S.D. Ill. Jan. 29, 2018) (quoting *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 760 (7th Cir. 2010)). "[W]here the factfinder and the gatekeeper are the same, the court does not err in admitting the evidence subject to the ability later to exclude it or disregard it if it turns out not to meet the standard of reliability established by Rule 702." *Id.* (quoting *In re Salem*, 465 F.3d 767, 777 (7th Cir. 2006)). Valley Forge's attacks on Amoruso's opinions (or his methodology or qualifications as to a specific subject) are certainly fodder for cross-examination, but they do not warrant pretrial preclusion of those opinions.

### II. Hartford Iron's motion to exclude experts under *Daubert*.

Hartford Iron's motion challenges the admissibility of proposed expert testimony and reports from Valley Forge's designated experts Robert Karls, Bernd G. Heinze, James A.

---

counsel[.]" Brief in Support of Motion to Exclude (ECF 782), p. 17. Hartford Iron also argues that the reports prepared by Valley Forge legal expert Bernd Heinze "are essentially supplemental legal briefs." *Id.*, p. 21. Hartford Iron argues that "[e]xperts who rely on facts as summarized by litigation lawyers fail to use reliable methods under *Daubert*[]" and moves the Court to exclude those opinions for that reason. This challenge didn't work for Valley Forge and it is equally unconvincing when advocated by Hartford Iron. That said, there are several statements, conclusions or opinions in Heinze's reports that are inadmissible for other reasons discussed below.

Robertson, and John Goldwater.[2] Hartford Iron raises a host of objections to the reports and

opinions of the four experts, moving the Court "to exclude [Valley Forge's] expert reports in

their entirety or, alternatively, exclude opinions . . . on a series of specific matters that comprise

almost all of the reports[.]" Motion to Exclude Experts, p. 1. The specific matters Hartford Iron

refers to include, not surprisingly, any testimony or opinion as to "[t]he amount of [Valley

Forge's] policy limits, which largely or entirely turns on whether an 'aggregate' limit applies to

coverage for the period Sept. 1976-Oct. 1978." *Id*. In other words, Hartford Iron wants the Court

to preclude Valley Forge's experts from testifying or offering opinions on the policy limits issue

(since they conflict or rebut Amoruso's conclusions and opinions). Hartford Iron argues that the

---

[2] Karls is an environmental consultant retained by Valley Forge "to provide expert testimony related to the Hartford Iron scrap yard . . . with respect to the following topics: 1. Site access allowed to contractors; 2. The terms and conditions of payment offered by Valley Forge; 3. A review of the actions taken at the site related to storm water management; 4. The remediation that is likely to be required at the Site; and 5. Future monitoring that is likely to be required at the Site." Expert Report of Robert Karls, Oct. 2, 2017 (ECF 782-35), p. 5. Bernd Heinze is an attorney retained by Valley Forge "to offer an opinion as to whether the various asserted breaches of the First and Second Settlement Agreements . . . by VFIC that had been negotiated in good faith with Alan B. Goldberg [and Hartford Iron] violated the generally accepted customs, usages and practices of the insurance industry or Valley Forge's own internal policies and procedures and, thereby, amounted to bad faith." Expert Report of Bernd Heinze, Oct. 2, 2017 (ECF 782-30), p. 2. James Robertson is "a consultant specializing in risk management, underwriting and matters related to customs and practices in the property-casualty insurance industry" who was retained by Valley Forge "to provide a rebuttal to certain opinions expressed in the October 2, 2017 Expert Report of Paul F. Amoruso, ('the Amoruso Report'). Expert Report of James Robertson, Nov. 6, 2017 (ECF 782-31), p. 2. John Goldwater is "a Managing Director at Alan Gray, LLC, a well-established claims and audit advisory firm[,]" (Response in Opposition (ECF 784), p. 10), who was retained by Valley Forge "to provide opinions on behalf of VFIC as to the amounts paid by VFIC in connection with the Confidential Settlement Agreement and Limited Release, dated April 17, 2009, and the Second Confidential Settlement Agreement dated December 4, 2012 (collectively, the "Agreements"), relating to defense counsel costs, investigation and remediation costs; and 2) provide an allocation of applicable costs and expenses to the VFIC policies and report on the impacts and remaining limits of the policies." Expert Report of John Goldwater, Oct. 2, 2017 (ECF 782-33), p. 3.

