# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

VALLEY FORGE INSURANCE COMPANY,  )
       )
    Plaintiff/Counter-Defendant,  )
       )
v.    )    Case No. 1:14-CV-6
       )
HARTFORD IRON & METAL, INC., and  )
ALAN B. GOLDBERG, d/b/a Hartford Iron &  )
Metal,  )
       )
    Defendants/Counter-Plaintiffs.  )

## OPINION AND ORDER

This matter is before the Court for resolution of several pending motions. The motions,

responses, and replies filed by the parties and considered by the Court include the following:

1) A motion for partial summary judgment or, in the alternative, for judgment on the pleadings

filed by Defendant Alan Goldberg (ECF 796), to which Plaintiff Valley Forge filed a brief in

opposition (ECF 817) and Goldberg filed a reply (ECF 820).[1] For the reasons explained below,

this motion is **DENIED**.

2) A motion for partial summary judgment filed by Defendant Hartford Iron & Metal (ECF 797),

to which Valley Forge filed a response in opposition (ECF 813) and Hartford Iron filed a reply

(ECF 822). For the reasons explained below, this motion is **DENIED**.

3) A motion for partial summary judgment filed by Valley Forge (ECF 801), to which Hartford

Iron filed a response in opposition (ECF 810), Goldberg filed a response in opposition (ECF

---

[1] In addition to the arguments presented in the briefs, the Court reviewed the voluminous amount of evidence submitted by the parties in support of their motions or in opposition to the other side's motions. This evidence included over 5,500 pages of documents, photographs, affidavits, and declarations.

812)[2], and Valley Forge filed a reply (ECF 819). For the reasons explained below, the motion is **GRANTED in part and DENIED AS MOOT in part**.

4) A motion to exclude evidence filed by Hartford Iron (ECF 825), to which Valley Forge filed a response in opposition (ECF 836) and Hartford Iron filed a reply (ECF 840). For the reasons explained below, the motion is **DENIED AS MOOT**.

5) A motion to exclude evidence filed by Valley Forge (ECF 837), to which Hartford Iron filed a response in opposition (ECF 841) and Valley Forge filed a reply (ECF 842). For the reasons explained below, the motion is **DENIED AS MOOT**.

## STANDARD OF REVIEW

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *See id.* at 255. However, neither the "mere existence of some alleged factual dispute between the parties," *id.* at 247, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986),

---

[2] Goldberg states in this separate response that he "joins fully in the response brief and Appendix filed . . . by Hartford Iron & Metal, Inc.[,]" and so the factual recitations and arguments presented in Hartford Iron's briefs and supporting evidence pertain to, and are submitted on behalf of, both the incorporated business and Goldberg individually.

will defeat a motion for summary judgment. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000).

Summary judgment is not a substitute for a trial on the merits nor is it a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. *See Shields Enterprises, Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992); *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1330 (7th Cir. 1989). However, if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. *See Celotex*, 477 U.S. at 322; *Ziliak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003). "[Speculation and conjecture" also cannot defeat a motion for summary judgment. *Cooney v. Casady*, 735 F.3d 514, 519 (7th Cir. 2013). In addition, not all factual disputes will preclude the entry of summary judgment, only those that "could affect the outcome of the suit under governing law." *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (citation omitted).

As the Seventh Circuit has explained many times and reiterated recently, a district court's task on summary judgment is as follows:

> The following common refrains in summary judgment cases are important to recall in a case with so many factual recitations:
>
> On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder. Rather, the court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial. Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. We must look

therefore at the evidence as a jury might, construing the record in the light most favorable to the nonmovant and avoiding the temptation to decide which party's version of the facts is more likely true. As we have said many times, summary judgment cannot be used to resolve swearing contests between litigants.

*Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (quoting *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003)). The case at bar will be tried to the bench. "Rule 56 makes no explicit distinction between jury and bench trials. However, the rule is designed as a pretrial mechanism for 'asses[ing] the proof in order to see whether there is a genuine need for trial,' and whether there is such a need may depend on whether trial would be to the court or to a jury." *Stewart Title Guar. Co. v. Residential Title Servs., Inc.*, 607 F.Supp.2d 959, 961-62 (E.D. Wis. 2009) (citing William Schwarzer, Alan Hirsch & David Barrans, The Analysis & Decision of Summary Judgment Motions, 139 F.R.D. 441, 474 (1991) (in turn quoting Fed.R.Civ.P. 56(e) advisory committee's notes (amended 1963)). When evidentiary facts are in dispute, when the credibility of witnesses may be in issue or when conflicting evidence must be weighed, a full trial is necessary regardless of whether it is a bench or a jury trial. *Id*. "[T]he appropriate time for the Court to weigh the evidence and reach factual conclusions is at trial." *Thornton v. Hamilton Sundstrand Corp.*, 121 F.Supp.3d 819, 826-27 (N.D. Ill. 2014), aff'd sub nom. *Thornton v. M7 Aerospace LP*, 796 F.3d 757 (7th Cir. 2015) (citing *Casey v. Uddeholm Corp.*, 32 F.3d 1094, 1099 (7th Cir.1994) ("[T]he appropriate proceedings for such fact-finding is a bench trial and not the disposition of a summary judgment motion.")).

## DISCUSSION

Valley Forge Insurance Company filed this lawsuit alleging that Hartford Iron & Metal

and its owner, Alan Goldberg[3], breached a contract between the parties that was intended to resolve all disputes and claims between them. Those disputes and claims all arise from the environmental remediation of Hartford Iron's property, on which the company operates a scrap metal recycling business. Hartford Iron entered into an Agreed Order with the Indiana Department of Environmental Management in 2009 that mandated that Hartford Iron remediate pollution at its site, including remediation of PCB contamination and other pollutants that accumulated on the property over the course of decades of industrial use. Valley Forge, as Hartford Iron's insurer, agreed to pay for the remediation. The parties entered into their first Settlement Agreement on April 17, 2009, which set forth the parties' rights and obligations with respect to the remediation process intended to comply with the IDEM Agreed Order. Unfortunately, numerous disputes arose and the parties accused each other of breaching the 2009 Settlement Agreement. On December 4, 2012, the parties entered into a second Settlement Agreement, which again purported to resolve all disputes and claims between them at the time. Importantly, the 2012 Agreement came on the heels of state court litigation between these same parties, in which they litigated the issue of coverage, i.e., whether Valley Forge had to pony up to pay for the remediation pursuant to insurance policies issued to Goldberg and Hartford Iron over the years.[4] The 2012 Agreement, by its express terms, incorporated and supplemented the 2009 Agreement. Accordingly, the 2009 and 2012 Settlement Agreements together form the contract

_____

[3] Goldberg states that he is "the majority shareholder of Hartford Iron." Goldberg Response (ECF 812), p. 1.

[4] That state court case was litigated in the Blackford County Circuit Court and was captioned *Hartford Iron & Metal, Inc., and Alan Goldberg v. Valley Forge Insurance Company, et al.*, Case No. 05C01-1110-MI00322. *See* footnote 6, below.

that is at issue now, and which each side accuses the other of breaching. In short, this is a breach

of contract case; it is not an insurance coverage case. The Court concludes that the issues in this

case require a trial (actually, two trials–one on the issue of which side breached the Settlement

Agreements and a second on the damages to be awarded to the non-breaching party or parties).

Valley Forge, in its original Complaint (ECF 1) and its first Amended Complaint (ECF

6), stated claims for breach of contract and "claims" for declaratory judgment under the

Declaratory Judgment Act, 28 U.S.C. § 2201. As this Court stated several years ago when ruling

on a motion to dismiss Valley Forge's first Amended Complaint filed by Hartford Iron and

Goldberg:

> Valley Forge says Hartford Iron incorrectly describes Counts 1, 2, and 4 as breach
> of contract claims. Those claims, Valley Forge argues, seek declaratory
> judgments. *The distinction is irrelevant: the counts seek a declaratory judgment
> that Hartford Iron breached the contract*.[] A declaratory judgment that Hartford
> Iron breached the Settlement Agreement is only appropriate if Hartford Iron
> breached the contract.
> . . .
>
> Valley Forge claims Hartford Iron breached the contract when it "fail[ed] to
> cooperate with Valley Forge and August Mack,"[5] "lock[ed] August Mack out of
> the Site and threaten[ed] to withhold access in the future," "generally attempt[ed]
> to control the defense and remediation of the Site," and "insist[ed] on the ongoing
> reimbursement of invoices for work performed by Mr. Shere."

Opinion and Order denying motion to dismiss (ECF 28), p. 8 and n. 2 (italics added). Judge

Miller, who was presiding over the case at that time, went on to explain that:

> To the extent, if any, Hartford Iron's arguments also challenge the corresponding
> declaratory judgment claims, the claims are equally plausible. A declaratory
> judgment allows a party that isn't certain of its rights to seek adjudication and
> avoid the accrual of damages rather than waiting for the damage to accrue.

---

[5] August Mack Environmental was the company hired by Valley Forge pursuant to the
2012 Settlement Agreement to conduct remediation work at the site.

> *NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 577
> (7th Cir. 1994). Declaratory relief is warranted if there is an actual, substantial
> controversy between parties with adverse legal interests and the controversy is
> sufficiently immediate and real. *Id*. Construing the facts in Valley Forge's favor,
> numerous disputes between the parties over the execution of the Settlement
> Agreement are immediate, real, and likely to continue.

*Id*., pp. 18-19. The controlling Complaint now is Valley Forge's Second Amended Complaint,

filed on April 22, 2015 (ECF 74). The Second Amended Complaint, while presenting additional

factual assertions and allegations of continuing breaches by Hartford Iron and Goldberg, does not

change the claims presented or add new ones. This case is and always has been a breach of

contract case, just as this Court observed in an order entered by Judge Miller on January 4, 2017

(ECF 609, p. 9, n. 1) (more on this order later). As such, Hartford Iron and Goldberg cannot

maintain their counterclaim alleging a tort claim for bad faith insurance practices, and their

argument that the policies issued to them over the years by Valley Forge provide for nearly $300

million in coverage is moot. This does not mean that Hartford Iron and Goldberg have no

counterclaim at all: their assertions and allegations state a counterclaim for beach of contract,

which is even Valley Forge's position. *See* Valley Forge Brief in Support of Motion for Partial

Summary Judgment (ECF 802), p. 3 (the "parties [have] cross-claims for breach of contract[.]" ).