challenged experts' reports and opinions should be deemed inadmissible as to a host of topics for the general reason that they fail to meet the *Daubert* threshold for reliability. *See* Brief in Support (ECF 782), pp. 9-21).

### A. Heinze and Robertson.

Given that the Court has concluded that the challenged expert testimony for the most part will not be excluded, it is not necessary to address each of Hartford Iron's objections individually. Some examples will illustrate why those objections go to weight rather than admissibility (and in some instances raise issues of bias or credibility). Hartford Iron objects to "[o]pinions by Attorney Heinze and Robertson regarding aggregate limits" issue. *Id.*, p. 9. In an effort to show that Heinze's and Robertson's conclusions and opinions on that issue are unreliable and they "have little to say" about it (*id.*, p. 10), Hartford Iron launches into its own argument as to the merits of that issue (*id.*, pp. 9-14). After a lengthy and detailed recitation of its argument regarding the aggregate versus non-aggregate issue, Hartford Iron contends that Heinze's and Robertson's testimony and opinions on this issue are flat-out wrong because their calculations are based on a faulty premise. Accordingly, says Hartford Iron, the "three rebuttal reports from Heinze and Robertson have nothing relevant or reliable to say on this issue, and they are properly excluded under *Daubert*." *Id.*, p. 14. But as the Court has pointed out, "[t]he question of whether the expert is credible or whether his or her theories are correct given the circumstances of a particular case is a factual one that is left for the [trier of fact] to determine after opposing counsel has been provided the opportunity to cross-examine the expert regarding his conclusions and the facts on which they are based." *Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000). If Heinze and Robertson based their conclusions or opinions about the policy

limits issue on an facially faulty premise as Hartford Iron insists, their conclusions should be challenged through cross-examination so the Court can hear their explanations and determine how much weight, if any, to afford their testimony. On this issue, the Court will deny Hartford Iron's motion to preclude Heinze or Robertson from testifying as to the issue of the calculation of applicable policy limits.

Hartford Iron also objects to Heinze's reports on the basis that they "are essentially supplemental legal briefs[.]" Brief in Support, p. 21. Hartford Iron insists that "Heinze returns to legal argument, complete with citation of case law, statutes, and decisions in this case, across almost every section of his reports." *Id.*, p. 23. Hartford Iron complains that there is a "biased legal advocacy that runs throughout Heinze's reports. His statements vary from legal advocacy to plain cheerleading to <u>de facto</u> judging." *Id.*, p. 24. Indeed, as Hartford Iron points out, Heinze's reports include several statements supportive of Valley Forge, including the following:

1) "'The record further substantiates that [Valley Forge] accommodated Hartford Inc. at every opportunity[.]'";

2) "'[Valley Forge] acted reasonably and utilized best efforts . . . notwithstanding . . . the often needlessly contentious and adversarial demands and responses being received from Hartford Inc.'s attorneys[.]'";

3) "'It is almost as though Hartford Inc. and Goldberg and Attorney Shere had adopted from the outset a recalcitrant and obstreperous intent.'"; and

4) "'[Valley Forge] acted prudently, properly and in good faith.'"