But no matter which side prevails on the issue of liability, the damages to be awarded to that

prevailing side will be determined according to Indiana contract law, not on any theory about the

amount of coverage available under the policies. This is because, as stated above and discussed

below, this is a breach of contract case not an insurance coverage case. In the nearly six years

since this case was filed, the parties have litigated it as if it were an insurance coverage case, and

the Court followed them down that rabbit hole. But the parties settled all claims and disputes

concerning insurance coverage when they entered into the 2009 and 2012 Settlement Agreements, the latter of which arose following an Indiana state court case in which the parties litigated the issue of whether Valley Forge had a duty to defend and indemnify Hartford Iron and Goldberg in the IDEM proceeding. The Court will explain its conclusions by addressing the motions for partial summary judgment in reverse order of their filing.

**I. Valley Forge's motion for partial summary judgment.**

Valley Forge moves for summary judgment on two issues: the dispute about the amount of coverage available under several policies issued to Goldberg or Hartford Iron, and the matter of Hartford Iron and Goldberg's counterclaim for bad faith. The two issues, while quite distinct, are both resolved based on the same reasoning: because this is a breach of contract case and not an insurance coverage case, damages will not determined based on any theory about an applicable indemnity cap under the policies; and for the same reason, the Defendants cannot maintain a counterclaim against Valley Forge for the tort of bad faith. Valley Forge's motion for partial summary judgment is moot as to the coverage issue because if Hartford Iron and Goldberg prevail on their counterclaim that Valley Forge breached the Settlement Agreements, they are entitled to damages stemming from that breach regardless of how much coverage the policies provided. Valley Forge's motion must be granted, however, on the issue of the Defendants' counterclaim for bad faith, since a bad faith insurance practices claim has no place in a breach of contract case (notwithstanding the fact that the contract at issue arose out of an insured/insurer relationship), and because Indiana does not recognize a cause of action for tortious breach of contract. *Haegert v. Univ. of Evansville*, 977 N.E.2d 924, 936 (Ind. 2012) ("Indiana does not recognize a distinct cause of action for 'tortious breach of contract.'") (quoting *Allstate Ins. Co.*

*v. Hammond*, 759 N.E.2d 1162, 1166 (Ind.Ct.App.2001)). At the same time, Valley Forge cannot

argue during a damages trial, if one occurs, that the damages to which Hartford Iron and

Goldberg would be entitled if they prevail are limited to the amount of coverage Valley Forge

says is available (about $15 million) under the terms of the insurance policies and set out in the

Settlement Agreements. If Hartford Iron and Goldberg prevail on their breach of contract

counterclaim, they would be entitled to damages in an amount necessary to complete the

environmental remediation pursuant to the terms set forth in the Settlement Agreements and the

IDEM Agreed Order, as well as any other damages they can prove arose out of Valley Forge's

breach, minus any offsets. If on the other hand Valley Forge prevails, it would be entitled to

recover whatever amount of damages it can prove it incurred as a result of Defendants' breach,

which also would not be tied to any indemnity cap in any insurance policy.

**A. The issue of the amount of coverage available under the policies, or the way any indemnity cap should be calculated, is moot.**

In its Second Amended Complaint, Valley Forge summarizes its case against Hartford

Iron and Goldberg as follows:

> Valley Forge seeks this Court's assistance in fulfilling its agreement to fund the remediation of a scrap metal recycling operation located at 209 S. Division Street, Hartford City, Indiana (the "Site") operated by Hartford Iron & Metal, Inc. ("Hartford Iron") on property owned by Alan B. Goldberg.

> 2. Valley Forge and Hartford Iron *previously litigated their respective rights and duties pursuant to insurance contracts and, ultimately, entered into the most recent settlement agreement in December 2012* ("2012 Agreement").[6]

---

[6] This is an important fact. The parties litigated the issue of coverage in the Blackford County Circuit Court in *Hartford Iron & Metal, Inc., and Alan Goldberg v. Valley Forge Insurance Co., et al.*, Case No. 05C01-1110-MI-00322, which was filed in 2011. On September 6, 2012, the Blackford Circuit Court entered an order granting Hartford Iron and Goldberg's motion for partial summary judgment and finding that "there is no genuine issue of material fact

3. In the 2012 Agreement, Valley Forge agreed to:

(A) fund the development and implementation of a remedial work plan for the Site to the satisfaction of regulators, up to the remaining limits of the insurance contracts, including the costs to implement and operate a storm water collection and treatment system that Hartford Iron and its former environmental consultant demanded;

(B) defend Hartford Iron against claims by the United States Environmental Protection Agency ("EPA") and Indiana Department of Environmental Management ("IDEM") regarding the Site, without reserving any rights to deny coverage; and

(C) pay certain fines in connection with the Site on Hartford Iron's behalf.

4. As a result of its business decision to enter into the 2012 Agreement, Valley Forge has a strong financial incentive to remediate the Site as expeditiously and cost-effectively as possible, consistent with IDEM and EPA standards.

5. To date, Valley Forge has paid millions of dollars to remediate the Site, has retained and paid for multiple defense attorneys to represent Hartford Iron, and has fully satisfied Hartford Iron's obligations to pay extensive fines.

6. In exchange for Valley Forge's significant financial commitment in the 2012 Agreement, among other things, Hartford Iron agreed as follows:

(A) Valley Forge would have exclusive control the defense of the IDEM and EPA claims;

(B) the environmental consulting firm August Mack Environmental, Inc. ("August Mack") would be responsible for carrying out the remediation of the Site, as approved by IDEM and EPA;

(C) Hartford Iron would cooperate with Valley Forge, defense counsel and August

---

as to whether Defendant Valley Forge Insurance Co. is liable to Plaintiffs for the reasonable and necessary costs incurred by Plaintiffs to contain and remediate soil and ground water contamination on the property at issue, not to exceed the policy limits set forth in the . . . 2009, Settlement Agreement." Circuit Court Order (ECF 802-4). Seven years ago the parties litigated the issue of coverage and the state court entered an order holding that Valley Forge was obligated to provide coverage for the remediation of the Hartford Iron site. The issue before this Court, then, is not one of coverage or the amount of coverage; rather, the issue in the present case is which side is liable to the other for breach of the Settlement Agreements.

Mack to obtain approval for and to implement the most cost-effective remediation work plan for the Site; and

(D) Valley Forge had a recognized interest in achieving a cost-effective remediation, which defense counsel was to represent.

7. Valley Forge anticipated that resolving the insurance coverage issues would permit the parties to move forward and achieve what should be their common goal: cost effectively remediating the Site, as envisioned in the 2012 Agreement.

8. Unfortunately, Hartford Iron has not honored its contractual duties to cooperate, and has taken steps to control, delay and hinder the remediation, despite its binding acknowledgment in the 2012 Agreement that Valley Forge has the right to control the remediation.

Second Amended Complaint (ECF 74), pp. 1-3 (italics added). Later in the Complaint,

addressing the 2012 Settlement Agreement, Valley Forge states as follows:

42. On or about October 27, 2011 Hartford Iron sued Valley Forge in a case captioned Hartford Iron & Metal, Inc. v. Valley Forge Insurance Co. et. al., No. 05C01-1110- M1-000322, in the Circuit Court of Blackford County, Indiana (the "Coverage Litigation").
. . .

45. On or about December 6, 2012 Valley Forge and Hartford Iron entered into the 2012 Agreement. A true and correct copy of the 2012 Agreement is attached hereto as Exhibit 1.

46. *Pursuant to the 2012 Agreement, Valley Forge and Hartford Iron agreed to release each other from any and all claims, counterclaims and causes of action that were or that could have been pled in, or in response to, the Coverage Litigation, as well as any and all claims for malpractice or bad faith with respect to the handling or defense of the IDEM and EPA claims described above, through the effective date of the 2012 Agreement.*

Second Amended Complaint, pp. 8-9 (italics added). In its brief in support of its motion for

partial summary judgment, Valley Forge argues as follows:

The threshold question of "how much coverage" [there is] and the issue of bad faith are subjects suitable for summary judgment. Resolution of these issues will help focus what the Court has described as an amorphous case. Once the Court

11

and the parties know "how big this breadbox is," as the Court put it, and dispose of a bad faith claim that has no place in this case, the parties' cross-claims for breach of contract can be tried.

Valley Forge Brief in Support (ECF 802), p. 3. The Court agrees with this assessment. Valley Forge insists, as it has throughout this litigation, that the Settlement Agreements expressly limit the amount of coverage available to fund the remediation and that the Company has already reached or exceeded that amount. In its brief, Valley Forge states it this way:

> A straightforward application of the [Settlement] Agreements and examination of the record establish that thee is no genuine issue of material fact that: (1) the parties agreed to a formula to calculate an "indemnity payment cap" limiting VFIC's financial obligations in connection with the Property, (2) the parties agreed that the indemnity payment cap would be depleted through payment of "Agreed Order Costs," and (3) VFIC has paid almost $14 million in Agreed Order Costs. Thus, the "how much coverage" issue can be decided as a matter of law, as the Court should rule that VFIC's indemnity payment cap is $15,251,460 and that VFIC has paid $13,919,623 in Agreed Order Costs.

*Id.*, p. 3. Valley Forge insists that the policies listed in the Settlement Agreements provide a cumulative total of just over $15 million in coverage and that it has nearly reached that indemnity cap.[7] Hartford Iron and Goldberg insist that the policies actually provide for much more coverage–about $300 million.[8] The Court concludes that both sides are mistaken. The amount of

---

[7] Valley Forge's brief was filed nearly one year ago and the Company has represented in recent hearings that it has actually paid *more* than $15 million in an attempt to comply with the Agreed Order and Settlement Agreements, having paid for work and costs incurred in the past year.