*Id.* (quoting from Heinze Reports (ECF 782-29 and 782-30)). It is also true that Heinze's reports contain citations to case law and statutes and, to a lesser extent, could be said to present legal argument. But Hartford Iron's arguments to exclude Heinze's reports ignore the fact that he was retained by Valley Forge for the express purpose of offering "an opinion as to whether the

various asserted breaches of the First and Second Settlement Agreements . . . by VFIC . . . violated the generally accepted customs, usages and practices of the insurance industry or Valley Forge's own internal policies and procedures and, thereby, amounted to bad faith." Expert Report of Bernd Heinze, Oct. 2, 2017 (ECF 782-30), p. 2. As such, and because Heinze is an attorney with expertise in insurance law, it stands to reason that the opinion would incorporate case law and legal analysis related to the issue of whether Valley Forge acted in bad faith in its capacity as Hartford Iron's insurer. It is another thing, however, for Heinze to offer a legal *conclusion* on the ultimate issue of bad faith.

Valley Forge argues that Heinze's statements and conclusions "are clearly based on [his] evaluation of the factual record in light of his knowledge of and experience with the customs, practices, and standards in the insurance industry." Response in Opposition (ECF 784), p. 18. Valley Forge insists that "Defendants do not explain why . . . Heinze's evaluation of the factual record pursuant to industry custom and practice constitutes inadmissible testimony when he opined that Valley Forge 'had legitimate bases upon which to review invoices or payments submitted and to audit legal bills submitted for the defense of Hartford Inc. in the ordinary course of the underlying remediation efforts to ensure the work performed and the related amounts were both reasonable and necessary.'" *Id*., p. 19 (quoting Heinze Report (ECF 782-30). Valley Forge insists that Hartford Iron has "no legitimate legal basis to seek preclusion of these and the other opinions by Heinze, so they have instead cherry-picked a handful of purported examples of ancillary statements in Heinze's reports that Defendants purport constitute legal argument." *Id*. The Court is about to do some cherry picking of its own, since some of Heinze's conclusions and opinions will be excluded (although not for any reason argued by Hartford Iron).

Neither Hartford Iron nor Valley Forge cites any helpful authority in support of their position. In fact, they present very little case law at all and certainly nothing on point, although there is plenty of it out there. What the case law establishes is that Heinze is qualified to testify as an expert as to matters such as the "customs, practices, and standards in the insurance industry" and whether Valley Forge followed those customs and practices in its capacity as insurer of the Hartford Iron site, just as Valley Forge insists. But he is precluded from offering any opinion or stating any conclusion about the ultimate issue of whether Valley Forge acted in bad faith. He is further precluded from testifying or offering an opinion as to the subjective intent or motivation of other people or entities (including, of course, Hartford Iron, its agents, employees or counsel). These are matters for the Court to determine and Heinze's proffered expert testimony on those subjects is not needed.

It is well established that "experts are generally permitted to testify to the relevant standards of care in a particular industry." *Superior Aluminum Alloys, LLC v. United States Fire Insurance Company*, 2007 WL 1850858, * 10 (N.D. Ind. June 25, 2007) (citing *Pless v. Cleveland Wrecking Co.*, 2006 WL 2690074, *3 (W.D.N.Y. Sept. 18, 2006) ("An expert may testify concerning the ordinary practices within an industry so as to enable the [fact finder] to evaluate a defendant's conduct against the standards of accepted practice.")); *see also Foundation Health Servs., Inc. v. Zurich Am. Ins. Co.*, 2016 WL 1449678, at *2 (M.D. La. Apr. 13, 2016) (denying insurer's motion to preclude plaintiffs' expert's opinion as to the customs and practices of the insurance industry because they would be "helpful to the finder of fact in making its bad faith determination."); *Reach Music Pub., Inc. v. Warner Chappell Music, Inc.*, 988 F.Supp.2d 395, 403 (S.D.N.Y. 2013) ("It is of course common for testimony regarding the