[8] Hartford Iron and Goldberg argue that certain policies issued by Valley Forge over 40 years ago provide for approximately $300 million in coverage rather than $15 million. They contend that policies issued "from September 1, 1976 to October 25, 1978" provide "sufficient [coverage] to fund remediation of contaminated soil and related tasks[.]" Hartford Iron's Summary of Issues (ECF 830), p. 7. The Defendants maintain that those early policies had no aggregate coverage limit. "The aggregate coverage limit does not apply to the 26-month policy period from September 1, 1976 to October 24, 1978[.]" Defendants' Reply in Support of Partial Summary Judgment (ECF 822), p. 5. Therefore, argue the Defendants, policy "coverage was

coverage available under the policies is irrelevant. The relevant issue is the amount of damages

to which the prevailing party will be entitled, which is not dependent upon the amount of

coverage provided under the insurance policies. The side that prevails at trial on the issue of

breach will be entitled to prove its damages regardless of how much coverage the policies

allegedly provide or how much of that alleged cap has already been exhausted. It is axiomatic

that a prevailing party in a breach of contract suit is entitled to damages in an amount that will

make that party whole. "The measure of damages in a breach of contract case is the loss actually

suffered by the breach." *Dana Companies, LLC v. Chaffee Rentals*, 1 N.E.3d 738, 748

(Ind.Ct.App. 2013) (citing *Sammons Communications of Indiana, Inc. v. Larco Cable Const*.,

691 N.E.2d 496, 498 (Ind.Ct.App. 1998)). *See also*, *Four Seasons Mfg., Inc. v. 1001 Coliseum,

LLC*, 870 N.E.2d 494, 507 (Ind.Ct.App. 2007) ("In a breach of contract case, the measure of

damages is the loss actually suffered by the breach.") (citing *Sheppard v. Stanich*, 749 N.E.2d

609, 611 (Ind.Ct.App.2001)).

  Valley Forge contends that its "indemnity obligation is capped at $15,251,460" and that

the Settlement Agreements make that clear by listing the policies under which coverage exists.

Valley Forge Brief in Support, p. 4. But the issue is not how much coverage the policies provide

or how much of that has already been depleted. As far as money goes, the issue is one of

damages for breach of contract, not one for the recovery of specific amounts allegedly available

---

$50,000 per occurrence during the 26 months from Sept. 1, 1976 to Oct. 25, 1978 . . . , which
yields hundreds of millions of dollars of potential coverage based on these thousands of
occurrences. *Id*., p. 6. According to Hartford Iron and Goldberg, "[w]ithout an applicable
aggregate limit, Insurer's coverage extends to each of the 'thousands of separate liability events'
during the Sept. 76 to Oct. 78 period. . . . The liability events during this period included twenty
to fifty loads of different types of scrap per day, six days a week." *Id*., p. 6.

under any insurance policy, whether that amount is $15 million or $300 million. The issue in this case is one of damages, not one of coverage.

Even if this case were a coverage case, the parties' arguments about how much coverage is available under which policies would still miss the point. In the case of *McGrath v. Everest Nat. Ins. Co.*, a case cited by Hartford Iron and Goldberg as supporting their argument that there is no indemnity cap (or, more precisely, that the indemnity cap is $300 million rather than $15 million), this Court explained as follows:

> Where an insurer breaches an insurance policy, recoverable damages are not defined by or restricted to the indemnity limits of the policy. *Indiana Insurance Co. v. Plummer Power Mower & Tool Rental, Inc.*, 590 N.E.2d 1085, 1090 (Ind.App. 1992). The law in Indiana is that "the policy limits restrict the amount the insurer may have to pay in the performance of the contract, not the damages that are recoverable for its breach." *See also Schroeder v. Barth, Inc.*, 969 F.2d 421, 425 (7th Cir. 1992) (citing *Plummer Power* as Indiana's law on contractual damages).
>
> Accordingly, the measure of damages in an action against an insurer for breach of its duty to defend is defined by those damages "suffered as a result of the breach which are reasonably assumed to have been within the contemplation of the parties at the time the contract was formed." *Erie*, 622 N.E.2d at 519.
>
> "Consequential damages may be awarded on a breach of contract claim when the non-breaching party's loss flows naturally and probably from the breach and was contemplated by the parties when the contract was made," a concept generally conceived of as "reasonably foreseeable economic losses." *Johnson v. Scandia Assocs., Inc.*, 717 N.E.2d 24, 31 (Ind. 1999). *See also Hasse Construction Company, Inc. v. Gary Sanitary District Board of Comm.*, 2008 WL 2169000, *7 (N.D.Ind. May 23, 2008) (stating that a party may recover in a contract action those losses suffered as a result of the breach which are reasonably assumed to have been contemplated by the parties at the time they formed the contract).

*McGrath v. Everest Nat. Ins. Co.*, 668 F.Supp.2d 1085, 1107 (N.D. Ind. 2009). Hartford Iron and Goldberg's argument, then, is correct in part: if they prevail on the issue of liability, the damages to which they would be entitled would not be determined based on any indemnity cap under the

insurance policies. Instead, damages would be the amount Hartford Iron and Goldberg are able to

prove they incurred as a result of Valley Forge's breach of the Settlement Agreements. In other

words, Indiana contract and damages law will govern the determination of damages to be

awarded to the prevailing side. Therefore, the parties' long-standing and fiercely litigated battle

over the amount of coverage available is, after it all shakes out, irrelevant.

Furthermore, this Court addressed this issue several years ago, with Judge Miller

observing as follows:

> This claim would duplicate Hartford Iron's action in contract with an action in
> tort. "[A] party may not restyle a breach-of-contract claim as a tort claim simply to
> obtain additional damages. Where the source of a party's duty to another arises
> from a contract, tort law should not interfere." *Eads Parkway, LLC v. DBL Axel,
> LLC*, 977 N.E.2d 354, 364 (Ind.Ct.App. 2012) (internal quotations omitted); *Greg
> Allen Constr. Co. v. Estelle*, 798 N.E.2d 171, 173 (Ind. 2003) ("Because a tort
> may produce more generous damages and open the door to the possibility of
> punitive damages, there is obvious incentive to seek to frame a contract breach as
> a negligence claim.").

*Valley Forge Ins. Co. v. Hartford Iron & Metal, Inc.*, 2017 WL 57808, at *6 (N.D. Ind. Jan. 4,

2017), reconsideration denied, 2017 WL 1546277 (N.D. Ind. Apr. 28, 2017). In another case, this

Court explained as follows:

> "Where an insurer breaches an insurance policy, recoverable damages are not
> defined by or restricted to the indemnity limits of the policy." *McGrath v. Everest
> Nat'l Ins. Co.*, 668 F. Supp. 2d 1085, 1107 (N.D. Ind. 2009) (citing *Ind. Ins. Co. v.
> Plummer Power Mower & Tool Rental, Inc.*, 590 N.E.2d 1085, 1090 (Ind.Ct.App.
> 1992)). Instead, "a party injured by a breach of contract may recover
> consequential damages . . . [which] may be awarded when the non-breaching
> party's loss flows naturally and probably from the breach and was contemplated
> by the parties when the contract was made." *Rockford Mut. Ins. Co. v. Pirtle*, 911
> N.E.2d 60, 67 (Ind.Ct.App. 2009) (citing *Thor Elec., Inc. v. Oberle & Assocs.,
> Inc.*, 741 N.E.2d 373, 381 (Ind.Ct.App. 2000)). "A damage award must be based
> upon some fairly defined standard, such as cost of repair, market value,
> established experience, rental value, loss of use, loss of profits, or direct inference
> from known circumstances. The damages claimed also must be the natural

> foreseeable, and proximate consequence of the breach." *Otter Creek Trading Co., Inc. v. PCM Enviro PTY, LTD*, 60 N.E.3d 217, 229 (Ind.Ct.App. 2016) (citing *Fowler v. Campbell*, 612 N.E.2d 596, 603 (Ind.Ct.App. 1993)).

*Kesic v. Am. Family Mut. Ins. Co.*, 2019 WL 2327807, at *3 (N.D. Ind. May 31, 2019). In the case of *Crown, Cork & Seal Co. v. Employers Ins. Of Wausau*, the plaintiff sued its insurance carrier in a case that "[arose] out of a settlement agreement between plaintiff and defendant ('the Agreement') which was intended to resolve all issues pertaining to insurance coverage for plaintiff's asbestos bodily injury liabilities under defendant's primary and excess insurance policies." The plaintiff argued that the Agreement should be construed against the defendant since the defendant was insurance company. The district court rejected the argument, holding as follows:

> Plaintiff argues that the [Settlement] Agreement should be construed against defendant because it is an insurer. The Agreement is not an insurance policy, however, but a contract. Moreover, it is the product of extensive negotiations between sophisticated parties equally well-versed in the subject matter.

*Crown, Cork & Seal Co. v. Employers Ins. Of Wausau*, 2001 WL 1243549, at *5, n. 4 (E.D. Pa. Oct. 17, 2001). And the Indiana Court of Appeals has explained as follows:

> "In tort, all damages directly traceable to the wrong and arising without an intervening agency are recoverable." *Erie*, 622 N.E.2d at 519. "By contrast, the measure of damages in a contract action is limited to those actually suffered as a result of the breach which are reasonably assumed to have been within the contemplation of the parties at the time the contract was formed." *Id.* . . . A plaintiff seeking damages for breach of contract is not entitled to be placed in a better position than she would have been had the breach not occurred. *Holloway v. Bob Evans Farms, Inc.*, 695 N.E.2d 991, 995 (Ind.Ct.App. 1998). The plaintiff may recover the benefit of her bargain but is limited in her recovery to the loss actually suffered, and a damage award must be referenced to some fairly defined standard. *Fowler v. Campbell*, 612 N.E.2d 596, 603 (Ind.Ct.App. 1993).

*Allstate Ins. Co. v. Hammond*, 759 N.E.2d 1162, 1166-67 (Ind.Ct.App. 2001).