'customs and practices' in a particular industry to be the subject of expert testimony."). But testimony or opinions about the ultimate issue of bad faith crosses the line. *See Rivera v. Allstate Ins. Co.*, 2016 WL 1055580, *1 (N.D. Ill. 2016) ("Federal Rules of Evidence 702 and 704 prohibit experts from offering opinions as to legal issues that will determine the outcome of a case."); *see also, United States Sec. & Exch. Comm'n v. ITT Educ. Servs., Inc.*, 311 F.Supp.3d 977, 985-86 (S.D. Ind. 2018) (quoting *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 218 (3d Cir. 2006) ("[T]he line between admissible and inadmissible expert testimony as to the customs and practices of a particular industry often becomes blurred when the testimony concerns a party's compliance with customs and practices that implicate legal duties")). And even though Federal Rule of Evidence 704(a)[3] has eliminated the prohibition barring expert opinions on "ultimate issues," the Court "'must nonetheless analyze whether an 'expert' opinion . . . would assist the jury and if so, whether its probative value is outweighed by its danger of unfair prejudice.'" *Padilla v. Hunter Douglas Window Coverings, Inc.*, 14 F.Supp.3d 1127, 1139 (N.D. Ill. 2014) (quoting *Dahlin v. Evangelical Child and Family Agency*, 2002 WL 31834881, at *3 (N.D.Ill. Dec.18, 2002)). The court in *Padilla* also noted that "in *Steadfast Ins.* [*Co. v. Auto Mktg. Network, Inc.*, 2004 WL 783356, at *5 (N.D. Ill. Jan. 28, 2004)], the district court held that an expert could not testify that a defendant had acted in 'bad faith,' 'with improper motive,' or with 'ill will,' for the reason that the 'experts are in no better position than the jury to assess [the defendant's] subjective intent.'" *Id*.

As a court in the Southern District explained: "Under Seventh Circuit law, a witness may

---

[3] Federal Rule of Evidence 704(a) states that "[a]n opinion is not objectionable because it embraces an ultimate issue."

not offer 'opinions about legal issues that will determine the outcome of a case. That is, they cannot testify about legal issues on which the judge will instruct the jury.'" *Mohler v. Standard Ins. Co.*, 2007 WL 7648472, at *2 (S.D. Ind. Jan. 26, 2007) (quoting *Bartlett v. State Farm Mut. Auto. Ins*., 2002 WL 31741473, at *4 (S.D.Ind. Nov.27, 2002)). "In *Bartlett*, a case involving a claim for bad faith denial of insurance coverage, this court granted the defendant insurer's motion to strike the affidavit of plaintiff's good faith expert because the expert's opinion 'as to what constitutes evidence of bad faith under Indiana law' overstepped the permissible bounds of the material to which an expert may testify." *Id*. In *Steadfast*, the district court noted that expert testimony as to ultimate issues like bad faith can invade the province of the fact-finder. *Steadfast Ins.*, 2004 WL 783356, at *5 (citing *Dahlin*, 2002 WL 31834881, at *3) (rejecting testimony by expert that actions constituted fraud because it "is a quintessential jury determination on which the Court will instruct a jury concerning the factors it is to consider."). In *Gallatin Fuels, Inc. v. Westchester Fire Ins. Co.*, 410 F.Supp.2d 417 (W.D. Pa. 2006), the district court, citing *Steadfast*, held as follows:

> [An expert] may not testify as to what he believes another individual "thought," "believed," or "felt." An expert simply is not in any better position than the jury to assess another's subjective intent. *See, e.g., Steadfast Ins. Co. v. Auto Mktg. Network, Inc*., 2004 WL 783356, at *6 (N.D.Ill. Jan. 28, 2004). In short, while Hoffman's testimony with respect to issues such as insurance claims adjusting procedure, Westchester's compliance with industry customs and standards, and whether Westchester lacked a reasonable basis for denying Gallatin's claim may be relevant, testimony that Westchester actually acted in bad faith or testimony regarding Westchester's subjective intent is not helpful to the fact-finder and may not be presented at trial.