In the instant case, Valley Forge and Hartford Iron already litigated the issue of coverage in the Blackford Circuit Court. Then they went a step further by entering into the second Settlement Agreement, which like the 2009 Agreement was negotiated for the purpose of settling all coverage and claims disputes between them. A couple years after the 2012 Agreement was signed, Valley Forge initiated this lawsuit, in which each side now accuses the other of breaching those Agreements. And since this is a breach of contract case, and not an insurance coverage case, both sides' arguments about the amount of coverage is moot and Valley Forge's motion for partial summary judgment on the issue must be denied for that reason.

**B. Defendants' counter-claim for bad faith is a claim for breach of contract.**

Valley Forge also moves for summary judgment on Hartford Iron and Goldberg's counterclaim for bad faith. Valley Forge argues as follows:

> In Indiana, a breach of contract claim cannot give rise to a bad faith claim unless the contract creates a "special relationship" between the parties in which there is an implied duty of good faith, as is the case with insurance policies. Here, the terms of the Agreements expressly state that the Agreements are not intended to be construed as an insurance policy and, therefore, there is no "special relationship" created by the Agreements and can be no implied duty of good faith.

Valley Forge Brief in Support, p. 3. Valley Forge also argues that even if the Settlement Agreements were interpreted to create a special relationship on which a bad faith claim might rest, such a claim is still unsustainable since "the record in this case is completely devoid of any evidence that might reasonably suggest that VFIC acted with the conscious wrongdoing and ill will necessary to prevail on a claim for bad faith under Indiana law." *Id*. This second argument, obviously, goes to the merits of a bad faith claim, which the Court need not address given that the first argument–that there can be no bad faith claim in this breach of contract case–carries the

day.

Here is how Valley Forge argues the point:

> The express terms of the [2009 and 2012] Agreements establish that the parties
> intended to preclude any application of the Agreements as giving rise to a "special
> relationship" and implying a duty of good faith. The parties expressly agreed that
> the 2009 and 2012 Agreements are not to be construed or interpreted as insurance
> policies: "This Agreement . . . is not intended nor will it be construed as an
> insurance policy"; "Nothing contained herein constitutes an admission by VFIC
> that Hartford Iron is entitled to any insurance coverage in connection with the
> Property." . . . They are settlement contracts the parties negotiated and [] drafted
> together with the assistance of their attorneys, entered into "without any admission
> of fact or liability," using language that "will not be presumptively construed in
> favor of or against any of the parties," and with terms the parties agreed were
> "fair, reasonable and equitable and in their respective best interests." The only
> reasonable interpretation of these Agreements is that the parties clearly intended
> to negate any "special relationship" that Indiana courts ascribe to insurance
> policies. Thus, the unambiguous terms of the Agreements establish that they are to
> be interpreted as typical contracts, and Indiana law does not allow for a bad faith
> claim based on breach of contract.

Plaintiff's Brief in Support, pp. 17-18 (quoting 2009 and 2012 Settlement Agreements) (citations

omitted).

In their response in opposition to Valley Forge's motion, Hartford Iron and Goldberg

argue that the issue of their bad faith claim has already been decided in a previous order issued

by this Court. Defendants' Response in Opposition (ECF 810), p. 21. The order they reference is

Judge Miller's January 4, 2017, Opinion and Order denying Hartford Iron and Goldberg's motion

to dismiss. In that order, Judge Miller wrote as follows:

> Valley Forge argues that it's not subject to the duty of good faith because Hartford
> Iron is disputing Valley Forge's performance under the Second Settlement
> Agreement rather than under the original insurance policy. *See Empire Realty
> Invs., Inc. v. U.S. Affordable Hous., LLC*, 2015 WL 2404375, at *8 (N.D. Ind.
> May 19, 2015) (a special relationship is needed to assert a bad faith claim based
> on a breach of contract). Neither party points to law addressing whether an
> agreement settling an insurance dispute should be treated as an insurance contract

that's subject to the duty of good faith.

. . .

A duty of good faith requires a "special relationship" beyond mere existence of a contract. *Erie Ins. Co. v. Hickman*, 622 N.E.2d at 518. The rationale for recognizing a "special relationship" in the insurance policy context applies equally well to recognizing a "special relationship" in a settlement agreement to an insurance dispute. An insurance agreement "is at times a traditional arms-length dealing between two parties, as in the initial purchase of a policy, but is also at times one of a fiduciary nature, and, at other times, an adversarial one, as here in the context of a first-party claim." *Id*. (internal citations omitted). In the same way, the creation of the settlement agreement was at arms length. It's fiduciary in nature because Valley Forge agreed to defend and indemnify Hartford Iron without reservation of rights. Just as with an insurance policy, that relationship can be strained by an insurer who intentionally delays payment. As this litigation has made evident, the relationship here is adversarial. The Second Settlement Agreement thus gives rise to a potential "cause of action for the tortious breach of an insurer's duty to deal with its insured in good faith."

. . .

[Fn 1:] Unlike the First Settlement Agreement, the second doesn't bargain away this obligation. The First Settlement Agreement explains that the agreement "is not intended to nor will it be construed as an insurance policy." The Second Settlement doesn't seem to so limit itself.

*Valley Forge Ins. Co. v. Hartford Iron & Metal, Inc.*, 2017 WL 57808, at *4 (N.D. Ind. Jan. 4, 2017), reconsideration denied, 2017 WL 1546277 (N.D. Ind. Apr. 28, 2017). Not surprisingly, Hartford Iron and Goldberg insist that this ends the debate and "that the Court already decided the issue." Defendants' Brief in Opposition, p. 21. The Court disagrees.

It is important to note that Judge Miller's review of the issue was under the standard of review applicable to a motion to dismiss for failure to state a claim, which of course is quite different, and certainly less onerous for a nonmovant, than the standard for a motion for summary judgment. Judge Miller concluded only that Hartford Iron and Goldberg's counterclaim for bad faith survived under a Rule 12(b)(6) review. At this juncture, however, the standard of review is

much more exacting, and the record and arguments are much more developed. Most importantly, however, the express language of the 2009 and 2012 Settlement Agreements make clear that the parties intended the two Agreements to be read and interpreted as one. Accordingly, Judge Miller's observation that the 2012 Agreement "doesn't bargain away" Valley Forge's duty of good faith because it does not include, as the 2009 Settlement Agreement does, a declaration that it "is not intended to nor will it be construed as an insurance policy[]" is contrary to the express terms and conditions contained in those Agreements, and Hartford Iron and Goldberg's reliance on that "holding" is misplaced.

The express terms of the Settlement Agreements make this clear. As Valley Forge states it, "[a]ny duties VFIC owes to Hartford Inc. arise solely from the Agreements." Plaintiff's Reply in Support of Motion for Partial Summary Judgment (ECF 819), p. 14. Valley Forge elaborates as follows:

> Contrary to Defendants' assertion, this Court has never ruled that a special relationship was created between Defendants and VFIC in the Agreements. . . . Judge Miller noted in dicta in an Opinion and Order granting and dismissing parts of VFIC's Motion to Dismiss that the 2009 Agreement bargained away any duty of good faith whereas "[t]he [2012 Agreement] doesn't seem to so limit itself." . . . Judge Miller's non-binding comments were made in connection with his analysis under Rule 12, which was limited to whether Defendants' allegations in their counterclaim, taken in a light most favorable to them, merely alleged a valid cause of action (versus the higher standard for summary judgment which requires that Defendants produce evidence supported by undisputed facts).

*Id*. Valley Forge goes on to argue as follows:

> Judge Miller correctly recognized that the 2009 Agreement bargained away any duty of good faith. . . . The 2012 Agreement expressly states that "[t]he intent of the parties is for this Second Agreement to supplement, rather than replace" the 2009 Agreement, which "the parties intend to continue to be bound by" except there terms in the Agreements conflict.

*Id.*, pp. 14-15. Valley Forge correctly states that courts must "'look at the contract as a whole to determine if a party is charge with a duty of care and . . . accept an interpretation of the contract that harmonizes all its provisions.'" *Id.*, p. 15 (quoting *Ryan v. TCI Architects/Engineers/ Contractors, Inc.*, 72 N.E.3d 908, 914 (Ind. 2017)). Once again, the Court agrees. The plain language of the Settlement Agreements controls, and that language makes clear that the parties "bargained away" their insurance coverage and claims disputes in exchange for the negotiated terms of the Settlement Agreements. A review of the relevant provisions of the two Agreements makes this clear. The First Settlement Agreement includes the following provisions:

> This Agreement is a negotiated settlement of a disputed claim and is not intended to nor will it be construed as an insurance policy construction or interpretation. Rather, it is the intent of Hartford Iron and VFIC in entering into this Agreement merely to resolve the matters expressly referenced herein. This Agreement will not be used for any purpose whatsoever to create, prove, or interpret any alleged obligations under any policies with respect to any other claims that may be asserted by Hartford Iron or any other person, corporation, governmental entity or party against VFIC.
>
> In the event that a court of competent jurisdiction determines that any provision in this Agreement or its application thereof is invalid or unenforceable this determination will not affect the remaining provisions of this Agreement, which will remain valid and enforceable to the fullest extent permitted by law[.]

First Settlement Agreement (ECF 799-4), p. 4, ¶¶ 3.5 and 3.6. The first Agreement also contains the following provisions under a section titled "Limited Release":

> Hartford Iron hereby releases VFIC and Prior Defense Counsel from any and all liabilities, damages, claims, actions, causes of action, suits, claims for malpractice or bad faith with respect to the handling or defense of the IDEM Claim from July 1, 2008, through the Effective Date of this Agreement. VFIC hereby releases Hartford Iron, including its attorneys, from any and all liabilities, damages, claims, actions, causes of action, suits, claims for malpractice or bad faith with respect to the handling or defense of the IDEM Claim through the Effective Date of this Agreement.

Hartford Iron hereby releases VFIC from claims for coverage of the IDEM Claim under the Policies, except as provided in this Agreement.