*Gallatin Fuels, Inc.*, 410 F.Supp.2d at 423. Finally, in *Scottsdale Ins. Co. v. City of Waukegan*, 689 F.Supp.2d 1018 (N.D. Ill. 2010), the court explained as follows:

The district court must limit expert testimony so as not to allow experts to opine on "what the law required" or "testify as to the governing law," which Brayer does in each of these opinions by concluding as to the scope of policies under the law and Westport's duties and defenses under the law. *See, e.g., Holman Enters. v. Fidelity & Guar. Ins. Co.*, 563 F.Supp.2d 467, 472 (D.N.J. 2008). Like in *Holman*, where the court held that an expert's opinion that the insurer did not act in bad faith was "an obvious conclusion of law inappropriate for an expert report," Brayer's opinion that Westport acted in a 'vexatious and unreasonable manner' is particularly inappropriate. *Id*. Thus, the Court strikes these five legal conclusions from Brayer's report, and bars his testimony pertaining to them.

*Scottsdale Ins.*, 689 F.Supp.2d at1024.

Based on the preceding legal authority,[4] this Court concludes that Heinze will be permitted to testify as to matters involving the "customs, practices, and standards in the insurance industry" and whether Valley Forge followed those customs and practices, as well as its own internal policies, with respect to the way it handled Hartford Iron's claims and coverage. However, Heinze is precluded from presenting any conclusions or opinions as to the ultimate issue of whether Valley Forge acted in bad faith. Heinze is also precluded from testifying or opining as to any other person's or entity's intent or motivation.[5]

### B. Goldwater.

Hartford Iron also objects to the report prepared by Goldwater, in which he presents an accounting that purportedly "identif[ies] charges paid by [Valley Forge] 'in connection with the

---

[4] Notwithstanding that this case will be tried to the bench and most of the quoted cases refer to cases tried to a jury, the reasoning and holdings are applicable and inform this Court's rulings.

[5] Hartford Iron's complaints that Heinze's reports read like "supplemental legal briefs," and that they contain legal arguments and conclusions, have some merit. But that doesn't warrant excluding them altogether, as Hartford Iron urges, and striking specific passages here and there throughout the reports would be fruitless. The Court will make the only legal conclusions that will matter in this case and, while intending no disrespect, does not need Mr. Heinze's expert assistance to do so.

settlement agreements' between the parties." Brief in Support, pp. 14-15. In other words, Goldwater's accounting purports to itemize the amounts Valley Forge has paid in relation to its calculation of its policy limits. Hartford Iron argues that Goldwater's accounting report states that Valley Forge paid a specific amount "'in connection with the Agreements.' . . . Goldwater explains this 'in connection with' standard in a single sentence of his initial report, where he states: 'All Fees and Disbursements paid to environmental contractors were categorized as 'indemnity' against policy limits.'" *Id.*, p. 15 (quoting from Goldwater Reports (ECF 782-33 and 782-34) (underlining in original). Hartford Iron insists that "Goldwater's self-created 'in connection with' standard would include anything and everything[,]" and "is not a valid basis for expert opinion." *Id.* This renders Goldwater's report and proposed testimony "meaningless and biased." *Id.* It should be obvious that these challenges are fodder for cross-examination rather than a basis for exclusion of evidence. Again, if Hartford Iron's attacks have teeth, then Goldwater has some 'splainin' to do  on cross-examination (as do all the experts on both sides). But trial, not a pretrial evidentiary screening, is the only forum suited to resolving Hartford Iron's objections and assessing the weight to be given Goldwater's conclusions or opinions.

### C. Karls.

Hartford Iron also challenges Valley Forge environmental expert Robert Karls, contending that it has "pervasive defects . . . [t]he most conspicuous of [which] is Karls' reliance on 'facts' as stated in correspondence and other documents by Insurer's own lawyers while this litigation has been pending." *Id.* p. 17 (i.e., the "parroting" argument the Court discussed–and rejected–*infra*). Hartford Iron also objects to Karls' reports on the basis that they "create[] unreliable and unhelpful opinions by conflating different people and entities into what he calls

the 'Goldberg-Hartford parties or their attorneys.'" *Id*., p. 20. By referring to different entities using the collective pronoun "Goldberg-Hartford parties," according to Hartford Iron, Karls causes confusion because he "blurs whom he is talking about. This is unreliable partisan advocacy, not expert analysis, and his report must properly be excluded." *Id*., p. 21. Simply put, Hartford Iron argues that Karls' report should be excluded because it confuses (allegedly intentionally) the facts about who did what with regard to environmental and remediation matters. Once again, such challenges should be raised on cross-examination at trial and do not support a pretrial ruling to exclude Karls' testimony altogether.