*Id*., pp. 6-7, ¶¶ 6.1(a) and (b). The Second Settlement Agreement includes the following provisions:

This Second Agreement is the result of a settlement and compromise of disputed claims and assertions between and among the Parties in the Pending Litigation [in state court], and is entered into without any admission of fact or liability with respect to those claims and assertions.

. . .

The intent of the parties is for this Second Agreement to supplement, rather than replace, the First Confidential Settlement Agreement and Limited Release (April 17, 2009). To the extent the terms of this Second Agreement conflict with the First Confidential Settlement Agreement and Limited Release, this Second Agreement controls; but in other respects the parties intend to continue to be bound by their 2009 Settlement.

Second Settlement Agreement (ECF 6-1), p. 2, ¶ I and p. 4, ¶ I. This Court, then, reviews and interprets the terms of the Settlement Agreements according to their plain language and the stated intent of the parties. That language is clear: the second Agreement was intended to "supplement, rather than replace" the first one, and the parties further expressly agreed that they "intend to continue to be bound by their 2009 Settlement." Accordingly, the waiver of claims set forth in the first Agreement is still valid and enforceable, notwithstanding the fact that the second Agreement did not repeat the phrase in the first Agreement that it "is not intended to nor will it be construed as an insurance policy[.]" That intent is explicitly stated in the first Agreement and is incorporated into the second Agreement as a result of the parties' express agreement that the second Agreement "supplement[s], rather than replace[s], the First [Agreement]."

The 2009 and 2012 Settlement Agreements were entered into by the parties after negotiations between them and their attorneys. The Agreements set forth the rights and obligations of both sides with regard to the procedure for completion of the remediation work necessary to comply with the IDEM Agreed Order. The Agreements are contracts, negotiated between sophisticated parties represented by counsel. Valley Forge filed this breach of contract lawsuit alleging that Hartford Iron and Goldberg breached those contracts, and the Defendants filed a counterclaim alleging that it was Valley Forge, not them, that is liable for breach. Accordingly, Hartford Iron and Goldberg cannot maintain a tort claim for bad faith. As the Indiana Court of Appeals has explained, "[o]ur supreme court has held, '[w]hen the parties have, by contract, arranged their respective risks of loss, . . . the tort law should not interfere.'" *Jaffri v. JPMorgan Chase Bank, N.A.*, 26 N.E.3d 635, 638 (Ind. Ct. App. 2015) (quoting *Greg Allen Const. Co. v. Estelle*, 798 N.E.2d 171, 175 (Ind. 2003)). *See also Haegert v. Univ. of Evansville*, 977 N.E.2d 924, 936 (Ind. 2012) ("Indiana does not recognize a distinct cause of action for 'tortious breach of contract.'") (quoting *Allstate Ins. Co. v. Hammond*, 759 N.E.2d 1162, 1166 (Ind.Ct.App.2001)); *Comfax Corp. v. North American Van Lines, Inc.*, 587 N.E.2d 118, 123-24 (Ind.Ct.App. 1992) (declining to recognize a new claim in Indiana for tortious breach of contract).

**II. Hartford Iron and Goldberg's motion for partial summary judgment on liability.**

In their motion for partial summary judgment, Hartford Iron and Goldberg "ask[] the Court for summary judgment as to Insurer's liability (but not damages) for past breach, and it seeks a trial on its further claim that Insurer breached its duty of good faith." Hartford Iron's Summary of Issues for Cross-Motions for Partial Summary Judgment (ECF 830), p. 2. In other

words, Hartford Iron and Goldberg seek summary judgment on the main issue in this case: which side breached the Settlement Agreements. Hartford Iron and Goldberg insist that the evidence shows as a matter of law that Valley Forge, not the Defendants, breached the terms of the Settlement Agreements. In their brief in support of their motion (ECF 799), the Defendants contend that Valley Forge breached the Settlement Agreements in the following ways: 1) by breaching "its duty to amend and carry out the Remediation Work Plan[,]" which was intended to comply with the IDEM Agreed Order (*id*. at pp. 5-11); 2) by breaching "its duty . . . to ensure 'prevention of illegal stormwater discharges' at the Site" (*id.* at pp. 11-13); and 3) by breaching "its duty to defend Hartford Iron" (*id*. at pp. 13-17). Within each of these three categories of alleged breach, according to Hartford Iron and Goldberg, are countless facts that the Defendants insist are undisputed and prove *as a matter of law* that Valley Forge breached the Settlement Agreements by failing to perform its duties and obligations. The Defendants contend, for example, that pursuant to the Second Settlement Agreement, Valley Forge "agreed to pay to retain its own environmental contractor, [August Mack Environmental], to 'carry out, at [Insurer's] expense, the Remediation Work Plan" and to submit that plan to IDEM for approval. *Id*., pp. 4-5. Hartford Iron and Goldberg argue that Valley Forge "breached these express obligations. Instead of providing even belated performance, [Valley Forge] now seeks to walk away from its cleanup obligation entirely." *Id*., p. 5. In support of this position, the Defendants rely heavily on–and discuss at great length–the declaration of Jamie Dameron, an attorney that Valley Forge hired (and subsequently tried to fire) to represent Hartford Iron and Goldberg in the IDEM proceeding. Ms. Dameron's declaration (ECF 798) is 77 pages long and includes 292 individual paragraphs. The declaration is replete with allegations of obstreperous conduct on the

24

part of Valley Forge and reads like a road map of the Defendants' argument that Valley Forge breached the Settlement Agreements in myriad ways by continually shirking the duties and obligations it assumed when it entered into those Agreements. Valley Forge disputes virtually all of the assertions in Dameron's declaration and has moved to exclude it from the summary judgment record. The declaration is but one piece of evidence among the thousands of pages of evidence filed by the parties, and while the Court reviewed it, the Court did not rely on it in arriving at its rulings on the cross-motions for summary judgment. That said, the Dameron declaration and Valley Forge's challenges to it (discussed below) serve to highlight the many factual disputes and credibility challenges that exist in this case.

Hartford Iron and Goldberg go for broke in their motion, asking the Court to find as a matter of law the following:

1) that "Valley Forge . . . is liable for breach of contract . . . due to its failure . . . to 'carry out, at [Insurer's] expense, the Remediation Work Plan (July 31, 2012)' and 'to modify the Remediation Work Plan to incorporate [IDEM] comments.';

2) that Valley Forge "is liable for breach of contact . . . due to its failure . . . to ensure 'prevention of illegal stormwater discharge.";

3) that Valley Forge "is liable for breach of contract . . . due to its failure . . . to 'defend Hartford Iron against the EPA and IDEM claims' without reservation of rights.";

4) that "[j]udgment is entered against [Valley Forge] on all claims for damages in its Second Amended Complaint due to the failure of its "[in]terference claims."; and

5) that "[j]udgment is entered against [Valley Forge] on all claims for damages . . . due to the failure of its '[e]xhaustion' claims."

Defendants' Motion for Partial Summary Judgment on Liability, pp. 4-5. In other words, Hartford Iron and Goldberg are asking the Court to find as a matter of law that Valley Forge breached the Settlement Agreements, enter judgment accordingly, and move on to the issue of damages to be awarded to the Defendants. The Court admires the Defendants' attempt to swing for the fence, but at this juncture they strike out instead.

Valley Forge, of course, argues that it was the Defendants who repeatedly interfered with Valley Forge's contractual right to control the remediation process and the defense of the IDEM claim. Valley Forge argues as follows:

> The bargained-for exchange at the heart of the 2012 Agreement was VFIC's agreement to defend and indemnify Defendants against the regulatory matters with IDEM and the [EPA] without reservation of rights in exchange for VFIC's exclusive control of the defense and remediation. . . . Almost immediately after the execution of the 2012 Agreement, Defendants sought to position themselves in an adversarial posture vis-a-vis VFIC, with a constant eye toward (and threatening of) future litigation. This manifested itself in habitual unreasonable restrictions by Defendants on environmental contractor August Mack Environmental's . . . access to the Property, Defendants' delays in authorizing work at the Property, and the Defendants' overreactions to and exaggerations of minor issues. From the start, VFIC was repeatedly and consistently denied the essential element of its bargain–the right to control Defendants' defense and "to obtain approval for and to implement the most cost effective remediation work plan for the site." . . . Defendants' obstruction and usurpation of VFIC's bargained-for control compelled VFIC to initiate this litigation.

Plaintiff's Response in Opposition to Defendants' Motion for Partial Summary Judgment (ECF 813), p. 3. Valley Forge then provides its own version of events in an attempt to show that Hartford Iron and Goldberg are the parties who breached the Agreements. For example, Valley Forge insists that "Defendants have never been amenable to sound, cost-effective remediation options." *Id.*, p. 6. Valley Forge insists that its chosen environmental contractor, August Mack, prepared a remediation plan that would comply with the mandates of the IDEM Agreed Order but

that Hartford Iron and Goldberg unreasonably interfered and objected to Valley Forge's efforts.

*Id*. Valley Forge also contends that "Jamie Dameron's unilateral 'modification' to the remediation work plan was a breach of the 2012 Agreement." *Id*., p. 7. Valley Forge explains this allegation as follows:

> Defendants' first argument–that VFIC "prevented" defense counsel from modifying the Remediation Work Plan–is based on a flagrant mischaracterization of the facts and a misinterpretation of the plain terms of the 2012 Agreement. After Hartford Inc. forced out its third appointed defense counsel (a material breach of the 2012 Agreement . . .), VFIC retained attorney Jamie Dameron in December 2013 to serve as Hartford Inc.'s defense counsel.
> . . .
>
> Dameron and Hartford Inc. completely ignored August Mack's detailed [remediation] proposal. Instead, and despite that the 2012 Agreement obligated VFIC, through August Mack, to perform this task, Dameron forged ahead and prepared, and ultimately submitted to IDEM, proposed modifications to the Remediation Work Plan providing for excavation down to clay across the entire Property.
> . . .
>
> VFIC's counsel implored Dameron and Hartford Inc. to have a discussion, advising that there is insufficient data to justify their planned "extensive soil excavation" and that such is not mandated by IDEM.