In the end, Hartford Iron's arguments do not present any basis at this juncture for excluding any of the challenged expert reports or opinions proffered by Valley Forge (excepting of course the portions of Heinze's reports and opinions discussed above), since the challenges go to the weight to be accorded those opinions, and even to credibility and bias issues (i.e., Hartford Iron's objections that Heinze's reports are full of "biased legal advocacy" and Goldwater's report is "meaningless and biased"). These are challenges that can only be proven through cross-examination and presentation of contrary evidence. It would be absurd for the Court to exclude testimony on the grounds that it is biased only because the party seeking to exclude it says it is.

The Court is confident that it will not be misled, let alone hoodwinked, by biased opinions or opinions by experts the Court concludes, after presentation of the evidence and cross-examination, are not credible or reliable in whole or in part. The Court's duty is parse through the expert reports in great detail, to consider all relevant expert testimony and glean whatever relevant expert evidence they provide on the issues within their areas of expertise, and ignore the rest. An exhaustive, line-by-line analysis of each expert report would be pointless, especially

when there is no jury that needs to be protected from improper evidence.

### III. Alan B. Goldberg's Motion to Exclude Experts.

In his motion, Goldberg asserts that he "files this motion because he is not properly the subject of any 'expert' opinions at all. Goldberg is referenced exactly three times in the allegations in [Valley Forge's] Second Amended Complaint." Goldberg Motion to Exclude (ECF 781), p. 1. Goldberg's position is that the Second Amended Complaint states no claim against him at all and he "anticipates filing motions for judgment on the pleadings and/or for summary judgment regarding these cursory allegations, which certainly do not assert any legal failure on his part." *Id*. Based on the premise that the complaint states no claim against him, "Goldberg asks the Court to exclude all 'expert' opinions offered by [Valley Forge] to the extent they purport to support claims against him individually[.] Any such claims lie far outside the very limited allegations involving him under the pleadings." *Id*., p. 2. Goldberg does not identify which experts he is challenging. Rather, he makes the blanket request that the Court refuse to allow *any* expert to testify about any fact or opinion that supports any claim against him individually, based on his conclusory assertion that he is not a proper defendant. Not surprisingly, Goldberg cites no authority in support of this argument.

Valley Forge responded to Goldberg's motion by asserting that his "contention is factually incorrect, but the pertinent question here is, what is the legal basis for his motion? Goldberg does not cite any rule, case law, or any other authority that supports his contention that he is somehow immune from expert testimony despite being a named defendant and counter-plaintiff in this case." Response in Opposition (ECF 785), p. 1. Goldberg bases his motion on his contention that he is entitled to judgment as a matter of law because Valley Forge has failed to

plead any viable claim against him, and that he plans to establish this in a future dispositive motion. When he files that motion the Court will entertain it, but there is no valid basis now for excluding unspecified expert testimony about matters involving Mr. Goldberg simply because he insists that Valley Forge has failed to state a claim against him. Accordingly, his motion is denied.

## CONCLUSION

For the reasons set forth above, Valley Forge's Motion to Exclude Certain Testimony of Paul F. Amoruso (ECF 778) is **GRANTED in part and DENIED in part**; Hartford Iron's Motion to Exclude Experts under *Daubert* (ECF 780) is **GRANTED in part and DENIED in part**; and Goldberg's Motion to Exclude Experts under *Daubert* (ECF 781) is **DENIED**.

Date: September 5, 2018.

   /s/   William C. Lee   
William C. Lee, Judge
U.S. District Court
Northern District of Indiana