*Id*., pp. 6-9.

In their brief in support of their motion for summary judgment on liability, Hartford Iron and Goldberg present their own laundry list of breaches by Valley Forge, alleging, *inter alia*, that Valley Forge breached the Settlement Agreements by failing to submit a "Remediation Work Plan" that complied with IDEM directives; deliberately interfering with the work of its appointed defense counsel, Jamie Dameron; "failing to prevent illegal discharge of stormwater on at least thirty-nine separate violation days from December 4, 2012 (the date of the Second Settlement) through August 2017[]; and failing to fulfill its duty to defend against the IDEM and EPA claims.

Defendants' Brief in Support (ECF 799), pp. 5-17 (underlining in original).

The Court could discuss dozens of such examples of material factual disputes between the parties (and even more immaterial ones), but that is unnecessary. It is clear, as it has been for many years, that the parties to this lawsuit fiercely dispute and argue about virtually every action they other side allegedly took to interfere and obstruct the other. This case is one in which the parties are completely at loggerheads. Both sides have long since dug in their heels on their respective positions, resulting in a battle between an irresistible force and an immovable object. Put another way, they are engaged in a classic (and epic) swearing contest. "As we have said many times, summary judgment cannot be used to resolve swearing contests between litigants." *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018). "Although these common refrains are familiar, the task is often easier to describe than to perform, and plenty of credibility-weighing traps lay before a court, particularly in such fact-intensive cases." *Id*. at 894 (citing *Payne*, 337 F.3d at 771). That is the situation here, where there are so many disputed facts regarding who did what to whom and when that resolution of the ultimate issue of which side is liable to the other for breach is not one that can be decided on summary judgment and must proceed to trial. "The issue whether a party has materially breached an agreement is a question of fact, dependent on a variety of factors." *Watson Water Co., Inc. v. Indiana-Am. Water Co., Inc.*, 85 N.E.3d 840, 849 (Ind.Ct.App. 2017), *reh'g denied* (Feb. 22, 2018) (citing *Coates v. Heat Wagons, Inc*., 942 N.E.2d 905, 917 (Ind.Ct.App. 2011)).

Part of the summary judgment standard of review set forth above bears repeating here: "When evidentiary facts are in dispute, when the credibility of witnesses may be in issue or when conflicting evidence must be weighed, a full trial is necessary regardless of whether it is a bench

or a jury trial." *Stewart Title Guar. Co. v. Residential Title Servs., Inc.*, 607 F.Supp.2d 959, 961-62 (E.D. Wis. 2009) (citing William Schwarzer, Alan Hirsch & David Barrans, The Analysis & Decision of Summary Judgment Motions, 139 F.R.D. 441, 474 (1991) (in turn quoting Fed.R.Civ.P. 56(e) advisory committee's notes (amended 1963)). *Id*. "[T]he appropriate time for the Court to weigh the evidence and reach factual conclusions is at trial." *Thornton v. Hamilton Sundstrand Corp.*, 121 F. Supp. 3d 819, 826-27 (N.D. Ill. 2014), aff'd sub nom. *Thornton v. M7 Aerospace LP*, 796 F.3d 757 (7th Cir. 2015) (citing *Casey v. Uddeholm Corp.*, 32 F.3d 1094, 1099 (7th Cir.1994) ("[T]he appropriate proceedings for such fact-finding is a bench trial and not the disposition of a summary judgment motion.")). More to the point is this: "It is true that cases with jumbles of ostensibly disputed facts often signal the need for a trial on the facts." *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003)).

For the foregoing reasons, Hartford Iron and Goldberg's motion for partial summary judgment on the issue of liability must be denied and the issue of liability presented for trial.

### III. Motions to exclude evidence under Rule 56.1(e).

### A. Defendants' motion to exclude evidence.

Both sides filed motions asking the Court to exclude certain evidence submitted by the other on summary judgment. Hartford Iron and Goldberg filed a motion raising numerous challenges to some of Valley Forge's evidence, mostly statements made in affidavits or declarations. Defendants' Motion to Exclude Evidence (ECF 825).

Hartford Iron and Goldberg's motion to exclude evidence really goes deep into the weeds. They seek to exclude certain testimony of specific witnesses on very specific points. Their

challenges, however, mostly go to the weight to be given that testimony or the credibility of the witness providing it, rather than its admissibility. Also, the evidence they seek to exclude was not evidence on which the Court relied in arriving at its rulings on the cross-motions for summary judgment. For these reasons the Court denies the motion as moot.

Hartford Iron and Goldberg challenge the following evidence submitted by Valley Forge:

1) "[A] 2-page declaration dated November 1, 2018 by John Goldwater[,]" which the Defendants contend "is inadmissible because it does not meet the requirements of Federal Rule 26(a)(2) for an expert report or supplement."

2) An interrogatory response from Valley Forge regarding the issue of "policy limits."

3) "Sealed state court briefs" from the Blackford Circuit Court litigation between the parties;

4) A "claimed insurance certificate" concerning whether Hartford Iron "was added as an additional named insured on [August Mack's] insurance policies[,]" which the Defendants insist is inadmissible because it is unauthenticated.

5) A "May 2013 e-mail chain with attorney M. Maher[,]" which the Defendants contend is inadmissible because the communications were intended to be privileged.

6) Portions of the declaration of James Berndt of August Mack Environmental, which the Defendants insist "is irrelevant to key summary judgment issues" and includes hearsay.

*Id.*, pp. 1-20.

Hartford Iron and Goldberg's motion reads like an attempt to try their case on paper. Most of their arguments fail because they go to the weight to be given certain evidence rather than its admissibility. In fact, the objections presented in the motion only serve to highlight the many factual disputes in this case that must be resolved at trial. Many of the objections also

highlight the need for credibility determinations (in fact, they create credibility issues). Finally, many of the Defendants' evidentiary challenges are more properly the subjects of motions in limine rather than motions to exclude evidence at the summary judgment stage. All of that said, the reason the Court denies Hartford Iron and Goldberg's motion is because the Court did not rely on any of the challenged evidence to arrive at its conclusions on the issues presented in the cross-motions for summary judgment. The Defendants, of course, can renew their challenges to the evidence if it is presented at trial, either through a motion in limine, objections during trial, or cross-examination.

### B. Plaintiff's motion to exclude evidence.

Valley Forge objects to testimony presented in a declaration by Jamie Dameron and an affidavit by Alan Goldberg. Plaintiff's Motion to Exclude Evidence (ECF 837). Valley Forge writes that it "files this motion seeking the entry of an order excluding as inadmissible some or all of Jamie Dameron's declaration (ECF 798) and Alan Goldberg's affidavit (ECF 798-9)[.]" *Id.*, p. 1. As to the former, Valley Forge contends that "[i]n the case of Dameron's testimony, she testified that she had to suspend most of her work for long periods of time yet offers detailed testimony about events with which she could not be involved (and in some instances even admits she was not involved) given her "suspended" status. Dameron's testimony is also replete with legal conclusions, argument, and improper opinion testimony." *Id.* As to the latter, Valley Forge argues that "[w]ith respect to Goldberg's affidavit, he testified about payroll details dating back more than four decades that he purports to recall from memory and for which he offers no evidence, just self-serving speculation." *Id.*

Valley Forge has a point regarding the Jamie Dameron declaration, which the Court acknowledges includes statements that could be considered legal conclusions and argument. But much like Hartford Iron and Goldberg's motion to exclude, most of Valley Forge's arguments really challenge the weight to be given to Dameron's testimony as well as her credibility. It is not necessary, however, to parse through Dameron's declaration hunting for inadmissible legal conclusions or improper opinion testimony, since the Court did not rely on any part of Dameron's declaration when arriving at its conclusions on the issues presented on summary judgment. Dameron's declaration is referenced above only for the purpose of highlighting the many factual disputes that exist in this case and why trial is necessary on the issue of which side breached the Settlement Agreements. Despite Valley Forge's arguments, much of Dameron's testimony is admissible and relevant to the issue of breach, although Valley Forge can challenge those portions of her declaration that it considers inadmissible through a motion in limine and objections during trial, and can challenge her credibility on certain points through cross-examination. At this juncture, however, given that the Court did not rely on any part of Dameron's declaration to arrive at its conclusions, the motion to exclude her testimony, in whole or in part, is denied. *Carpet Serv. Int'l, Inc. v. Chicago Reg'l Council of Carpenters*, 2010 WL 234912, at *7 (N.D. Ill. Jan. 14, 2010) ("[T]he court did not rely on [a witness'] declaration in denying Defendants' Motion for Summary Judgment. It was therefore unnecessary to consider the substance of Defendants' Motion to Strike[.]"); *See also*, *Passmore v. Barrett*, 2015 WL 3737137, at *6 (N.D. Ind. June 15, 2015) (denying as moot a motion to strike evidence because "the court did not rely on the [challenged evidence] to decide the Motion for Summary Judgment.").

As to Alan Goldberg's affidavit, the challenged testimony is irrelevant in light of the Court's conclusion regarding the issue of an indemnity cap.[9] The challenged testimony is relevant only to the "coverage" issue, which the Court has concluded is actually *not* an issue, and therefore Valley Forge's motion to exclude this testimony is denied as moot.

**IV. Alan Goldberg motion for judgment on the pleadings.**

**A. Standard of review.**

While Goldberg titled his pleading as a "Motion for Partial Summary Judgment," he acknowledges that "it may also be treated as a motion for judgment on the pleadings." Goldberg Motion for Partial Summary Judgment (ECF 796), p. 1. That is because Goldberg challenges Valley Forge's claims without venturing beyond the four corners of the Second Amended Complaint (and its attached document–the 2012 Settlement Agreement). Therefore, Goldberg's motion does not need to be converted to or analyzed as a motion for summary judgment since he does not rely on evidence outside the pleadings to support his motion. He argues that the allegations contained in the Second Amended Complaint, on their face, fail to state any claim against him. For these reasons, his Motion for Partial Summary Judgment or alternatively for judgment on the pleadings will be treated as the creature it actually is, which is a motion for judgment on the pleadings under Rule 12(c). Accordingly, the Court will assess it pursuant to the standard of review for motions under Fed.R.Civ.P. 12(c). This Court recently explained that standard of review as follows:

---

[9] The testimony by Goldberg that Valley Forge seeks to exclude goes directly to the Defendants' argument that the insurance policies underlying this dispute provide for $300 million in coverage rather than $15 million as Valley Forge contends. Since the Court concludes that this argument is irrelevant, the testimony itself is likewise irrelevant and was not considered by the Court.

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings after the parties have filed the complaint and answer, but early enough not to delay trial. "A motion for judgment on the pleadings under Rule 12© of the Federal Rules of Civil Procedure is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6). A motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of parts of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) (emphasis omitted) (internal quotation marks and citations omitted); *see also Bishop v. Air Line Pilots Ass'n, Int'l*, 900 F.3d 388, 396 (7th Cir. 2018) (surviving a Rule 12(c) motion requires that the complaint "state a claim to relief that is plausible on its face") (first quoting *Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 640 (7th Cir. 2017); then quoting *Wagner v. Teva Pharm. USA, Inc.*, 840 F.3d 355, 358 (7th Cir. 2016)).

In evaluating a motion for judgment on the pleadings, the Court must accept the non-movant's factual allegations as true and draw all reasonable inferences in its favor, but it need not accept as true any legal assertions. *Wagner v. Teva Pharm. USA, Inc.*, 840 F.3d 355, 358 (7th Cir. 2016). The court's review is limited to the pleadings; however, it may also take into consideration documents incorporated by reference into the pleadings and matters properly subject to judicial notice. *Flynn*, 863 F.3d 636, 640 (7th Cir. 2017). The court cannot consider matters outside these areas without converting the motion into one for summary judgment. See Fed.R.Civ.P. 12(d); *Omega Healthcare Investors, Inc. v. Res-Care, Inc.*, 475 F.3d 853, 856 n.3 (7th Cir. 2007).

*Birch|Rea Partners, Inc. v. Regent Bank*, 2019 WL 2067358, at *1 (N.D. Ind. May 10, 2019). *See also*, *Gonzalez v. O'Brien*, 2019 WL 2566525, at *3 (N.D. Ill. June 21, 2019) ("A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6). . . . In addition, a Rule 12(c) motion is appropriate only when 'it is clear that the merits of the controversy can be fairly and fully decided in this summary manner.' WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE, § 1369 (3d ed.).") (quoting *Birch|Rea Partners, Inc.*, 2019 WL 2067358 * 1) (additional internal citation omitted)). Also, "Rule 12 is designed to ensure that certain threshold defenses are addressed early in a case. . . . The rule does not authorize a

defendant to preserve the defense by pleading it in an answer and then waiting to spring a trap late in the case." *Leslie v. St. Vincent New Hope, Inc.*, 873 F.Supp. 1250, 1252 (S.D. Ind. 1995).

**B. Discussion.**

Goldberg contends that he should not be a defendant in this lawsuit because Valley Forge states no claim or cause of action against him individually. Goldberg argues as follows:

> Goldberg files this motion to separately request partial judgment against the plaintiff Valley Forge Ins. Co. (Insurer) on all claims against him personally (a) for monetary damages–to the extent such claims exist against him at all or (b) for a declaration of rights that he personally breached any obligation to Insurer. This motion may also be treated as a motion for judgment on the pleadings.

Goldberg Motion for Partial Summary Judgment, p. 1. Goldberg elaborates as follows:

> Goldberg is identified by name only three times in Insurer's Second Amended Complaint:
>
> • In ¶ 1, he is incorrectly identified as the owner of the real estate where Hartford Iron is located (Goldberg is only a former owner).
>
> • In ¶ 22, Goldberg is correctly identified as a citizen of Indiana.
>
> • In ¶ 31, Goldberg is correctly identified as being insured under "certain comprehensive liability insurance policies," though he transferred his interest under these policies to Hartford Iron before this suit. . . .
>
> • For clarification, in ¶ 57, "Goldberg" refers to Mr. Scott Goldberg, who is Alan Goldberg's son.
>
> In the Complaint, Insurer does not include Goldberg personally in its use of the term "Hartford Iron," which it defined in ¶ 1 as limited to Hartford Iron & Metal, Inc., the incorporated business.
>
> Regarding damages, Insurer alleges breach of contract and damages only in Count V of the Complaint. This Count does not reference Goldberg, nor does it allege any breach by him. Insurer fails to allege that Goldberg could have liability for damages, and judgment should properly be entered in his favor to the extent Insurer now seeks to assert that such a claim even exists.

35

*Id.*, pp. 1-2.

Valley Forge argues that Goldberg is a proper defendant in this case and has been since it was filed five and a half years ago. Valley Forge argues as follows:

> [A]s is ascertained from the allegations in the [Second Amended] Complaint, as well as the information learned throughout this litigation issues of material fact exist as to whether Goldberg and Hartford Inc. are separate and distinct from each other. Thus, there is a triable issue of material fact as to who ultimately breached the Settlement Agreements. . . . [T]he Court should deny Goldberg's Motion for Judgment on the Pleadings because the Complaint's detailed allegations regarding Defendants's breach of the 2012 Settlement Agreement entered into between the parties more than plausibly state that Goldberg is personally liable for these alleged breaches or, in the alternative, allow VFIC leave to file a third amended complaint so as to more clearly articulate that the allegations and claims in the Complaint are alleged against both Hartford Inc. and Goldberg.

Response in Opposition (ECF 817), pp. 2-3. Valley Forge insists "it is clear that Goldberg is fishing here and is merely seeking to insulate himself from any potential liability through the use of an easily amendable procedural technicality." *Id.*, p. 4. Valley Forge also insists that its Second Amended Complaint meets the federal pleading requirement "to provide a short and plain statement that provides the defendants with notice of the claim being asserted, and supply enough factual matter, taken as true, to suggest a violation." *Id.*, p. 3 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007)). Valley Forge argues that "[i]n the 2012 Settlement Agreement, 'Hartford Iron' is defined to include both Hartford Inc. and Goldberg[]" and that "Goldberg is aware that the use of the term 'Hartford Iron' throughout the Complaint is deemed to include both Goldberg and Hartford Inc." *Id.*, pp. 4-5. Valley Forge claims "[i]t is obvious that Defendants understood this to be the case as well given the fact that Goldberg did not even bring this motion until approximately four years after this litigation was filed." *Id.*, p. 5.

In reply to Valley Forge's contention that his motion was filed inexplicably late in these proceedings, Goldberg in turn expresses incredulity at Valley Forge's offer to amend its complaint "at this late date[.]" Alan B. Goldberg/dba Hartford Iron & Metal Summary of Issues (ECF 831), p. 2. He insists that Valley Forge "improperly seeks to use its response [brief] as a tardy motion to amend its complaint." Goldberg Reply (ECF 820), p. 1. But if either party has been dilatory here it is Goldberg. Five and a half years after this suit was filed, and nearly two years after the close of discovery, Goldberg argues for the first time that he should be dismissed as a defendant in this lawsuit because the Second Amended Complaint (which was filed four and a half years ago) fails to state any claim against him.

This case arises out of the 2009 and 2012 Settlement Agreements entered into by the parties. Goldberg was a party to both Agreements, signing them as "Alan B. Goldberg, d/b/a Hartford Iron." 2009 Settlement Agreement (ECF 799-4), p. 11; 2012 Settlement Agreement (ECF 6-1), p. 7. Hartford Iron & Metal, Inc., the other Defendant, was a signatory to the Agreements through its president, Scott Goldberg. *Id*. The 2009 Agreement includes the following opening paragraph:

> This Confidential Settlement Agreement and Limited Release . . . is entered into this 17th day of April, 2009, by and between Hartford Iron & Metal, Inc. and Alan B. Goldberg DBA Hartford Iron and Metal (jointly referred to herein as "Hartford Iron") and Valley Forge Insurance Company. . . . Hartford Iron and VFIC are collectively referred to as the "Parties."

(ECF 799-4), p. 1. The 2012 Agreement includes the following opening paragraph:

> This Second Confidential Settlement Agreement and Limited Release . . . is entered into this 4th day of December 2012, by and between Hartford Iron & Metal, Inc. and Alan B. Goldberg DBA Hartford Iron & Metal (jointly referred to herein as "Hartford Iron") and Valley Forge Insurance Company . . . . Hartford Iron and Valley Forge are collectively referred to as the "Parties."

(ECF 6-1), p. 1.

Alan Goldberg has been a defendant in this case since it was filed on January 10, 2014. The original Complaint named Goldberg and Hartford Iron & Metal, Inc., as defendants. Complaint (ECF 1). The now-controlling Second Amended Complaint, filed on April 22, 2015, names the same defendants. Second Amended Complaint (ECF 74). The Second Amended Complaint asserts that Goldberg and Hartford Iron breached the 2009 and 2012 Settlement Agreements by unreasonably interfering with Valley Forge's attempts to comply with those Agreements, and as a result Goldberg and Hartford Iron are liable to Valley Forge.[10] Goldberg and Hartford Iron filed their Answer on June 8, 2015 (ECF 78), along with their counterclaim against Valley Forge in which they assert a bad faith claim. Since that time, this case has continued on a long, slow trek down a tortuous path. The parties have battled fiercely for years. Now, more than five and a half years after the case was filed and four and a half years after the filing of the Second Amended Complaint, Goldberg insists that Valley Forge's Complaint fails to state a viable claim against him.

---

[10] Goldberg and Hartford Iron moved for dismissal of Valley Forge's Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6) on March 20, 2014 (ECF 18), but the motion was denied by Judge Miller on January 21, 2015 (Court Order, ECF 28). In that motion, Hartford Iron and Goldberg stated as follows: "The defendants Hartford Iron & Metal, Inc. and Alan B. Goldberg (together, 'Hartford Iron') respectfully move to dismiss the Amended Complaint . . . for failure to state a claim and pursuant to this Court's discretion regarding declaratory actions." Motion to Dismiss (ECF 18), p. 1. Hartford Iron and Goldberg have presented themselves–and litigated this case–as separate and distinct parties throughout its very long history.

Goldberg answered the Second Amended Complaint[11], participated in discovery, and joined Hartford Iron in its counterclaim for bad faith (now a counterclaim for breach of contract). But most significantly, Goldberg was a signatory to the Settlement Agreements separate and apart from Hartford Iron & Metal, Inc.–the latter is a party to the Agreements by and through its President, Scott Goldberg, and Goldberg signed separately as "DBA Hartford Iron." As the Court stated above, this case is a breach of contract case. The parties to the contract (i.e., the 2009 and 2012 Settlement Agreements) are Valley Forge Insurance Company, Hartford Iron & Metal, Inc., and Alan B. Goldberg, doing business as Hartford Iron & Metal. Hartford Iron & Metal, Inc., and Alan B. Goldberg were the named defendants in this case from its inception and Goldberg has filed numerous pleadings and motions in this litigation separate from Hartford Iron & Metal, Inc. Like Valley Forge, this Court has understood the parties to this breach of contract action to be Valley Forge, Hartford Iron, and Alan Goldberg, and the Defendants have never argued otherwise until Goldberg filed his present motion. It strains credulity that Goldberg should be heard to protest at this juncture that Valley Forge's Second Amended Complaint fails to provide him with sufficient notice of the claims being asserted against him or fails to state a viable claim against him after having litigated the case, alongside the corporate defendant, Hartford Iron & Metal, Inc., for years (and after failing in his first attempt to seek dismissal under Rule 12(b)(6)).

As quoted above, Goldberg asserts in his motion that Valley Forge's Second Amended Complaint "does not include Goldberg personally in its use of the term 'Hartford Iron,' which it

---

[11] In their Answer, Hartford Iron and Goldberg state as follows: "The defendants and counterclaimants Hartford Iron & Metal, Inc. and Alan B. Goldberg /dba Hartford Iron & Metal (together, "Hartford Iron") answer the Second Amended Complaint . . . as follows[.]" Defendants' Answer, p. 1. So even the Defendants refer to themselves by the collective pronoun "Hartford Iron."

defined in ¶ 1 as limited to Hartford Iron & Metal, Inc., the incorporated business." Goldberg Motion, p. 2. That paragraph from the Complaint states in its entirety as follows: "Valley Forge seeks this Court's assistance in fulfilling its agreement to fund the remediation of a scrap metal recycling operation located at 209 S. Division Street, Hartford City, Indiana (the 'Site') operated by Hartford Iron & Metal, Inc. ('Hartford Iron') on property owned by Alan B. Goldberg." Amended Complaint, p. 1, ¶ 1. This is the paragraph Goldberg contends "defined" Hartford Iron "as limited to Hartford Iron & Metal, Inc., the incorporated business." The Court does not read that paragraph the way Goldberg does; that is, the Court does not interpret the statement to mean that Hartford Iron & Metal, Inc., and Alan Goldberg, d/b/a Hartford Iron are defined as one and the same. And while it is true that Alan Goldberg's name is mentioned only a few times in the Second Amended Complaint, and that the Complaint mostly refers to the two Defendants collectively as "Hartford Iron," this is hardly a sufficient basis to find that the Complaint fails as a matter of law to state any claim against Goldberg individually.

Valley Forge's Second Amended Complaint is 43 pages long and includes 230 numbered paragraphs. Those 230 paragraphs include detailed factual assertions as well as allegations of breach of the 2009 and 2012 Settlement Agreements. The Complaint is so detailed that the Court does not have to draw many inferences: it is chock-ful of allegations of instances of breach on the part of the Defendants. Valley Forge insists the term "Hartford Iron" is nothing more than a grammatical shorthand to refer to two Defendants–the incorporated business and Goldberg. Valley Forge's argument is convincing, especially given the history of this litigation.

In his order denying the Rule 12(b)(6) motion to dismiss filed by Hartford Iron and Goldberg in 2014, Judge Miller wrote as follows:

> Hartford Iron also contends Valley Forge simply pleaded facts that are consistent with liability, and so failed to state a legal claim. The court can't agree. The complaint describes several actions that, taken as true, show Hartford Iron isn't cooperating in the remediation of the site, isn't complying with its agreement to allow Valley Forge to control the defense, and is restricting access to the site. Valley Forge therefore pleaded facts that allow the court to draw reasonable inferences that Hartford Iron breached the Settlement Agreement.

Opinion and Order denying motion to dismiss (ECF 28), p. 18. In yet another example, the Court stated: "The court refers to both Hartford Iron & Metal, Inc. and Alan B. Goldberg as 'Hartford Iron' for purposes of this order." Opinion and Order (ECF 298), p. 1 (Judge Miller, denying Valley Forge's first motion for partial summary judgment).

This Court, then, ruled that the allegations in Valley Forge's Complaint survived Hartford Iron's and Goldberg's motion to dismiss. And while that motion to dismiss challenged a Complaint that has been supplanted by the now-controlling Second Amended Complaint, the allegations against the Defendants remained the same. As Magistrate Judge Susan Collins explained in her order granting Valley Forge's motion for leave to file its Second Amended Complaint:

> Defendants Hartford Iron & Metal, Inc., and Alan B. Goldberg (together, "Hartford Iron") oppose the motion, claiming that it is futile, merely protracts this litigation and complicates the defense, and improperly seeks to introduce settlement materials to the pleadings.
>
> . . .
>
> But here the Second Amended Complaint does not add any new claims, and the first Amended Complaint has already withstood a motion to dismiss. And . . . , the proposed amendments seek to add more recent information to more accurately reflect the current controversies, not stale information that could have been presented much earlier.

Opinion and Order (ECF 73), pp. 1, 6. Shortly after Judge Collins' ruling, Hartford Iron and

Goldberg filed their Answer to the Second Amended Complaint, along with their counterclaim alleging bad faith against Valley Forge. In that counterclaim, the Defendants stated as follows:

> 9. The third-party plaintiff and counterclaimant Hartford Iron & Metal, Inc. ("Hartford Iron") is incorporated in Indiana and has its principal place of business in Hartford City, Indiana.
>
> 10. The third-party plaintiff and counterclaimant Alan B. Goldberg /dba Hartford Iron & Metal was the predecessor business of Hartford Iron & Metal, Inc. and was operated as a sole proprietorship in Indiana with its principal place of business in Hartford City, Indiana. Alan B. Goldberg, personally, is a resident of Indiana.

Counterclaims and Third-Party Complaint (ECF 79), p. 6.

In summary, Hartford Iron & Metal, Inc., and Alan Goldberg, d/b/a Hartford Iron, were sued as separate defendants and have litigated this case as such for years, with Valley Forge, the Court, and even the Defendants themselves using the pronoun "Hartford Iron" to refer to the two named Defendants. The Court's conclusion today, however, is not based only on the fact that the parties and the Court have all referred repeatedly to the Defendants as "Hartford Iron." Rather, it is based on the undisputed fact that Hartford Iron & Metal, Inc., *and* Alan B. Goldberg, d/b/a Hartford Iron, *both* signed the 2009 and 2012 Settlement Agreements out of which this litigation arises. The detailed factual assertions and allegations in the Second Amended Complaint are more than sufficient to put Goldberg on notice of the claims against him, which are that he–along with Hartford Iron, the corporation–breached the Settlement Agreements in myriad ways. Those allegations refer to the Defendants jointly as "Hartford Iron" for the sake of convenience, but that does not mean that they fail to inform *either* Defendant of the nature of the allegations against them. And given the manner in which the Defendants have litigated this case, neither can present a persuasive argument now that the Second Amended Complaint fails to state a claim against

them as a matter of law, which is the conclusion Goldberg asks this Court to adopt.

"To succeed on a motion for judgment on the pleadings, 'the moving party must demonstrate that there are no material issues of fact to be resolved,' even with the court viewing all facts in the light most favorable to the nonmoving party." *Hanover Ins. Co. v. BMOC, Inc.*, 2019 WL 949215, at *1 (W.D. Wis. Feb. 27, 2019) (quoting *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998)); *see also*, *Whitaker v. Varsity Contractors, Inc.*, 2003 WL 21696529, at *3 (S.D. Ind. May 20, 2003) ("To prevail on a motion for judgment on the pleadings, the Defendant must show that there are no material issues of fact and that it is entitled to judgment as a matter of law.") (citing *N. Ind. Gun & Outdoor Shows*, 163 F.3d at 452). The flip-side of this is that "[t]o *survive* a motion for judgment on the pleadings, a complaint must 'state a claim to relief that is plausible on its face.'" *Wagner v. Teva Pharm. USA, Inc.*, 840 F.3d 355, 357-58 (7th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has 'facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In this instance, Goldberg has failed to carry his burden. The Court, after reviewing Valley Forge's Second Amended Complaint and the 2012 Settlement Agreement attached to it, and drawing all reasonable inferences in favor of Valley Forge, concludes that the Complaint states causes of against Hartford Iron, the incorporated business, *and* Alan Goldberg, individually, for breach of the Settlement Agreements. For these reasons, the Motion for Judgment on the Pleadings filed by Defendant Alan Goldberg (ECF 796) is denied.

## CONCLUSION

For the reasons set forth above, the Court holds as follows:

1) The motion for partial summary judgment or, in the alternative, for judgment on the pleadings filed by Defendant Alan Goldberg (ECF 796) is **DENIED**;

2) The motion for partial summary judgment filed by Defendant Hartford Iron & Metal (ECF 797) is **DENIED**;

3) The motion for partial summary judgment filed by Valley Forge (ECF 801) is **GRANTED in part and DENIED AS MOOT in part**;

4) The motion to exclude evidence filed by Hartford Iron (ECF 825) is **DENIED AS MOOT**; and

5) The motion to exclude evidence filed by Valley Forge (ECF 837) is **DENIED AS MOOT**.


Date: October 30, 2019.


   /s/   William C. Lee   
William C. Lee, Judge
U.S. District Court
Northern District of Indiana